Appeal No. 2014–1726

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

FORD MOTOR COMPANY,

*Plaintiff-Appellant,*

-v.-

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
in Case No. 1:09-cv-00151-MAB, Judge Mark A. Barnett

### CORRECTED NON-CONFIDENTIAL JOINT APPENDIX

MATTHEW W. CALIGUR
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
(713) 646-1355

– and –

STEPHANIE A. DOUGLAS
BUSH SEYFERTH & PAIGE PLLC
3001 W. Big Beaver, Suite 600
Troy, Michigan 48084
(248) 822-7800

*Attorneys for Plaintiff-Appellant*

May 26, 2015

**TABLE OF CONTENTS**

| DATE | DOCUMENT DESCRIPTION | PAGE NO. | FILED UNDER SEAL |
|---|---|---|---|
| 6/17/2014 | Opinion and Order [CIT Doc. No. 84] | JA1-24 | |
| 6/17/2014 | Judgment [CIT Doc. No. 85] | JA25 | |
| | CIT Docket Sheet | JA26-29f | |
| 4/15/2009 | Summons to United States [CIT Doc. No. 1] | JA30 | |
| 4/15/2009 | Complaint for Declaratory Relief [CIT Doc. No. 2-3] | JA31-41 | |
| 7/15/2009 | First Amended Complaint for Declaratory Relief [CIT Doc. No. 15] | JA42-58 | |
| 8/18/2009 | Second Amended Complaint for Declaratory and Injunctive Relief [CIT Doc. No. 19] | JA59-78 | |
| 8/18/2009 | Reconciliation Entry Chart [CIT Doc. No. 19-2] | JA78a | |
| 11/18/2009 | Defendants' Motion to Dismiss [CIT Doc. No. 27] | JA82-98 | |
| 11/18/2009 | Status of Reconciliation Entries [CIT Doc. No. 27-2] | JA100-101 | |
| 1/22/2010 | Plaintiff's Motion for Partial Summary Judgment and Application for a Writ of Mandamus [CIT Doc. No. 31] | JA103-123 | |
| 6/14/2013 | Defendants' Motions to Dismiss, and in the Alternative, Defendants' Motion for Judgment on the Agency Record [CIT Doc. No. 66] | JA127-164 | ** |
| 6/14/2013 | Status of Reconciliation Entries [CIT Doc. Nos. 66-1 and 67-1] | JA165a-165b | |
| 6/14/2013 | Declaration of David D. Olds [CIT Doc. No. 66-2] | JA166-171 | ** |
| 6/14/2013 | Declaration of Jeffrey Werner Baer [CIT Doc. No. 66-2] | JA172-176 | ** |
| 9/3/2013 | Ford's Amended Response in Opposition to Defendants' Motion For Judgment on the Agency Record and Motions to Dismiss [CIT Doc. No. 72] | JA177-218 | |
| 9/3/2013 | Declaration of Paulsen K. Vandevert [CIT Doc. No. 72-1] | JA221-229 | |
| 9/3/2013 | Sample Notices of Extension of Liquidation from Customs [CIT Doc. No. 72-2] | JA230-233 | |
| 8/14/2014 | Notice of Appeal [CIT Doc. No. 86] | JA290-291 | |
| 6/29/2005 | ACS Records for Entry B - No. 300-9945919-7 | JA292-304 | ** |
| 7/28/2005 | ACS Records for Entry C - No. 300-9945928-8 | JA305-317 | ** |
| 8/26/2005 | ACS Records for Entry D - No. 300-9945935-3 | JA318-330 | ** |
| 5/15/2006 | ACS Records for Entry E - No. 300-4830222-5 | JA331-343 | ** |
| 6/15/2006 | ACS Records for Entry F - No. 300-4830252-2 | JA344-359 | ** |
| 8/14/2006 | ACS Records for Entry G - No. 300-4830281-1 | JA360-371 | ** |
| 8/14/2006 | ACS Records for Entry H - No. 300-4830280-3 | JA372-383 | ** |
| 9/21/2006 | ACS Records for Entry I - No. 300-4830290-2 | JA384-397 | ** |
| 10/4/2006 | ACS Records for Entry J - No. 300-4830301-7 | JA398-410 | ** |
| 7/28/2005 | Request for Supplemental Information CF28 | JA411 | ** |
| 8/8/2005 | Request for Supplemental Information CF28 | JA412 | ** |

| | | | |
|---|---|---|---|
| 9/29/2005 | Response to 8/8/2005 Request for Supplemental Information CF28 | JA413-467 | ** |
| 10/4/2005 | Second Request for Supplemental Information CF28 | JA468 | ** |
| 11/3/2005 | Ford's Response to 10/4/2005 CF28 | JA469-491 | ** |
| 12/13/2005 | Ford's Fax Dated 12/9/2005 | JA492-498 | ** |
| 2/16/2006 | Interoffice Memorandum Request for Internal Advice | JA499-501 | ** |
| 3/1/2006 | Interoffice Memorandum Forwarding Internal Advice Request | JA502 | ** |
| 11/17/2008 | Letter from Deana Marotta to CBP Reconciliation Team | JA503-506 | ** |
| 2/9/2009 | Resubmission of 11/3/2005 Response to 10/4/2005 CF28 | JA507-540 | ** |
| 3/18/2009-3/19/2009 | Sonuga-Gulis Emails | JA541-544a | |
| | Entry B Bulletin Notice of Liquidation | JA545 | |
| 6/22/2009 | Internal Advice Ruling | JA546-553 | |
| 6/22/2009 | Internal Advice Ruling (Sealed) | JA554-561 | ** |
| 6/25/2009 | Third Request for Supplemental Information CF28 | JA562-564 | ** |
| 7/13/2009 | Requests for Supplemental Information CF28 | JA566-580 | ** |
| 7/15/2009 | Ford's Response to Requests for Supplemental Information CF28 | JA581-583 | ** |
| | Entry C Bulletin Notice of Auto-Liquidation | JA584 | |
| | Entry C Bulletin Notice of Re-liquidation | JA585 | |
| 7/30/2009-7/31/2009 | Notices of Action | JA586-587 | ** |
| | Entry B Bulletin Notice of Re-liquidation | JA588 | |
| | Entry D Bulletin Notice of Auto-Liquidation | JA589 | |
| | Entry D Bulletin Notice of Re-liquidation | JA590 | |
| | Entries G-J Bulletin Notices of Liquidation | JA591-594 | |

Slip Op. 14- 65

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
FORD MOTOR COMPANY,                     :
                                        :
          Plaintiff,                    :
                                        :     Before:  Mark A. Barnett, Judge
               v.                       :     Court No. 09-00151
                                        :
UNITED STATES,                          :
                                        :
          Defendant.                    :
_____ :

OPINION & ORDER

[The court grants Defendant's motion to dismiss.]

Dated:  _____June 17____, 2014

*Matthew W. Caligur* and *C. Thomas Kruse*, Baker & Hostetler, LLP, of Houston, TX, for Plaintiff.  Of counsel on the briefs was *Paulsen K. Vandevert*, Ford Motor Company, of Dearborn, MI.

*Barbara S. Williams*, Attorney-in-Charge, and *Justin R. Miller*, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, and *Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.  With them on the briefs were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief was *Yelena Slepak*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Barnett, Judge:  Defendant, United States, moves, pursuant to USCIT

Rule 12(b)(1) and the Declaratory Judgment Act, 28 U.S.C. § 2201, to dismiss

Plaintiff's, Ford Motor Company, Second Amended Complaint or, in the alternative, for

judgment on the agency record pursuant to USCIT Rule 56.1.  (Mem. in Supp. Def.'s

Mot. Dismiss, & in the Alternative, Def.'s Mot. J. A.R.  ("Def.'s Mot.") 1.)  Plaintiff

opposes Defendant's motion and moves the court to grant judgment on the agency

record in its favor.  (Ford's Am. Resp. in Opp'n Def.'s Mot. J. A.R. & Mot. Dismiss ("Pl.'s

Resp.") 5-10.)  For the reasons provided below, the court grants Defendant's motion to

dismiss.

## BACKGROUND AND PROCEDURAL HISTORY

### A.  General Background

In 2004 and 2005, Plaintiff imported motor vehicles from the United

Kingdom into the United States.  (2d Am. Compl. ¶ 18.)  It deposited estimated duties

for each entry using the information available to it at that time, flagged each entry for

reconciliation,[1] and filed reconciliation entries, in which Plaintiff claimed that it had

overpaid duties owed.  (2d Am. Compl. ¶¶ 19-20, Ex. A.)  Plaintiff brings this action for a

declaratory judgment that nine of its reconciliation entries (the "subject entries") were

---

[1] Reconciliation is "an electronic process, initiated at the request of an importer, under which the elements of an entry (other than those elements related to the admissibility of the merchandise) that are undetermined at the time the importer files or transmits the documentation or information required by section 1484(a)(1)(B) of [Title 19], or the import activity summary statement, are provided to the Customs Service at a later time."  19 U.S.C. § 1401(s).  "A reconciliation is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest."  *Id.*

The entries at issue are 300-9945919-7 (B), 300-9945928-8 (C), 300-9945935-3 (D), 300-4830222-5 (E), 300-4830252-2 (F), 300-4830281-1 (G), 300-4830280-3 (H), 300-4830290-2 (I), and 300-4830301-7 (J).  (2d Am. Compl. ¶ 20, Ex. A; Pl.'s Resp. 1 n.1.)  For ease of reference, the court assigned a letter to each entry, as shown above, and has used the same letter designation throughout the case.  The court previously dismissed a tenth entry, 300-4830272-0 (A), because Plaintiff obtained all relief sought for that entry.  *Ford Motor Co. v. United States*, 34 CIT __, __, 716 F. Supp. 2d 1302, 1309-10 (2010) ("*Ford I*").

deemed liquidated by operation of law, entitling Plaintiff to duty refunds.  (2d Am. Compl. 1-2.)

Pursuant to 19 U.S.C. § 1504(a), a reconciliation entry not liquidated within one year of its date of filing "shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record," absent an extension under subsection (b) of the statute or suspension as required by statute or court order. 19 U.S.C. § 1504(a)(1).  U.S. Customs and Border Protection ("Customs") may extend the period to liquidate an entry three times, for a length of one year each time, if one of the following conditions is met:

> **(1)** the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to the Customs Service; or
>
> **(2)** the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor.
>
> The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be, and the surety of such importer of record or drawback claimant. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a) of this section.

19 U.S.C. § 1504(b); *accord* 19 C.F.R. § 159.12(a)(1), (d), (e).[2]  If Customs extends the period for liquidation, it "shall give notice of an extension" to the importer of record and

---

[2] The regulation, in relevant part, states:
(a) Reasons – (1) Extension.  The port director may extend the 1-year statutory period for liquidation for an additional period not to exceed 1 year

its surety in a manner prescribed by regulation.  19 U.S.C. § 1504(b); *see* 19 C.F.R.

§ 159.12(b) ("If the port director extends the time for liquidation, . . . he promptly will

notify the importer or the consignee and his agent and surety on CBP Form 4333-A,

appropriately modified, that the time has been extended and the reasons for doing so.").

Customs must treat a reconciliation entry extended under this provision that has not

been liquidated as of four years after its filing date "as having been liquidated at the rate

of duty, value, quantity, and amount of duty asserted by the importer of record."  19

U.S.C. § 1504(b); *accord* 19 C.F.R. § 159.12(f).[3]

          The following chart lists each subject entry, its filing date, the date upon

which deemed liquidation would have occurred if Customs had extended the liquidation

period a maximum of three times under 19 U.S.C. § 1504(b), and the date on which

Customs liquidated and, if applicable, reliquidated the entries:

---

if: (i) Information needed by CBP. Information needed by CBP for the proper
appraisement or classification of the merchandise is not available . . . .
(d) Additional extensions – (1) Information needed by CBP. If an extension
has been granted because CBP needs more information and the port
director thereafter determines that more time is needed, he may extend the
time for liquidation for an additional period not to exceed 1 year provided he
issues the notice required by paragraph (b) of this section before
termination of the prior extension period. . . .
(e) Limitation on extensions. The total time for which extensions may be
granted by the port director may not exceed 3 years.
19 C.F.R. § 159.12(a), (d), (e).
    [3] Subsection (f) states, in relevant part:
f) Time limitation-- (1) Generally. An entry not liquidated within 4 years from
. . . the date of entry . . . will be deemed liquidated by operation of law at the
rate of duty, value, quantity, and amount of duty asserted by the importer at
the time of filing the entry summary for consumption in proper form, with
estimated duties attached.
19 C.F.R. § 159.12(f).

| Entry | Filing Date | Deemed Liquidation Date Under § 1504(b) | Liquidation Date | Reliquidation Date |
|-------|-------------|------------------------------------------|------------------|--------------------|
| B | 6/29/2005 | 6/29/2009 | 6/19/2009 | 8/7/2009 |
| C | 7/28/2005 | 7/28/2009 | 7/17/2009 | 7/31/2009 |
| D | 8/26/2005 | 8/26/2009 | 8/14/2009 | 9/18/2009 |
| E | 5/15/2006 | 5/15/2010 | 5/7/2010 | |
| F | 6/15/2006 | 6/15/2010 | 6/4/2010 | 7/23/2010 |
| G | 8/14/2006 | 8/14/2010 | 7/30/2010 | |
| H | 8/14/2006 | 8/14/2010 | 7/30/2010 | |
| I | 9/21/2006 | 9/21/2010 | 7/30/2010 | |
| J | 10/4/2006 | 10/4/2010 | 7/30/2010 | |

(*See* 2d Am. Compl. ¶¶ 29-34, Ex. A; Def.'s Mot. 4 n.4, Ex. A; Def.'s First Mot. Dismiss Ex. B, ECF No. 27; Pl.'s TRO/Prelim. Inj. Mot. 2, ECF No. 36; Def.'s Opp'n Pl.'s TRO/Prelim. Inj. Mot. 5, ECF No. 37).

**B. The Present Suit and Plaintiff's Second Amended Complaint**

Plaintiff filed suit on April 15, 2009, invoking this court's subject matter jurisdiction pursuant to 28 U.S.C § 1581(i). (*See* Summons, ECF No. 1; 2d Am. Compl. ¶ 6.) Plaintiff filed its Second Amended Complaint on August 18, 2009. (*See generally* 2d Am. Compl.) As of the date that Plaintiff commenced this action, Customs had not liquidated any of the subject entries. (2d Am. Compl. ¶ 67.) During the pendency of the case, however, Customs liquidated, and in some cases reliquidated, the subject entries. Presently before the court are six claims, which broadly challenge Customs' liquidations of the subject entries and ask the court to declare, *inter alia*, the subject entries deemed liquidated one year after filing according to the terms set forth in their reconciliation documents.

In the first cause of action, Plaintiff asks the court to declare the subject entries deemed liquidated one year after filing because, according to Plaintiff, Customs did not extend their liquidation.[4]  (2d Am. Compl. ¶¶ 67-69.)  In this count, as well as counts two through five, *see infra*, Plaintiff also requests that the court declare the "Internal Advice" issued with respect to Entry C moot or "null, void, and without any legal effect or precedential value or authority."  (2d Am. Compl. ¶¶ 70, 75, 80, 87, 94.)

In its second cause of action, Plaintiff, assuming that Customs extended the subject entries' liquidation, asserts that Customs did not issue extension notices, as required by 19 U.S.C. § 1504(b) and (c).  Plaintiff asks the court to declare that Customs' failure to issue notices nullified the extensions and rendered the subject entries deemed liquidated one year after filing.  (2d Am. Compl. ¶¶ 72-74.)

Plaintiff's third cause of action argues that, assuming Customs issued extension notices, the notices did not contain reasons for extension, as mandated by 19 U.S.C. § 1504(b) and (c).  According to Plaintiff, this error nullified the extensions and rendered the subject entries deemed liquidated one year after filing.  (2d Am. Compl. ¶¶ 77-79.)

In its fourth cause of action, Plaintiff notes that Customs ostensibly extended the liquidation of the subject entries because it needed additional information from Plaintiff to properly appraise the entries or to ensure compliance with the law. However, Plaintiff asserts that because Customs did not ask it for additional information

---

[4] Although Plaintiff raises the issue of suspension in addition to extension in its Second Amended Complaint, Plaintiff's briefs make clear that suspension of the subject entries is ultimately not at issue.  (*See generally* Pl.'s Resp.; Pl.'s Reply.)

until June 25, 2009, the court must presume that Customs had the information it needed

to properly appraise and liquidate the entries. Therefore, Customs had no valid reason

to extend the subject entries' liquidation, and the court should declare that they were

deemed liquidated one year after filing. (2d Am. Compl. ¶¶ 82-86.)

Plaintiff's fifth cause of action alleges that Customs' respective August 7

and July 31, 2009 reliquidations of Entries B and C were invalid because the entries

were deemed liquidated prior to those dates. Moreover, Plaintiff reasons that even if

Customs properly extended the entries' liquidation for the four-year maximum permitted

by statute, *see* 19 U.S.C. § 1504(b), Customs could not lawfully reliquidate the entries

more than four years after their filing date. (2d Am. Compl. ¶¶ 89-93.)

Plaintiff's sixth cause of action concerns only Entry D. Plaintiff filed the

entry on August 26, 2005, and Customs issued to Plaintiff a Request for Information for

the entry on July 13, 2009, stating that it was "considering other basis [sic] of valuation,"

and therefore requested that Plaintiff submit additional documents. (2d Am. Compl.

¶¶ 96-97 (brackets in original) (quotation marks omitted).) Plaintiff responded four days

later "with legal arguments and objections as to the propriety" of the request. (2d Am.

Compl. 17 n.4.) On July 31, 2009, Customs issued a Notice of Action Taken for Entry

D, which stated, "Since we did not receive the requested documents in order to properly

appraise the value of your merchandise; [sic] we have no recourse but to deny your

claim." (2d Am. Compl. ¶ 99 (brackets in original) (quotation marks omitted), Ex. C.)

Customs liquidated the entry on August 14, 2009. (2d Am. Compl. ¶¶ 91, 98.) Plaintiff

understands the Notice of Action Taken to indicate that Customs liquidated the entry

without the duty refunds that Plaintiff asserted in its reconciliation filing.  (2d Am. Compl.

¶ 99.)  Plaintiff claims that because Customs admits in the Notice of Action Taken that

the agency did not fix the final appraisement for Entry D or fix the final amount of duty,

as required by 19 U.S.C. § 1500(a) and (c), the court should declare the liquidation "null

and void, and without any legal effect or precedential authority."  (2d Am. Compl. ¶ 101.)

In addition, Plaintiff avers that the court should declare Entry D deemed liquidated as

asserted in the reconciliation filings and order Customs to refund the duties overpaid,

plus interest, because Customs did not issue a Notice of Liquidation, as required by 19

U.S.C. § 1500(e), before this suit commenced.  (2d Am. Compl. ¶¶ 100-03.)[5]

## C.  The Proceedings to Date

In November 2009, Defendant moved to dismiss Plaintiff's Second

Amended Complaint.  (ECF No. 27.)  Plaintiff opposed the motion and cross-moved for

summary judgment.  (ECF No. 31.)  Defendant argued that the court lacked subject

matter jurisdiction over Entries B, C, and D because they were time-barred by the two-

year statute of limitations for 28 U.S.C. § 1581(i) claims and because Plaintiff's then-

pending protests against the entries' liquidation and reliquidation would provide the

court with jurisdiction over the entries under § 1581(a) if denied.  Defendant also

averred that Customs had properly extended the liquidations for Entries E-J and that the

entries therefore were not deemed liquidated, making Plaintiff's claims arising from

---

[5] Plaintiff's seventh claim, in which it asked the Court to enjoin Customs from
taking further action with respect to the subject entries until the disposition of the case,
(2d Am. Compl. ¶¶ 105-09), was previously denied as moot, *Ford I*, 34 CIT at __ n.5,
716 F. Supp. 2d at 1309 n.5.

these entries not ripe for review.  Moreover, Defendant contended that if Plaintiff

believed Entries E-J to be deemed liquidated, it should have filed protests and

commenced an action pursuant to § 1581(a).

In a July 22, 2010 ruling, the court granted in part and denied in part

Defendant's motion and denied Plaintiff's motion.  *Ford Motor Co. v. United States*, 34

CIT __, 716 F. Supp. 2d 1302 (2010) ("*Ford I*").  The court dismissed all claims related

to Entry A, finding that there was no case or controversy because Customs had already

provided a refund of duties to Plaintiff.  The court also dismissed all claims arising from

Entries B, C, D, E and F, reasoning that Customs' liquidations since the filing of the suit

meant that relief was available to Plaintiff pursuant to 28 U.S.C. § 1581(a).  Because

relief was available under another subsection of § 1581 and was not manifestly

inadequate, the court found that jurisdiction was not available pursuant to 28 U.S.C.

§ 1581(i).  *Ford I*, 34 CIT at __, 716 F. Supp. 2d at 1310.  The court dismissed the

remainder of Plaintiff's first claim, concerning Entries C through J, due to a lack of a

case or controversy, finding that Plaintiff had acknowledged that the remaining Entries

had been extended by Customs.  *Id.* at __, 716 F. Supp. 2d at 1310-11.

The court did find that it had jurisdiction over claims 2, 3, and 4 as they

related to Entries G, H, I, and J to issue a declaratory judgment confirming whether

these entries had been deemed liquidated.  The court, however, found that Plaintiff's

claims had been undermined during the litigation and Plaintiff would be able to obtain

relief in a subsequent § 1581(a) case (following liquidation and protest); therefore, the

court exercised its discretion not to issue declaratory relief pursuant to these claims.  *Id.*

at __, 716 F. Supp. 2d at 1311-14.  Finally, the court determined that Plaintiff's seventh

claim, a request for injunction, was moot.  *Id.* at __ n.5, 716 F. Supp. 2d at 1309 n.5.

The court did not address Defendant's statute of limitations argument.  Plaintiff moved

for reconsideration (ECF No. 41), which the court denied, *Ford Motor Co. v. United*

*States*, 34 CIT __, 751 F. Supp. 2d 1316 (2010) ("*Ford II*").

On appeal, the Federal Circuit reversed in part, vacated in part, and

remanded *Ford I* to this court.  In relevant part, the Federal Circuit ruled that this court

has subject matter jurisdiction to entertain Plaintiff's claims pursuant to 28 U.S.C.

§ 1581(i) because Customs' post-filing liquidations of Plaintiff's entries did not defeat

subject matter jurisdiction under § 1581(i).  *Ford Motor Co. v. United States*, 688 F.3d

1319, 1326-28 (Fed. Cir. 2012).  It also found Plaintiff's claims ripe for review.  *Id.* at

1328.  The court also held that Plaintiff had not conceded that Customs had extended

Entries C through J and, therefore, reversed the partial dismissal of Plaintiff's first claim.

*Id.* at 1329-30.  The Federal Circuit vacated the discretionary dismissal of the

declaratory judgment claims because it found the decision to dismiss them had

"extended in significant part from [*Ford I*'s] flawed jurisdictional analysis." *Id.* at 1330.  It

concluded that this court "retains authority, but no obligation, to revisit this question on

remand." *Id.*  The Federal Circuit did not directly address Defendant's statute of

limitations argument.

### D. The Present Motions

On remand, Defendant again moves the court to dismiss the action or, in the alternative, grant it judgment on the agency record. (*See generally* Def.'s Mot.) Defendant asserts that the court lacks subject matter jurisdiction over Plaintiff's Claims 1-4 and 6 for Entries B, C, and D because they are time-barred. (Def.'s Mot. 12-14.) It also asks the court to dismiss the remainder of the case on prudential grounds, arguing that actions under 28 U.S.C. § 1581(a) are "better suited" to resolve Plaintiff's claims than a declaratory judgment action under § 1581(i). (Def.'s Mot. 14-18.) Plaintiff opposes Defendant's motion and moves for judgment on the agency record in its favor. (*See generally* Pl.'s Resp.)

#### SUBJECT MATTER JURISDICTION

### A. Defendant's Contentions

Defendant contends that the court has no subject matter jurisdiction over Claims 1-4 and 6 with respect to Entries B, C, and D because they are time barred by the two-year statute of limitations for claims under 28 U.S.C. § 1581(i).[6] (Def.'s Mot. 12

---

[6] Although statutes of limitations are not necessarily restrictions on subject matter jurisdiction, the court previously has concluded that 28 U.S.C. § 2636(i) "constitutes a limitation on the government's waiver of sovereign immunity and that the statute of limitations is therefore jurisdictional." *NSK Corp. v. United States*, 36 CIT __, __, 821 F. Supp. 2d 1349, 1354 (2012) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1348 (Fed. Cir. 2009); *Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*, 36 CIT __, __, 823 F. Supp. 2d 1365, 1374-75 (2012))). Even if the statute of limitations were not considered jurisdictional, dismissal of these claims would be appropriate pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief may be granted.

(citing 28 U.S.C. § 2636(i)).)  In Claims 1-4 and 6,[7] Plaintiff alleges that Entries B, C,

and D became deemed liquidated one year after filing, pursuant to 19 U.S.C. § 1504(a).

Because Plaintiff filed Entries B, C, and D on June 29, July 28, and August 26, 2005,

respectively, they would have been deemed liquidated on June 29, July 28, and August

26, 2006, respectively.  According to Defendant, these dates mark when the claims at

issue accrued, and, applying the two-year statute of limitations, Plaintiff had until June

29, July 28, and August 26, 2008 to bring these claims.  (Def.'s Mot. 12-13.)  Because

Plaintiff filed suit on April 15, 2009, Defendant maintains that the claims are time-barred.

## B.  Plaintiff's Contentions

Plaintiff responds that the court has subject matter jurisdiction over the

claims because "[t]he [statute of] limitations issue was necessarily decided by

implication when the Federal Circuit held that it and this Court had subject matter

jurisdiction over all of [Plaintiff]'s Entries at issue in this case."  (Pl.'s Resp. 10 (citations

omitted).)  According to Plaintiff, Defendant cannot now challenge the court's subject

matter jurisdiction because the Federal Circuit's implicit affirmative finding is law of the

case.  (Pl.'s Resp. 10.)  Even if the court takes up Defendant's argument, Plaintiff

contends that the claims did not accrue when the entries became deemed liquidated;

they accrued when Plaintiff reasonably should have known about their existence.

---

[7] Defendant asserts that Plaintiff's sixth claim is ambiguous and that it cannot discern whether Plaintiff alleges that Entry D became deemed liquidated one or four years after entry.  For the purposes of argument, Defendant presumes that Plaintiff alleges that the entry was deemed liquidated one year after filing.  (Def.'s Mot. 12 n.5 (citing 2d Am. Compl. ¶ 103).)  After a close reading, the court interprets the sixth claim as alleging that Entry D was deemed liquidated one year after entry.

Plaintiff thus argues that the claims accrued in February 2009, when it learned that

Customs did not intend to treat Entries B, C, and D as deemed liquidated.  Plaintiff

contends its April 2009 filing therefore was timely.  (Pl.'s Resp. 11-12.)

### C. Discussion

When subject matter jurisdiction is challenged, the plaintiff bears the

burden of demonstrating that jurisdiction exists.  *E & S Express Inc. v. United States*, 37

CIT __, __, 938 F. Supp. 2d 1316, 1320 (2013) (citing *Trusted Integration, Inc. v. United

States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).  When reviewing a motion to dismiss for

lack of subject matter jurisdiction, the court sculpts its approach according to whether

the motion "challenges the sufficiency of the pleadings or controverts the factual

allegations made in the pleadings."  *H & H Wholesale Servs., Inc. v. United States*, 30

CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006).  If the motion challenges the

sufficiency of the pleadings, as does Defendant's motion, the court assumes that the

allegations within the complaint are true.  *Id.*

Contrary to Plaintiff's contention, the court may address Defendant's

subject matter jurisdictional challenge.  It is well established that Federal Courts are not

courts of general jurisdiction, and "'[a] party, or the court sua sponte, may address a

challenge to subject matter jurisdiction at any time.'"  *Fanning, Phillips, & Molnar v.

West*, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting *Booth v. United States*, 990 F.2d

617, 620 (Fed. Cir. 1993)); *accord Rick's Mushroom Serv., Inc. v. United States*, 521

F.3d 1338, 1346 (Fed. Cir. 2008) (citing *Arbaugh v. Y & H. Corp.*, 546 U.S. 500, 506

(2006)) (citations omitted).  In fact, a court has "an independent obligation to determine

whether subject-matter jurisdiction exists, even in the absence of a challenge from any

party." *Arbaugh*, 546 U.S. at 514 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,

583 (1999); *accord Suntec Indus. Co. v. United States*, 37 CIT __, __, 951 F. Supp. 2d

1341, 1345 (2013) (citation omitted); *see Litecubes, LLC v. N. Light Prods., Inc.*, 523

F.3d 1353, 1359-60 (Fed. Cir. 2008). Notwithstanding this obligation, Plaintiff argues

that the law of the case prevents this court from considering Defendant's argument that

subject matter jurisdiction is lacking as a result of the two-year statute of limitations

having passed.

         The law of the case doctrine "generally bars retrial of issues that were

previously resolved." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed. Cir. 2001)

(citing *DeLong Equip. Co. v. Wash. Mills Electro Minerals Corp.*, 990 F.2d 1186, 1196

(11th Cir. 1993) ("[T]he general rule is that 'an appellate court's decision of issues must

be followed in all subsequent trial or intermediate appellate proceedings in the same

case' except when there are 'the most cogent of reasons . . . .'"); *United States v. White*,

846 F.2d 678, 684 (11th Cir. 1988) (holding that doctrine of law of the case

encompasses not only matters decided explicitly in earlier proceedings, but also matters

decided by necessary implication)) (citations omitted). The doctrine's purpose is to

"promote[] the finality and efficiency of the judicial process by protecting against the

agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800,

816 (1988) (citation and quotation marks omitted). However, "[i]t is well-accepted" that

the application of the doctrine is within a court's discretion; that the doctrine "is a rule of

practice and not a limit on a court's power"; and that it "'should not be applied woodenly

in a way inconsistent with substantial justice.'"  *Hudson v. Principi*, 260 F.3d 1357,

1363-64 (Fed. Cir. 2001) (citations omitted).

       Plaintiff's reliance on the law of the case doctrine is premised on the

theory that the Federal Circuit implicitly rejected Defendant's statute of limitations

argument.  Plaintiff suggests that rejection occurred when the Federal Circuit reversed

this court's earlier opinion and held that the Court of International Trade retained

jurisdiction to consider Plaintiff's claims pursuant to § 1581(i).  While the Federal Circuit

closely considered whether this court could properly entertain Plaintiff's § 1581(i) claims

despite the subsequent liquidations of those very same entries, nothing suggests that

the court gave any consideration to Defendant's statute of limitations claim.

Consequently, in light of the important obligation to determine the existence of subject

matter jurisdiction and the discretion available even if the law of the case doctrine

applied, this court must consider the Defendant's statute of limitations argument.

       A party must bring a claim pursuant to 28 U.S.C. § 1581(i) within two

years after the cause of action accrues.  28 U.S.C. § 2636(i); *accord C.B. Imps.*

*Transam. Corp. v. United States*, 35 CIT __, __, 807 F. Supp. 2d 1350, 1353 (2011).  In

most circumstances, the statute of limitations begins to run "from the date the plaintiff's

cause of action 'accrues,'" and stops when the plaintiff files its complaint in a court of

proper jurisdiction.  *Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003) (citation

omitted).  A cause of action accrues "when all events necessary to state the claim, or fix

the alleged liability of the Government, have occurred.  In other words, a claim accrues

when 'the aggrieved party reasonably should have known about the existence of the

claim.'" *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977-78 (Fed. Cir.

1994) (quoting *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed.

Cir. 1992)) (internal citation and quotation marks omitted); *accord Hopland Band of*

*Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988); *see Hair*, 350

F.3d at 1260.  Although the court has recognized that "[e]xactly when [a] claim accrues

under section 1581(i) is not entirely clear," *Omni U.S.A., Inc. v. United States*, 11 CIT

480, 483 n.7, 663 F. Supp. 1130, 1133 n.7 (1987) (noting that accrual "may be affected

by how the claim is characterized or how pursuit of administrative remedies is viewed"),

*aff'd*, 840 F.2d 912 (Fed. Cir. 1988), as a general rule, a § 1581(i) cause of action

"begins to accrue when a claimant has, or should have had, notice of the final agency

act or decision being challenged," *Optimus, Inc. v. United States*, Slip Op. 11-153, 2011

WL 6117937, at *1 (CIT Dec. 9, 2011) (citation omitted).

        The court finds that Plaintiff's first, second, third, fourth, and sixth causes

of action with respect to Entries B, C, and D are time-barred.  The crux of these claims

is that the subject entries were deemed liquidated one year after filing.  (*See* 2d Am.

Compl. ¶¶ 69, 74, 79, 86, 103.)  Because Plaintiff filed Entries B, C, and D on June 29,

July 28, and August 26, 2005, respectively, (2d Am. Compl. Ex. A), they would have

been deemed liquidated on June 29, July 28, and August 26, 2006, *see* 19 U.S.C.

§ 1504(a), absent extension or suspension.  If the entries had been deemed liquidated,

Customs would have had a regulatory duty to provide notice to Plaintiff.  *See Norsk*

*Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1351 (Fed. Cir. 2006); 19 C.F.R.

§§ 159.9(b), 159.11.  Such notice would have commenced the period for Plaintiff to

protest the liquidation, *see* 19 U.S.C. § 1514(a), (c)(3), and if Customs denied the

protest, the denial would have triggered the 180-day statute of limitations for Plaintiff to

challenge the denial of the protest in court, 28 U.S.C. § 2636(a); *Norsk Hydro Can., Inc.*,

472 F.3d at 1351 (citing 19 U.S.C. § 1514(c)(3)(A); 19 C.F.R. §§ 159.9(c),

174.12(e)(1)); *Optimus, Inc.*, 2011 WL 6117937, at *1.

         In the present case, Customs maintains that it extended the entries'

liquidation pursuant to 19 U.S.C. § 1504(b) and, therefore, the entries were not deemed

liquidated.  Consequently, Customs never issued deemed liquidation notices for the

entries.  However, if Plaintiff had expected Entries B, C, and D to have been deemed

liquidated one year after entry, it should have expected a bulletin notice of the deemed

liquidations "'within a reasonable period after each liquidation.'"[8]  *Norsk Hydro Can.,*

*Inc.*, 472 F.3d at 1352 (quoting 19 C.F.R. § 159.9(c)(2)(ii)); *see also* 19 C.F.R.

§ 159.9(d) (stating that Customs typically attempts to provide importers or their agents

with additional electronic courtesy notices of deemed liquidations).

         When the one-year period went by and, a reasonable time thereafter, the

notices failed to appear, Plaintiff should have been alerted to the possibility that

Customs had not treated Entries B, C, and D as deemed liquidated.[9]  It is at this point

---

[8] Customs' obligation to provide notice of deemed liquidations "within a
reasonable period" does not establish a precise date on which Plaintiff should have
known that Customs did not believe deemed liquidation to have occurred.  However, the
substantial period between the entries' alleged deemed liquidations and the filing of this
suit make the imprecision immaterial to the present analysis.
[9] In fact, Plaintiff's in-house counsel declared that beginning in mid-2006, he
asked Plaintiff's third-party Customs service provider whether they had received any
notice of extension of liquidation.  While he indicated that the Customs service provider

that Plaintiff's claims accrued.  Plaintiff thus had two years from the period it should

have received notice – "a reasonable period" after the alleged deemed liquidations

(June 29, July 28, and August 26, 2006) – to bring these claims.  Even assuming that it

would have been reasonable for Customs to provide notice as long as 180 days after

the deemed liquidations occurred, Plaintiff would have had only until December 2008 for

Entry B, January 2009 for Entry C, and February 2009 for Entry D to bring these claims

– long before Plaintiff filed suit in August 2009.

        Ford contends that the statute of limitations period should not have begun

to run until February 2009, when Ford says that it received its first indication that

Customs did not intend to treat the entries in question as deemed liquidated.  (Pl.'s

Resp. 12.)  In so arguing, Plaintiff ignores that the standard for commencing the statute

of limitations period is when Ford knew, or should have known, that it had a claim.

*Optimus, Inc.*, 2011 WL 6117937, at *1.  Whether the court considers what Ford should

have known from the perspective of the one-year statutory deadline for extending the

entry, *see* 19 U.S.C. § 1504(a), or Ford's actual awareness that a notice of an extension

of liquidation should have been received at that time, (*see* Pl.'s Resp. Attach. 1

(Paulsen K. Vandevert Decl.) ¶¶ 26-30), it is clear that Plaintiff's cause of action

accrued, and, therefore, the statute of limitations period began to run, by early 2007.[10]

---

had a process for logging and tracking such notices and regularly checked the ACE
Portal, Customs' National Liquidation System ("NLS"), and "the FOIA" report, and that
he regularly requested and received monthly updates, Plaintiff nevertheless failed to
take timely action on the basis of those reports.  (*See* Pl.'s Resp. Attach. 1 (Paulsen K.
Vandevert Decl.) ¶¶ 26-30.)
        [10] The court also declines to credit Plaintiff's concern that starting the statute of

Plaintiff failed to raise its first, second, third, fourth, and sixth causes of action as they relate to Entries B, C, and D within the two-year statute of limitations applicable to actions brought pursuant to 19 U.S.C. § 1581(i).  As a consequence, Plaintiff's claims with respect to Entries B, C, and D are time-barred, and the court lacks subject matter jurisdiction to consider them.

<div align="center">

**Prudential Jurisdiction**

</div>

**A.  Defendant's Contentions**

Defendant asks the court to not exercise prudential jurisdiction over Plaintiff's declaratory judgment claims.  (Def.'s Mot. 14-18.)  Defendant avers that because Plaintiff's claims ultimately challenge Customs' extensions of liquidation, Defendant should bring those challenges, pursuant to 28 U.S.C. § 1581(a), after liquidation of the subject entries.  (Def.'s Mot. 15.)  Defendant further asserts that bringing the claims under § 1581(a) would provide "distinct advantages" over subsection (i), such as discovery, liberation from the factual confines of the administrative record, and a *de novo* standard of review.  (Def.'s Mot. 16-17.)  Finally, Defendant contends that declining jurisdiction will promote judicial economy and efficiency.  Defendant notes that, to the contrary, if the court retains jurisdiction and the Defendant prevails in the

---

limitations period within a reasonable time after the one-year initial deemed liquidation period would amount to "Requiring an importer to bring the same action under § 1581(i) up to four times within the statutory liquidation period" and "would lead to a proliferation of cases brought under § 1581(i), as importers sought to preserve their rights."  (Pl.'s Surreply 8.)  Plaintiff's argument is based on the false premise that the importer "would be required to bring suit to confirm a deemed liquidation immediately after the one-year anniversary of entry."  (Pl.'s Surreply 7.)  With a two-year statute of limitations available, no such immediacy is required.

current litigation, Plaintiff still could challenge Customs' affirmative liquidation of the

subject entries under § 1581(a). Specifically, "the issue of deemed liquidation will be

resolved in the context of § 1581(i), and then the merits of [Plaintiff]'s reconciliation

claims will be resolved second in the context of § 1581(a)," which would result in

"piecemeal litigation." (Def.'s Mot. 18.) Defendant notes that a case challenging the

liquidations of Entries B, C, and D already is pending before the court, (Def.'s Reply 6

n.2 (citing *Ford Motor Co. v. United States*, No. 10-138 (CIT filed Apr. 21, 2010))), and

that Plaintiff's protests for Entries E though J are pending before Customs, (Def.'s Reply

6 n.2).

### B. Plaintiff's Contentions

In rejoinder, Plaintiff asserts that if the court declines jurisdiction over the

declaratory judgment claims, Plaintiff will have to wait for Customs to make affirmative

liquidations or take enforcement actions before obtaining resolution of the issues

presently at bar. Such a delay, Plaintiff contends, would contravene Congress's goal of

eliminating uncertainty for importers when it passed 19 U.S.C. § 1504. (Pl.'s Resp. 12-

14.) Consequently, Plaintiff argues that the court should exercise prudential jurisdiction

over its declaratory judgment claims.

### C. Applicable Law

The sole requirement for a federal court to exercise jurisdiction over a

declaratory judgment claim is the existence of an "actual controversy" within the

meaning of Article III of the United States Constitution. *Teva Pharms. USA, Inc. v.*

*Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 n.3 (Fed. Cir. 2007). This standard

requires that to bring a declaratory judgment action, a plaintiff must show "under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* at 1338 (quoting *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)).  Nevertheless, when presented with a declaratory judgment claim which meets these criteria, a court "retains discretion . . . to decline declaratory judgment jurisdiction" and not address the merits of the claim.  *Id.* at 1338 n.3 (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991)); *accord Ford Motor Co. v. United States*, 35 CIT __, __, 806 F. Supp. 2d 1328, 1333 (2011) (noting that "courts traditionally have been reluctant to apply [declaratory judgment remedies] to administrative determinations . . . unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties") (citations and quotation marks omitted).  In the declaratory judgment context, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007) (holding that trial courts have discretion not to entertain declaratory judgment actions "'because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.'" (quoting *Wilton*, 515 U.S. at 289)).  Thus, while the court may not decline jurisdiction "as a matter of whim or personal disinclination," *Pub. Affairs Assocs.,*

*Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam), it may choose not to hear the claim as long as it "make[s] a reasoned judgment whether the investment of time and resources will be worthwhile," *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).

### D. Analysis

The court declines to exercise jurisdiction over Plaintiff's remaining declaratory judgment claims, because adjudicating the claims would not be an efficient and effective use of the court's time and resources. Plaintiff's case involves six causes of action, interwoven with the same nine reconciliation entries. As such, the claims concern largely the same issues of law and fact.

As discussed above, Claims 1-4 and 6, as applied to Entries B, C, and D, which Plaintiff has brought under 28 U.S.C. § 1581(i), are time-barred. However, Plaintiff retains the ability to seek relief for these claims in the § 1581(a) case pending before the court, *Ford Motor Co.*, No. 10-138. In addition to being an adequate vehicle for the court to address the issues that Plaintiff raised within the time-barred claims, litigating the claims pursuant to § 1581(a) would provide a more complete avenue for judicial review of Customs' actions. The § 1581(a) case will allow Plaintiff to challenge not only the question of whether the entries in question were deemed liquidated, but the substance of any actual liquidations or reliquidations that occurred (i.e., the merits of Plaintiff's reconciliation claims), an option not available in this declaratory judgment case.

        As previously noted, the Federal Circuit held that this court has subject

matter jurisdiction over Plaintiff's non-time-barred declaratory judgment claims pursuant

to 28 U.S.C. § 1581(i), and Customs' post-filing actions have not altered this

jurisdictional landscape.  *Ford Motor Co.*, 688 F.3d at 1327-28.  Nevertheless, in

deciding whether to exercise declaratory judgment jurisdiction over these claims, the

court may look to subsequent procedural events and parallel proceedings to evaluate

the appropriateness of the expenditure of judicial time and resources.  *See Serco Servs.*

*Co.*, 51 F.3d at 1039-40.  In doing so, the court finds that the § 1581(a) case would

provide a more appropriate forum for Plaintiff's remaining claims than the present suit.

As with the time-barred claims, adjudicating the remaining claims in the § 1581(a) case

would permit the court to dispose of challenges to the substantive, as well as

procedural, aspects of Customs' treatment of the relevant entries in a single action.

Moreover, if Customs denies Plaintiff's pending protests for Entries E through J, Plaintiff

could also challenge those denials pursuant to § 1581(a) case, if it so desired.  *See*

USCIT R. 18(a).  Stated simply, entertaining Plaintiff's remaining claims pursuant to

§ 1581(a) would permit the court to adjudicate all potential disputes stemming from

Plaintiff's entries, which arise from a common nexus of law and fact, in a single action,

and thereby allow the court to avoid piecemeal litigation and the potential for conflicting

outcomes.  The court therefore finds that not exercising declaratory judgment

jurisdiction over the remaining claims would make best use of the court's time and

resources, and declines to exercise declaratory judgment jurisdiction over them.

### CONCLUSION

For the reasons provided above, the court grants Defendant's motion to dismiss. The court finds that it lacks subject matter jurisdiction over Plaintiff's Claims 1-4 and 6 for Entries B, C, and D, because they are time-barred, and declines to exercise jurisdiction over Plaintiff's remaining declaratory judgment claims. The cross-motions for judgment on the agency record are moot. Judgment will be entered accordingly.

 

 

<div align="right">

_/s/ Mark A. Barnett_____

Mark A. Barnett

Judge

</div>

Dated:  ___Jun 17, 2014_____

      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
FORD MOTOR COMPANY,                     :
                                        :
        Plaintiff,                      :
                                        :        Before:  Mark A. Barnett, Judge
                v.                      :        Court No. 09-00151
                                        :
UNITED STATES,                          :
                                        :
        Defendant.                      :
_____ :

**JUDGMENT**

This case having been submitted for decision, and the court, after due

deliberation, having rendered an opinion; now in conformity with that opinion, it is

hereby

**ORDERED** that Defendant's motion to dismiss is granted; and it is further

**ORDERED** that this case be dismissed.


                                        __/s/  Mark A. Barnett____
                                             Mark A. Barnett
                                                  Judge

Dated: _June 17, 2014_____
        New York, New York

APPEAL,TERMINATED

# U.S. Court of International Trade
## LIVE Database (New York)
## CIT DOCKET FOR CASE #: 1:09-cv-00151-MAB

Ford Motor Company v. United States
**Assigned to:** Mark A. Barnett
**Lead Docket:**

| | |
|---|---|
| **Jurisdiction:** | **Date Filed:** 04/15/2009 |
| 28USC § 1581(i) Residual Jurisdiction | **Jury Demand:** No |

**Category:**
Recovery of Customs Duties 28USC § 1583(3)

**Date Terminated:** 06/17/2014

**Date Reopened:** 10/01/2012

**Agency:**
U.S. Customs and Border Protection

**Does this action raise an issue of constitutionality?:** N

**Product Description:**

**Export Country:**
(Not Applicable)

**Plaintiff**

**Ford Motor Company**  represented by  **Matthew W. Caligur**
Baker & Hostetler, LLP
811 Main Street
Suite 1100
Houston, TX 77002
(713) 646-1355
Fax: (713) 751-1717
Email: mcaligur@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**C. Thomas Kruse**
Baker & Hostetler, LLP
811 Main Street
Suite 1100
Houston, TX 77002
(713) 646-1365

JA26

Fax: (713) 751-1717
Email: tkruse@bakerlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Paulsen King Vandevert**
Ford Motor Company
Office of General Counsel
WHQ S. 403
One American Road
Dearborn, MI 48126-2798
(313) 337-5082
Fax: (301) 845-5867
Email: pvandev3@ford.com
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**Defendant**

**United States**                           represented by   **Tara Kathleen Hogan**
U.S. Department of Justice
Commerical Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2228
Fax: (202) 305-7643
Email: tara.hogan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**Barbara S. Williams**
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, NY 10278
(212) 264-9240
Fax: (212) 264-1916
Email: barbara.williams@usdoj.gov
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**David Samuel Silverbrand**
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division

JA27

P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-3278
Fax: (202) 353-7988
Email: david.silverbrand@usdoj.gov
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**Justin Reinhart Miller**
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, NY 10278
(212) 264-9241
Fax: (212) 264-1916
Email: justin.r.miller@usdoj.gov
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**Yelena Slepak**
U.S. Department of Homeland Security
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza - Room 258
New York, NY 10278
(212) 264-9271 x111
Fax: (212) 264-1326
Email: yelena.slepak@dhs.gov
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2009 | 1 | Summons. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Vandevert, Paulsen) (Benbow, Troy). (Entered: 04/15/2009) |
| 04/15/2009 | 2 | Complaint against United States. Answer due by 6/19/2009. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Attachments: # 1 Exhibit List of Subject Entries)(Vandevert, Paulsen) (Additional attachment(s) added on 4/16/2009: # 2 main document) (Benbow, Troy). (Entered: 04/15/2009) |
| 04/15/2009 | 3 | Form 5 Information Statement. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Vandevert, Paulsen) (Entered: 04/15/2009) |

JA28

U.S. Court of International Trade (CM/ECF Database)

| 04/15/2009 | 4 | Form 13 Corporate Disclosure Statement. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Vandevert, Paulsen) (Entered: 04/15/2009) |
|---|---|---|
| 04/25/2009 | 5 | Certificate of service *Summons & Complaint*. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Vandevert, Paulsen) (Entered: 04/25/2009) |
| 05/01/2009 | 6 | Order entered on 5/1/2009 assigning action to Judge Gregory W. Carman. (Washington, Carolyn) (Entered: 05/01/2009) |
| 05/19/2009 | 7 | Form 11 Notice of Appearance. Filed by David Samuel Silverbrand of U.S. Department of Justice on behalf of United States.(Silverbrand, David) (Entered: 05/19/2009) |
| 05/19/2009 | 8 | **Notice of consent to Electronic Service** . Filed by David Samuel Silverbrand of U.S. Department of Justice on behalf of United States.(Silverbrand, David) (Entered: 05/19/2009) |
| 05/20/2009 | 9 | **Notice of consent to Electronic Service** . Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company.(Vandevert, Paulsen) (Entered: 05/20/2009) |
| 05/22/2009 | 10 | Motion for extension of time until 7/25/2009 to *file administrative record*. Responses due by 6/15/2009. Filed by Barbara S. Williams of U.S. Department of Justice on behalf of United States.(Williams, Barbara) (Entered: 05/22/2009) |
| 05/26/2009 | 11 | Consent Response to motion (related document(s) 10 ). Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company.(Vandevert, Paulsen) (Entered: 05/26/2009) |
| 05/29/2009 | 12 | Order entered on 5/29/2009 granting Motion for extension of time (Related Doc # 10 ). Administrative Record due by 7/25/2009. (Washington, Carolyn) (Entered: 05/29/2009) |
| 06/15/2009 | 13 | Consent Motion for extension of time until 8/12/2009 to respond complaint. Responses due by 7/6/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States.(Miller, Justin) (Entered: 06/15/2009) |
| 06/17/2009 | 14 | Order entered on 6/17/2009 granting Motion for extension of time to file answer to complaint (Related Doc # 13 ). Answer due by 8/12/2009. (Washington, Carolyn) (Entered: 06/17/2009) |
| 07/15/2009 | 15 | First Amended complaint against United States. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Attachments: # 1 Exhibit Subject Entries)(Vandevert, Paulsen) (Entered: 07/15/2009) |
| 07/24/2009 | 16 | Consent Motion to stay *the filing of the administrative record*. Responses due by 8/12/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States.(Miller, Justin) (Entered: 07/24/2009) |
| 07/28/2009 | 17 | Order entered on 7/28/2009 ORDERED that the filing of the administrative record is stayed pending the resolution of the anticipated motion to dismiss pursuant to Rule 12(b); and it is further ORDERED that, if the Court denies the anticipated motion to dismiss, the administrative record shall be filed ten days subsequent to the resolution of the motion to dismiss (Related Doc # 16 ). (Washington, Carolyn) |

| | | |
|---|---|---|
| | | (Entered: 07/28/2009) |
| 08/07/2009 | 18 | Consent Motion for extension of time until 9/30/2009 *to answer or otherwise respond to the first amended complaint*. Responses due by 8/26/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Miller, Justin) (Entered: 08/07/2009) |
| 08/18/2009 | 19 | Second Amended complaint against United States. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Attachments: # 1 Exhibit A - Subject Entries, # 2 Exhibit B - Ford Resp to CF28, # 3 Exhibit C- Notices of Action Taken)(Vandevert, Paulsen) (Entered: 08/18/2009) |
| 09/04/2009 | 20 | Order entered on 9/4/2009 granting Motion for extension of time (Related Doc # 18 ). Answer due by 9/30/2009. (Washington, Carolyn) (Entered: 09/04/2009) |
| 09/29/2009 | 21 | Motion for extension of time until 10/30/2009 to respond complaint *(Second Amended Complaint)*. Responses due by 10/19/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States.(Miller, Justin) (Entered: 09/29/2009) |
| 10/02/2009 | 22 | Response *in Opposition* to motion *for Extension of Time to Answer or Otherwise Plead* (related document(s) 21 ). Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company.(Vandevert, Paulsen) (Entered: 10/02/2009) |
| 10/14/2009 | 23 | Order entered on 10/14/2009 ORDERED that defendant shall file its answer or otherwise respond to plaintiff's second amended complaint on or before 10/30/2009 (Related Doc # 21 ). (Washington, Carolyn) (Entered: 10/14/2009) |
| 10/29/2009 | 24 | Consent Motion for extension of time until 11/13/2009 to respond complaint *(second amended complaint)*. Responses due by 11/18/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Miller, Justin) (Entered: 10/29/2009) |
| 11/03/2009 | 25 | Order entered on 11/3/2009 ORDERED that defendant shall file its response to the second amended complaint on or before 11/13/2009 (Related Doc # 24 ). (Washington, Carolyn) (Entered: 11/03/2009) |
| 11/12/2009 | 26 | Motion for extension of time until 11/18/2009 to *respond to second amended complaint*. Responses due by 12/2/2009. Filed by David Samuel Silverbrand of U.S. Department of Justice on behalf of United States.(Silverbrand, David) (Entered: 11/12/2009) |
| 11/18/2009 | 27 | Motion to dismiss case. Response to Dispositive Motion due by 12/23/2009. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Miller, Justin) (Entered: 11/18/2009) |
| 12/11/2009 | 28 | Order entered on 12/11/2009 granting Motion for extension of time (Related Doc # 26 ). Answer due by 11/18/2009. (Washington, Carolyn) (Entered: 12/11/2009) |
| 12/21/2009 | 29 | Consent Motion for extension of time until 1/22/2010 to *respond to Defendants' Motion to Dismiss*. Responses due by 1/11/2010. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company.(Vandevert, Paulsen) (Entered: 12/21/2009) |

| | | |
|---|---|---|
| 12/23/2009 | [30](#) | Order entered on 12/23/2009 granting Motion for extension of time (Related Doc # [29](#) ). Response to Dispositive Motion due by 1/22/2010. (Swindell, Stephen) (Entered: 12/23/2009) |
| 01/22/2010 | [31](#) | Cross-Motion for Summary Judgment and *response to motion to Dismiss* (related document(s) [27](#) ). Response due by 2/26/2010. Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Attachments: # [1](#) Affidavit R. 56(h) Fact Statement)(Vandevert, Paulsen) Modified on 1/26/2010 (Washington, Carolyn). (Entered: 01/22/2010) |
| 02/17/2010 | [32](#) | Motion to strike *and motion to stay*. Responses due by 3/8/2010. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D)(Miller, Justin) (Entered: 02/17/2010) |
| 02/22/2010 | [33](#) | Response to motion *Strike & for a Stay* (related document(s) [32](#) ). Filed by Paulsen King Vandevert of Ford Motor Company on behalf of Ford Motor Company. (Vandevert, Paulsen) (Entered: 02/22/2010) |
| 06/22/2010 | [34](#) | Form 11 Notice of Appearance *of Matthew W. Caligur*. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 06/22/2010) |
| 06/22/2010 | [35](#) | **Notice of consent to Electronic Service** . Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 06/22/2010) |
| 06/23/2010 | [36](#) | Expedited Application/Motion for temporary restraining order *and preliminary injunction*. Responses due by 7/13/2010. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Attachments: # [1](#) Exhibit Declaration of Paulsen Vandevert in Support of Application/Motion, # [2](#) Proposed Order Proposed Temporary Restraining Order)(Caligur, Matthew) (Entered: 06/23/2010) |
| 07/12/2010 | [37](#) | Response *in opposition* to motion *for a temporary restraining order and a preliminary injunction* (related document(s) [36](#) ). Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of All Defendants.(Miller, Justin) (Entered: 07/12/2010) |
| 07/21/2010 | [38](#) | Emergency Status report *regarding Notice of Material Change in Status of Entries*. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Attachments: # [1](#) Exhibit A)(Caligur, Matthew) (Entered: 07/21/2010) |
| 07/21/2010 | [39](#) | Status report *(Response to Emergency Notice of Material Change in Status of Entries)*. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of All Defendants. (Miller, Justin) (Entered: 07/21/2010) |
| 07/22/2010 | [40](#) | Order entered on 7/22/2010, Slip Op. 10-80 and Final Order. ORDERED Deft's motion to dismiss is Granted in part and Denied in part. Pltf's motion for partial summary judgment is Denied. The Court finds it has jurisdiction over some of Pltf's claims, but declines to issue a declaratory judgment on the basis of those claims. ORDERED that for the reasons set out in the Court's Opinion, this case is Dismissed. (related document(s) [27](#) , [33](#) , [31](#) , [36](#) ).(Taronji, Steve) (Entered: 07/22/2010) |

JA29b

| 08/19/2010 | [41](#) | Motion for reconsideration (related document(s) [40](#) ). Responses due by 9/7/2010. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of All Plaintiffs. (Caligur, Matthew) (Entered: 08/19/2010) |
|---|---|---|
| 09/03/2010 | [42](#) | Consent Motion for extension of time until 9/17/2010 to respond to motion *for reconsideration*. Responses due by 9/27/2010. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of All Defendants.(Miller, Justin) (Entered: 09/03/2010) |
| 09/03/2010 | [43](#) | Order entered on 9/3/2010 granting Motion for extension of time to respond to motion for reconsideration. Respond to motion due by 9/17/2010. (Related Doc # [42](#) ). (Washington, Carolyn) (Entered: 09/03/2010) |
| 09/17/2010 | [44](#) | Response *in opposition* to motion *for reconsideration* (related document(s) [41](#) ). Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of All Defendants.(Miller, Justin) (Entered: 09/17/2010) |
| 10/15/2010 | [45](#) | Order entered on 10/15/2010, Slip Op. 10-116, ORDERED that Plaintiff's motion for reconsideration denied. (related document(s) [41](#) ).(Benbow, Troy) (Entered: 10/15/2010) |
| 12/10/2010 | [46](#) | Notice of Appeal filed. (related document(s) [45](#) , [40](#) ). Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 12/10/2010) |
| 12/21/2010 | [47](#) | Letter *Transcript Order Form Stating Transcript is Not Needed for Appeal*. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Caligur, Matthew) (Entered: 12/21/2010) |
| 12/22/2010 | [48](#) | Appeal of *Ford Motor Company* docketed on 12/22/2010 by the CAFC as appeal no. 2011-1134 (related document(s) [46](#) ). (Love, Cynthia) (Entered: 01/04/2011) |
| 08/10/2012 | [49](#) | CAFC decision in appeal # *2011-1134*. Decision: *Reversed-In-Part, Vacated-In-Part, and Remanded* (related document(s) [48](#) ). (Love, Cynthia) (Entered: 08/14/2012) |
| 10/01/2012 | [50](#) | CAFC mandate in appeal # *2011-1134*. Mandate issued on *October 1, 2012* (related document(s) [46](#) ). (Love, Cynthia) (Entered: 10/09/2012) |
| 01/03/2013 | [51](#) | Letter filed by the Honorable Gregory W. Carman directing parties to file a joint proposed scheduling order with a joint status report no later than January 16, 2013. (Love, Cynthia) Modified on 1/3/2013 (Love, Cynthia). (Entered: 01/03/2013) |
| 01/16/2013 | [52](#) | Joint status report with proposed scheduling order . Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of All Parties. (Attachments: # [1](#) Proposed Order Proposed Scheduling Order)(Caligur, Matthew) (Entered: 01/16/2013) |
| 01/17/2013 | [53](#) | Scheduling Order entered on 1/17/2013: Administrative Record due by 1/18/2013. Defendants shall file its anticipated combined motion to dismiss and motion for judgment on the agency record by 5/10/2013. Plaintiff's response due by 7/12/2013. Defendants reply due by 9/13/2013. Plaintiff shall file its sur-reply in response to the Government's reply due 11/15/2013. (Love, Cynthia) (Entered: 01/17/2013) |
| 01/18/2013 | [54](#) | Consent Motion for extension of time until 1/25/2013 to *file the administrative record*. Responses due by 2/6/2013. Filed by Justin Reinhart Miller of U.S. |

| | | Department of Justice on behalf of All Defendants.(Miller, Justin) (Entered: 01/18/2013) |
|---|---|---|
| 01/18/2013 | [55](#) | Order entered on 1/18/2013 granting Motion for extension of time (Related Doc # [54](#) ). Ordered that U.S. Customs and Border Protection shall file the administrative record by 1/25/2013. (Love, Cynthia) (Entered: 01/18/2013) |
| 01/25/2013 | [56](#) | Consent Motion for protective order . Responses due by 2/13/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States.(Miller, Justin) (Entered: 01/25/2013) |
| 01/25/2013 | [57](#) | Public Administrative record for U.S. Customs and Border Protection filed . Filed by Yelena Slepak of U.S. Department of Homeland Security on behalf of United States. (Slepak, Yelena) (Entered: 01/25/2013) |
| 01/25/2013 | [58](#) | Order entered on 1/25/2013 granting Motion for protective order. Ordered that Administrative Order 02-01 shall govern access to all confidential information filed in this action (Related Doc # [56](#) ). (Love, Cynthia) (Entered: 01/25/2013) |
| 01/25/2013 | [59](#) | Confidential Administrative record for U.S. Customs and Border Protection filed . Filed by Yelena Slepak of U.S. Department of Homeland Security on behalf of United States. (Slepak, Yelena) (Entered: 01/25/2013) |
| 05/09/2013 | [60](#) | Consent Motion to Amend Scheduling Order . Responses due by 5/28/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Miller, Justin) (Entered: 05/09/2013) |
| 05/09/2013 | [61](#) | Order entered on 5/9/2013 granting Motion to Amend Scheduling Order (Related Doc # [60](#) ). Amended Scheduling Order: Defendants shall file its anticipated combined motion to dismiss and motion for judgment on the agency record on or before June 7, 2013; Plaintiff shall file its response in opposition to the motion to dismiss and motion for judgment on the agency record on or before August 9, 2013; Defendants shall file its combined reply and response on or before October 11, 2013; Plaintiff shall file its sur-reply in response to the Government's reply on or before December 13, 2013.(Love, Cynthia) (Entered: 05/09/2013) |
| 06/05/2013 | [62](#) | Consent Motion to Amend Scheduling Order . Responses due by 6/24/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Miller, Justin) (Entered: 06/05/2013) |
| 06/06/2013 | [63](#) | Order entered on 6/6/2013 granting Motion to Amend the May 9, 2013 Scheduling Order (Related Doc # [62](#) ). Amended Scheduling Order: Defendants shall file its anticipated combined motion to dismiss and motion for judgment on the agency record by June 14, 2013; Plaintiff shall file its response in opposition to the motion to dismiss and motion for judgment on the agency record by August 16, 2013; Defendants shall file its combined reply and response by October 18, 2013; Plaintiff shall file its sur-reply in response to defendants' reply by December 20, 2013. (Love, Cynthia) (Entered: 06/06/2013) |
| 06/12/2013 | [64](#) | Confidential Supplemental Administrative record for U.S. Customs and Border Protection filed . Filed by Yelena Slepak of U.S. Department of Homeland Security on behalf of All Defendants. (Slepak, Yelena) (Entered: 06/12/2013) |
| 06/12/2013 | [65](#) | Supplemental Administrative record for U.S. Customs and Border Protection filed *(public version)*. Filed by Yelena Slepak of U.S. Department of Homeland Security |

| | | on behalf of All Defendants. (Slepak, Yelena) (Entered: 06/12/2013) |
|---|---|---|
| 06/14/2013 | 66 | Confidential Motion to Dismiss Case *, or in the alternative,* Motion for Judgment on the Agency Record 56.1. Response to Dispositive Motion due by 8/16/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Miller, Justin) Modified on 6/14/2013 (Love, Cynthia) (Entered: 06/14/2013) |
| 06/14/2013 | 67 | Public Motion to Dismiss Case *, or in the alternative,* Motion for Judgment on the Agency Record 56.1. Response to Dispositive Motion due by 8/16/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Miller, Justin) Modified on 6/14/2013 (Love, Cynthia) (Entered: 06/14/2013) |
| 06/21/2013 | 68 | Order entered on 6/21/2013 reassigning action from Judge Gregory W. Carman to Judge Mark A. Barnett.(Demb, Rebecca) (Entered: 06/21/2013) |
| 08/16/2013 | 69 | Consent Motion to Amend Scheduling Order . Responses due by 9/4/2013. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Caligur, Matthew) (Entered: 08/16/2013) |
| 08/16/2013 | 70 | Order entered on 8/16/2013 granting Motion to Amend Scheduling Order (Related Doc # 69 ). Response to motion to dismiss/motion for judgment due by 8/30/2013. Reply/response due by 11/1/2013. Sur-Reply due by 1/3/2014. (Demb, Rebecca) (Entered: 08/16/2013) |
| 08/30/2013 | 71 | Response *in Opposition* to motion *to Dismiss and Motion for Judgment on the Agency Record* (related document(s) 66 ). Reply/response due by 11/1/2013. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Attachments: # 1 Affidavit Declaration of Paul Vandevert, # 2 Exhibit Exhibit A to Declaration of Paul Vandevert)(Caligur, Matthew) Modified on 9/3/2013 (Demb, Rebecca). (Entered: 08/30/2013) |
| 09/03/2013 | 72 | Amended Response *in Opposition* to motion *to Dismiss, or, in the alternative, Motion for Judgment on the Agency Record* (related document(s) 67 , 66 ). Reply/response due by 11/1/2013. Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company. (Attachments: # 1 Affidavit Declaration of Paul Vandevert, # 2 Exhibit Exhibit A to Declaration of Paul Vandevert)(Caligur, Matthew) Modified on 9/3/2013 (Demb, Rebecca). (Entered: 09/03/2013) |
| 09/23/2013 | 73 | Form 11 Notice of Appearance *for Change of Address.* Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 09/23/2013) |
| 10/25/2013 | 74 | Consent Motion to Amend Scheduling Order . Responses due by 11/13/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. (Miller, Justin) (Entered: 10/25/2013) |
| 10/25/2013 | 75 | Order entered on 10/25/2013 granting Motion to Amend Scheduling Order (Related Doc # 74 ). Reply/Response due by 11/15/2013. Sur-Reply due by 1/17/2014. (Demb, Rebecca) (Entered: 10/25/2013) |
| 11/08/2013 | 76 | Consent Motion to Amend Scheduling Order . Responses due by 11/27/2013. Filed by Justin Reinhart Miller of U.S. Department of Justice on behalf of United States. |

JA29e

|  |  | (Miller, Justin) (Entered: 11/08/2013) |
|---|---|---|
| 11/12/2013 | 77 | Order entered on 11/12/2013 granting Motion to Amend Scheduling Order (Related Doc # 76 ). Reply/Response due by 1/13/2014. Sur-Reply due by 3/17/2014. (Demb, Rebecca) (Entered: 11/12/2013) |
| 11/26/2013 | 78 | Form 11 Notice of Appearance . Filed by Tara Kathleen Hogan of U.S. Department of Justice on behalf of United States.(Hogan, Tara) (Entered: 11/26/2013) |
| 01/10/2014 | 79 | Unopposed Motion to Amend Scheduling Order . Responses due by 1/29/2014. Filed by Tara Kathleen Hogan of U.S. Department of Justice on behalf of United States.(Hogan, Tara) (Entered: 01/10/2014) |
| 01/13/2014 | 80 | Order entered on 1/13/2014 granting Motion to Amend Scheduling Order (Related Doc # 79 ). ORDERED that 1). Defendants shall file their combined response and reply by 1/27/2014 and 2). Plaintiff shall file its sur-reply in response to defendants' reply on or before 3/31/2014. (Cheevers, Casey) (Entered: 01/13/2014) |
| 01/27/2014 | 81 | Confidential Reply *and response in opposition* (related document(s) 72 ). Sur-Reply due 3/31/2014. Filed by Tara Kathleen Hogan of U.S. Department of Justice on behalf of United States.(Hogan, Tara) Modified on 1/28/2014 (Demb, Rebecca). (Entered: 01/27/2014) |
| 02/14/2014 | 82 | Public Reply (related document(s) 72 ). Filed by Tara Kathleen Hogan of U.S. Department of Justice on behalf of United States.(Hogan, Tara) (Entered: 02/14/2014) |
| 03/31/2014 | 83 | Sur-reply *In Opposition to Defendants' Motions to Dismiss and Motion for Judgment on the Agency Record* (related document(s) 67 ). Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 03/31/2014) |
| 06/17/2014 | 84 | Order entered on 6/17/2014 Slip opinion: 14-65 The court grants Defendants motion to dismiss. (related document(s) 67 ).(Demb, Rebecca) (Entered: 06/17/2014) |
| 06/17/2014 | 85 | Order entered on 6/17/2014 Judgment: ORDERED that Defendants motion to dismiss is granted; and it is further ORDERED that this case be dismissed. (related document(s) 84 ).(Demb, Rebecca) (Entered: 06/17/2014) |
| 08/14/2014 | 86 | Notice of Appeal of Order and Judgment of 6/17/2014 filed. (related document(s) 84 , 85 ). Filed by Matthew W. Caligur of Baker & Hostetler, LLP on behalf of Ford Motor Company.(Caligur, Matthew) (Entered: 08/14/2014) |
| 08/20/2014 | 87 | Appeal of *Slip Op. 14-65* docketed on 8/20/2014 by the USCAFC as appeal no. 14-1726 (related document(s) 86 ). (Demb, Rebecca) (Entered: 08/20/2014) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/17/2014 10:04:46 | | |
| **PACER Login:** | bs1625:2851037:0 | **Client Code:** | Ford/Jaguar |

JA29f

Form 4-1

**UNITED STATES COURT OF INTERNATIONAL TRADE**          **FORM 4**

| | |
|---|---|
| Ford Motor Company | |
| | Plaintiff, |
| v. | |
| UNITED STATES, | |
| | Defendant. |

**SUMMONS**

*09- 00151*

TO:   The Above-Named Defendant:

You are hereby summoned and required to serve upon plaintiff's attorney, whose name and address are set out below, an answer to the complaint which is herewith served upon you, within 20* days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

/s/Tina Potuto Kimble
Clerk of the Court

Signature of Plaintiff's Attorney

4/15/2009
Date

Name, Address and Telephone Number
of Plaintiff's Attorney

Paulsen K. Vandevert
Ford Motor Company
1 American Road, Ste 612
Dearborn, MI  48126
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com

* If the United States or an officer or agency thereof is a defendant, the time to be inserted as to it is 60 days, except that in an action described in 28 U.S.C. § 1581(f) the time to be inserted is 10 days.

(As amended Sept. 30, 2003, eff. Jan. 1, 2004; Nov. 28, 2006, eff. Jan. 1, 2007).

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| Ford Motor Company, | : | |
| Plaintiff, | : | Case No.: |
| | : | 09- 00151 |
| v. | : | |
| United States; U.S. Department of Homeland Security, U.S. Customs and Border Protection Defendants. | : | |
| | : | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Ford Motor Co. ("Ford"), by and through its attorneys, hereby alleges as follows:

### PRELIMINARY STATEMENT

This Complaint seeks declaratory relief in a case and controversy existing between plaintiff,

Ford Motor Company and defendants, (collectively referred to as "Customs").  Between

2004 and 2006, Plaintiff Ford, through and for its division, Jaguar Cars North America,

imported Jaguar-brand vehicles from the United Kingdom for sale and distribution in the

United States (hereinafter referred to as either "Plaintiff" or "Ford-JC").  As part of that

process, Ford-JC filed a number of entries with Customs that reconciled the values declared

at the time of entry for the imported Jaguar-brand vehicles, pursuant to what is known as the

ACS Reconciliation Prototype.  In each of these entries, Ford-JC claimed that it was owed

refunds of some of the duties deposited at the time of entry.  Customs has not liquidated any

of these entries.  It is not clear to Ford-JC whether the liquidation of these entries has been

extended or suspended; the reasons for any such extension or suspension of liquidation, and

whether any such action was timely or proper.  This action seeks relief in the form of

declaratory judgment that each of the subject reconciliation entries has been deemed liquidated by operation of law as asserted by Ford-JC at the time of entry and that amounts claimed in those entries should be refunded to Ford with interest as provided for by law.

## THE PARTIES

1.      Jaguar Cars North America, was an unincorporated division of Ford Motor Company until July 2008, and operated as the U.S. distributor of Jaguar-brand vehicles, imported from the U.K.  Ford Motor Company is a Delaware corporation with its headquarters office and principal place of business located at One American Road, Dearborn, Michigan 48126-2798. Hereinafter, Plaintiff will be referred to as "Ford-JC" or "Plaintiff".

2.      Effective July 1, 2008 Ford sold Jaguar Cars, Ltd, including JCNA to Tata Motors.

3.      The sale agreement between Ford and Tata included a provision that Ford retained all rights, interests, and obligations of Ford-JC prior to July 1, 2008 with respect to tax matters, which includes Customs duties.  Therefore, Ford is the proper party in interest and has standing in this action.

4.      Defendants, the U.S. Department of Homeland Security, of which US Customs and Border Protection is a part, are executive agencies of the United States government. Defendants will be referred to individually and collective as "Customs", which has its Headquarters in Washington, D.C., and operates over 300 ports of entry throughout the United States, including the port of Newark, New Jersey.

2

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), because, as of the time this action is being commenced, Customs has not liquidated any of the subject entries.  Therefore, Plaintiff has no administrative action to take or remedy to exhaust.  There is no other part of section of 28 U.S.C. § 1581 that applies.

6.      Pursuant to 28 U.S.C. § 1585, this Court has authority to make declaratory judgments and grant Plaintiff the relief it requests under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## OTHER RELATED ACTIONS

7.      There are no other related actions involving this claim being litigated between the parties.

## FACTS

### Customs' Reconciliation Prototype

8.      Customs initiated the ACS Reconciliation Prototype in 1998, under which, with respect to valuation, an importer that "flags" a consumption entry of importer merchandise, separates the valuation from that entry and at a later time[1], files a reconciliation of the value originally declared at the time of entry.  In a reconciliation entry for value, the importer may include as many other consumption entries that have been flagged, up to a maximum of 99,999 entry lines, as long as all of the entries included in the reconciliation entry were not filed earlier than the maximum time period allowed for Reconciliation.  See Customs' Reconciliation Handbook v4, published in October 2005 ("Reconciliation Handbook").

---

[1] Initially, not more than 15 months from the date of the underlying consumption entry and now not more than 21 months from the date of the underlying consumption entry.

9.      In a reconciliation entry for value, the values declared at the time of entry can be

reconciled upward, so that the importer pays additional duties; downward, in which case, the

importer receives a refund of duties deposited; or no change, in which the values declared at

the time of entry and the duties deposited are made the final value declaration and the duties

deposited are those that are owed.  See Reconciliation Handbook.

10.     Legally and procedurally, reconciliation entries are the same as consumption entries.

Customs must liquidate them in accordance with 19 U.S.C. §§ 1500 and 1504.

11.     Pursuant to 19 U.S.C. § 1504, if Customs does not timely or properly extend or

suspend the liquidation of a reconciliation entry, the reconciliation entry is deemed to have

liquidated by operation of law as asserted by the importer at the time of entry, which, with

respect to reconciliations, means at the time the reconciliation entry was filed.

**Ford-JC's Value Reconciliation Entries filed in the Port of Newark**

12.     Between 2004 and 2006, Ford-JC imported motor vehicles from the United Kingdom

into the United States.

13.     Ford-JC flagged for value reconciliation all of the consumption entries listed in each

of the reconciliation entries at issue in this action.

14.     Ford-JC timely filed each of the reconciliation entries listed in Exhibit A to this

Complaint and Customs accepted each of these reconciliation entries.  The reconciliation

entries listed in Exhibit B will be referred to herein, collectively and individually as the

Subject Entries.

15.     In August 2005, Customs issued a Request for Information for Subject Entry # 300-

9945928-8.  Ford responded to the Request for Information in October 2005.  Following a

meeting between representative of Ford-JC and an Import Specialist in the Port of Newark in

November 2005, at which Ford's response and Customs' inquiry regarding the Subject Entry
were discussed, Ford submitted a supplemental response.

16.    Until the latter part of 2008, Customs made no further inquiries or made any other
contact with Ford-JC with respect to any of the Subject Entries.

17.    On information and belief, Customs has been working on Internal Advice for similar
reconciliation entries filed by Saab USA and Volkswagen USA in the Port of Newark at
about the same time as Ford-JC filed the Subject Entries.

18.    On information and belief, the issue that Customs has been considering is the proper
method of appraisement to be applied to Saab's and Volkswagen's reconciliation entries.

19.    Sometime in October or November 2008, an attorney-advisor in Customs'
Headquarters' Office of Regulation and Rulings (OR&R), Ms. Yulia Gulis, contacted Ford's
in-house counsel, Mr. Paul Vandevert, by telephone.  Ms. Gulis said that she was working on
the Subject Entry for which Ford had responded to a Request for Information and initially
requested a copy of Ford's Transfer Pricing policy.  After some discussion between Ms. Gulis
and Mr. Vandevert, it was agreed that Ford did not need to provide the Transfer Pricing
policy.

20.    At no time during the telephone conversation between Ms. Gulis and Mr. Vandevert
was the liquidation, extension of liquidation, or the reasons for any such extension of
liquidation of the Subject Entries mentioned or discussed by either person.

21.    Sometime in February 2009, Ms. Gulis again contacted Mr. Vandevert by telephone
and requested a complete copy of Ford's response to the Request for Information issued by
Customs and responded to by Ford in 2005.  Mr. Vandevert sent a complete copy of Ford's
response to Ms. Gulis, as requested.

22.    At no time during the February 2009 telephone conversation between Ms. Gulis and Mr. Vandevert was the liquidation, extension of liquidation, or the reasons for any such extension of liquidation of any of the Subject Entries mentioned or discussed by either person.

23.    The Subject Entries at issue in this action have remained open and not been liquidated by Customs since they were originally filed between 2005 and 2006.

24.    Customs has never issued a notice to Ford-JC that the liquidation of any of the Subject Entries has been extended.

25.    Customs has never issued a notice to Ford-JC that the liquidation of any of the Subject Entries has been suspended as required by statute or order of a Court.

26.    Customs has never notified Ford-JC of the reasons for any such extension or suspension of liquidation of any of the Subject Entries at issue in this action.

27.    Customs maintain records of all action taken by Customs with respect to an entry, including, but not limited to, extensions and suspensions of liquidation.

28.    Customs' records of actions taken on entries include, among other information, the date and the reason for such action, the person who took the action, and the current status of the entry and/or action.

29.    Customs can and is legally required to produce the records it has created and maintains for entries.

## DECLARATORY RELIEF

### First Cause of Action

30.    The allegations contained in paragraphs 1 through 29 of this Complaint are incorporated by reference herein.

JA36

31.     The Subject Entries at issue in this action are subject to the provisions and requirements of 19 U.S.C. § 1504.

32.     Because Customs has not extended or suspended liquidation of any of the Subject Entries, each and all of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

33.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each of the Subject Entries at issue in this case was deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

## Second Cause of Action

34.     The allegations contained in paragraphs 1 through 33 of this Complaint are incorporated by reference herein.

35.     Even if Customs did extend or suspend the liquidation of any or all of the Subject Entries, Customs did not issue notices of such extension or suspension to Ford-JC, as required by  19 U.S.C. § 1504(b) and (c).

36.     Because Customs did not issue notices of any such extension or suspension of liquidation of any or all of the Subject Entries to Ford-JC, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

37.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each and every one of the Subject Entries at issue in this case was deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

7

## Third Cause of Action

38.    The allegations contained in paragraphs 1 through 37 of this Complaint are incorporated by reference herein.

39.    Even if Customs did issue notices to Ford-JC that any or all of the Subject Entries had been extended or suspended from liquidation, Customs did not give any reasons for the purported extension or suspension as required by 19 U.S.C. § 1504(b) and (c).

40.    Because Customs did not give reasons for any such extension or suspension of liquidation of any or all of the Subject Entries to Ford-JC, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

41.    Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

## Fourth Cause of Action

42.    The allegations contained in paragraphs 1 through 41 of this Complaint are incorporated by reference herein.

43.    Pursuant to 19 U.S.C. § 1504(b) Customs may extend the liquidation of an entry for only one of two reasons:  (1) that Customs requires additional information from the importer needed for the proper appraisement of the entry or to ensure compliance with the law or (2) at the request of the importer.

44.    Following Ford's response to the Request for Information, Customs has not asked Ford for any more information relating to any of the Subject Entries and, therefore, Customs

JA38

must be presumed to have all of the information it needed form Ford-JC to appraise the Subject Entries.

45.     Ford-JC never requested that liquidation of any of the Subject Entries be extended.

46.     Ford-JC never requested that the Port of Newark seek Internal Advice from Customs Headquarters, as provided for by Customs regulation, 19 CFR 177.11.

47.     Because Customs did not have either of the two exclusive, statutory reasons for extending any or all of the Subject Entries, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

48.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

<div align="center">**Prayer for Relief**</div>

**WHEREFORE**, plaintiff respectfully requests that this Court issue declaratory judgment that:

A.     Each of the Subject Entries was deemed liquidated by operation of law one year from the date each reconciliation entry was made, because Customs did not timely and/or properly extend or suspend the liquidation of each entry as provided and required by 19 U.S.C. § 1504.

B.     Customs must forthwith process and refund to Ford-JC, all excess duties paid by Ford-JC at the time of the underlying consumption entries, as asserted by Ford-JC in the

<div align="center">9</div>

Subject Entries, plus all interest allowed by law not later than 60 days after final judgment in this action is entered.

Plaintiff also requests that the Court grant such other and relief as this Court deems appropriate.

<div style="text-align:right">

By. /s/ Paulsen K. Vandevert

Paulsen K. Vandevert
Ford Motor Company
1 American Road, Ste 612
Dearborn, MI  48126
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com

</div>

Dated: April 15, 2009

10

## Exhibit A

| Reconciliation Entry Number | IOR | Port | Recon File Date |
|---|---|---|---|
| 300-9945919-7 | 38-0549190JC | 1001 | 6/28/2005 |
| 300-9945928-8 | 38-0549190JC | 1001 | 7/25/2005 |
| 300-9945935-3 | 38-0549190JC | 1001 | 8/12/2005 |
| 300-4830222-5 | 38-0549190JC | 1001 | 5/8/2006 |
| 300-4830252-2 | 38-0549190JC | 1001 | 6/13/2006 |
| 300-4830272-0 | 38-0549190JC | 1001 | 7/18/2006 |
| 300-4830281-1 | 38-0549190JC | 1001 | 8/10/2006 |
| 300-4830280-3 | 38-0549190JC | 1001 | 8/11/2006 |
| 300-4830290-2 | 38-0549190JC | 1001 | 9/21/2006 |
| 300-4830301-7 | 38-0549190JC | 1001 | 10/5/2006 |

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

Before:  The Honorable Gregory W. Carman

---

|  |  |  |
|---|---|---|
| Ford Motor Company, | : | |
| | : | |
| Plaintiff, | : | Case No.:  09-0151 |
| | : | |
| v. | : | |
| | : | |
| United States; U.S. Department of Homeland | : | |
| Security, U.S. Customs and Border Protection | : | |
| Defendants. | : | |

---

### FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Ford Motor Co. ("Ford"), by and through its attorneys, hereby alleges as follows:

### PRELIMINARY STATEMENT

This First Amended Complaint seeks declaratory relief in a case and controversy existing between plaintiff, Ford Motor Company and defendants, (collectively referred to as "Customs").  Between 2004 and 2005, Plaintiff Ford, through and for its division, Jaguar Cars North America, imported Jaguar-brand vehicles from the United Kingdom for sale and distribution in the United States (hereinafter referred to as either "Plaintiff" or "Ford-JC").  As part of that process, Ford-JC filed a number of entries with Customs that reconciled the values declared at the time of entry for the imported Jaguar-brand vehicles, pursuant to what is known as the ACS Reconciliation Prototype.  In each of these entries, Ford-JC claimed that it was owed refunds of some of the duties deposited at the time of entry.  Customs did not affirmatively liquidate any of these entries.  It is not clear to Ford-JC whether the liquidation of these entries was extended or suspended; the reasons for any such extension or

suspension of liquidation, and whether any such action was timely or proper. This action seeks relief in the form of declaratory judgment that each of the subject reconciliation entries has been deemed liquidated by operation of law as asserted by Ford-JC at the time of entry and that amounts claimed in those entries should be refunded to Ford with interest as provided for by law. In addition, with respect to two of the subject entries, Ford seeks declaratory judgment that the "automatic" liquidation by Customs of these two entries means, as required by the statute, that these two entries liquidated as entered with the claim for a duty refund as asserted by Ford-JC in each of the reconciliation to be paid by Customs with applicable interest forthwith. Ford-JC also seeks declaratory judgment that a ruling issued by Customs as well as a Request for Information issued for that entry are moot because this entry has liquidated as entered. Finally, Ford-JC seeks injunctive relief enjoining Customs from taking any further action with respect to any or all of the Subject Entries until Plaintiff's request for Declaratory Judgment has been finally decided.

## THE PARTIES

1.      Jaguar Cars North America, was an unincorporated division of Ford Motor Company until July 2008, and operated as the U.S. distributor of Jaguar-brand vehicles, imported from the U.K. Ford Motor Company is a Delaware corporation with its headquarters office and principal place of business located at One American Road, Dearborn, Michigan 48126-2798. Hereinafter, Plaintiff will be referred to as "Ford-JC" or "Plaintiff".

2.      Effective July 1, 2008 Ford sold Jaguar Cars, Ltd, including JCNA to Tata Motors.

3.      The sale agreement between Ford and Tata included a provision that Ford retained all rights, interests, and obligations of Ford-JC prior to July 1, 2008 with respect to tax matters,

which includes Customs duties.  Therefore, Ford is the proper party in interest and has

standing in this action.

4.       Defendants, the U.S. Department of Homeland Security, of which US Customs and

Border Protection is a part, are executive agencies of the United States government.

Defendants will be referred to individually and collective as "Customs", which has its

Headquarters in Washington, D.C., and operates over 300 ports of entry throughout the

United States, including the port of Newark, New Jersey.

## JURISDICTION

5.       This First Amended Complaint is filed as a matter of course, pursuant to Rule 15(a)

of the Court of the International Trade, as Defendants have not filed an Answer to the

original Complaint or otherwise served a responsive pleading.

6.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), because,

as of the time this action is being commenced, with the exception of two entries, Customs has

not liquidated any of the subject entries.  Therefore, Plaintiff has no administrative action to

take or remedy to exhaust.  There is no other part of section of 28 U.S.C. § 1581 that applies.

7.       With respect to the two entries indicated on Exhibit A-1 to this Complaint, Customs

automatically liquidated these entries, because both entries reached the statutory 4-year limit

for Customs to otherwise liquidate them.  Declaratory judgment as to the legal consequence

of an automatic liquidation, which Plaintiff asserts, pursuant to the statute, 19 U.S.C. §

1504(b), should mean that liquidation was as entered, is the only appropriate course of action

for Plaintiff and the only appropriate remedy for the Court to grant under the circumstances.

8.    Pursuant to 28 U.S.C. § 1585, this Court has authority to make declaratory judgments and grant Plaintiff the relief it requests under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## OTHER RELATED ACTIONS

9.    There are no other related actions involving this claim being litigated between the parties.

## FACTS

### Customs' Reconciliation Prototype

10.    Customs initiated the ACS Reconciliation Prototype in 1998, under which, with respect to valuation, an importer that "flags" a consumption entry of importer merchandise, separates the valuation from that entry and at a later time[1], files a reconciliation of the value originally declared at the time of entry.  In a reconciliation entry for value, the importer may include as many other consumption entries that have been flagged, up to a maximum of 99,999 entry lines, as long as all of the entries included in the reconciliation entry were not filed earlier than the maximum time period allowed for Reconciliation.  See Customs' Reconciliation Handbook v4, published in October 2005 ("Reconciliation Handbook").

11.    In a reconciliation entry for value, the values declared at the time of entry can be reconciled upward, so that the importer pays additional duties; downward, in which case, the importer receives a refund of duties deposited; or no change, in which the values declared at the time of entry and the duties deposited are made the final value declaration and the duties deposited are those that are owed.  See Reconciliation Handbook.

---

[1] Initially, not more than 15 months from the date of the underlying consumption entry and now not more than 21 months from the date of the underlying consumption entry.

12.     Legally and procedurally, reconciliation entries are the same as consumption entries. Customs must liquidate them in accordance with 19 U.S.C. §§ 1500 and 1504.

13.     Pursuant to 19 U.S.C. § 1504, if Customs does not timely or properly extend or suspend the liquidation of a reconciliation entry, the reconciliation entry is deemed to have liquidated by operation of law as asserted by the importer at the time of entry, which, with respect to reconciliations, means at the time the reconciliation entry was filed.

14.     The statute, 19 U.S.C. § 1504(b), requires Customs to liquidate entries that have reached the 4-year maximum period as entered.

15.     On information and belief, where Customs has taken no action on an entry, Customs' computer system has been programmed to automatically liquidate any entry that is within approximately 15 or fewer days of reaching the 4-year statutory limit for liquidation of entries, as provided for by 19 U.S.C. § 1504(b).

**Ford-JC's Value Reconciliation Entries filed in the Port of Newark**

16.     Between 2004 and 2006, Ford-JC imported motor vehicles from the United Kingdom into the United States.

17.     Ford-JC flagged for value reconciliation all of the consumption entries listed in each of the reconciliation entries at issue in this action.

18.     Ford-JC timely filed each of the reconciliation entries listed in Exhibit A to this Complaint and Customs accepted each of these reconciliation entries.  The reconciliation entries listed in Exhibit A will be referred to herein, collectively and individually as the Subject Entries.

19.     The two Subject Entries listed in Exhibit A-1 were entered on June 29, 2005 and July 28, 2005 respectively.  Customs automatically liquidated these two entries on June 19, 2009 and July 17, 2009, respectively.

20.     A third Subject Entry, which is shaded in Exhibit A-1, has not yet liquidated, but should be automatically liquidated by Customs on August 21, 2009 and not later than August 26, 2009, which is the 4-year anniversary of the date of entry.

21.     The Subject Entries listed in Exhibit A-2 have not yet reached the maximum 4-year period.

### Customs' Initial Request for Information

22.     In October 2005, Customs issued a supplemental Request for Information for Subject Entry # 300-9945928-8.  Customs requested an explanation for the decrease in value asserted in the reconciliation entry as well as supporting documentation.

23.     Ford responded to the Request for Information on November 3, 2005.  Following a meeting between representative of Ford-JC and an Import Specialist in the Port of Newark on November 30, 2005, at which Ford's response and Customs' inquiry regarding the Subject Entry were discussed, Ford submitted a supplemental response, dated December 9, 2005.

24.     Until the latter part of 2008, Customs made no further inquiries or made any other contact with Ford-JC with respect to any of the Subject Entries.

25.     In a telephone conversation that occurred on or about November 25, 2005, Import Specialist Christopher Polashock in the Port of Newark (the person who had issued the CF28's to Ford-JC) told Paul Vandevert, Ford's in-house counsel for International Trade and Customs matters, that he had submitted a "general" request for Internal Advice to Customs

Headquarters on the topic of how to handle reconciliation entries that requested duty refunds based on transfer pricing related adjustments.

26.     In response to Mr. Vandevert's question whether the general request for Internal Advice had been triggered or related to Ford-JC and its response to the Request for Information, Mr. Polashock stated "No", that if a request for Internal Advice did relate to Ford-JC, Mr. Polashock would have informed Ford-JC prior to making the request.

27.     In a November 30, 2005 meeting between representatives of Ford-JC and Customs in the Port of Newark, Mr. Polashock stated that Ford-JC's reconciliation entries and the issues of valuation they presented to him were "consistent" with other importer's reconciliation entries that he had under review.

28.     On information and belief, Mr. Polashock was referring to Saab USA and Volkswagen of America and possibly other automotive companies that had filed reconciliation entries in the Port of Newark seeking duty refunds.

29.     In that same meeting, Mr. Polashock also stated that he was considering seeking Internal Advice for one of Ford-JC's reconciliation entries.  But, he did not identify a specific entry or importer.

30.     In that same meeting, Mr. Polashock stated that he understood Ford's responses to the Request for Information and did not think he had any further questions.

31.     In a follow-up letter to the November 30 meeting, dated December 13, 2005, Ford-JC advised for the reasons set forth in that letter as well as the response to the CF28, Internal Advice was not required for Ford-JC's reconciliation entries.

**Customs' Initiates Internal Advice for Other Importers That Filed Reconciliation Entries
in the Port of Newark**

32.     By February 2006, colleagues at Saab USA and Volkswagen of America had

informed Ford-JC that they had been notified by Customs in the Port of Newark that their

reconciliation entries were the subject of an Internal Advice request on whether Transaction

Value was the appropriate method of appraisement for these types of reconciliation entries.

33.     At no time prior to June 25, 2009 did Customs ever notify Ford-JC that any of its

reconciliation entries were the subject of Internal Advice or any other review by Customs.

34.     Sometime in late October 2008, Ms. Yulia Gulis, who on information and belief is an

attorney-advisor in Customs' Headquarters' Office of Regulation and Rulings (OR&R)

assigned to the Valuation Branch, called Mr. Vandevert at Ford.  Ms. Gulis said that she was

"working" on the Subject Entry for which Ford had responded to the Request for Information

and asked that Ford-JC provide a copy of its Transfer Pricing policy.  After some discussion

between Ms. Gulis and Mr. Vandevert, it was agreed that Ford would not provide the

Transfer Pricing policy as it was not a relevant document for Customs Valuation purposes,

per Customs Informed Compliance Publication:  "Determining the Acceptability of

Transaction Value for Related Party Transactions" (April 2007).

35.     At no time during the telephone conversation between Ms. Gulis and Mr. Vandevert

was the liquidation, extension of liquidation, or the reasons for any such extension of

liquidation of the Subject Entries mentioned or discussed by either person.

36.     Nor did Ms. Gulis give any notice of or even reference Internal Advice or any other

ruling with respect to Ford-JC.

37.     Ms. Gulis' call was the first contact with Ford from Customs regarding the Subject

Entries since December 2005.

38.     Sometime in February 2009, Ms. Gulis again contacted Mr. Vandevert by telephone and requested a complete copy of Ford's response to the Request for Information issued by Customs and responded to by Ford in 2005.  Mr. Vandevert sent a complete copy of Ford's response to Ms. Gulis, as requested.

39.      At no time during the February 2009 telephone conversation between Ms. Gulis and Mr. Vandevert was the liquidation, extension of liquidation, or the reasons for any such extension of liquidation of any of the Subject Entries mentioned or discussed by either person.

40.     Nor did Ms. Gulis give any notice of or even reference any pending Internal Advice or any other ruling with respect to Ford-JC or the Subject Entries.

### Customs' Issues Internal Advice to Ford-JC on One of the Subject Entries

41.     On June 25, 2009, Import Specialist Gregory M. Riley in the Port of Newark faxed a copy of what purports to be Internal Advice issued with respect to Subject Entry 300-99459288.  In addition, a Request for Information was also issued seeking additional information from Ford-JC with respect to this entry.

42.     Ford never requested Internal Advice for any of the Subject Entries.

43.     Customs never notified Ford that Internal Advice had been requested or was being issued; nor did Customs seek additional information from Ford with respect to this Internal Advice, as would normally being expect during such a process.

44.     On July 14, 2009, Customs faxed several Requests for Information covering all of the remaining Subject Entries with the exception of Subject Entry 300-9945919-7.  These Requests for Information are based on the Internal Advice issued to Ford-JC and ask for the same information as the original June 25 Request for Information.

45.     Because Subject Entry 300-99459288 has been automatically liquidated by Customs as entered, the purported Internal Advice and the Requests for Information are moot.

### The Unliquidated Subject Entries

46.     The Subject Entries listed in Exhibit A-2 have remained open and not been liquidated by Customs since they were originally filed between 2005 and 2006 (hereinafter the A-2 Subject Entries).

47.     Customs never issued a notice to Ford-JC that the liquidation of any of the Subject Entries had been extended.

48.     Customs never issued a notice to Ford-JC that the liquidation of any of the Subject Entries was suspended as required by statute or order of a Court.

49.     Customs has never notified Ford-JC of the reasons for any such extension or suspension of liquidation of any of the Subject Entries at issue in this action.

50.     Customs maintain records of all action taken by Customs with respect to an entry, including, but not limited to, extensions and suspensions of liquidation.

51.     Customs' records of actions taken on entries include, among other information, the date and the reason for such action, the person who took the action, and the current status of the entry and/or action.

52.     Customs can and is legally required to produce the records it has created and maintains for entries.

### DECLARATORY RELIEF

### First Cause of Action

53.     The allegations contained in paragraphs 1 through 52 of this Complaint are incorporated by reference herein.

54.     The first two Subject Entries listed in Exhibit A-1 (hereinafter the A-1 Subject Entries) were automatically liquidated by Customs on June 19, 2009 and July 17, 2009 respectively.

55.     The third Subject Entry listed in Exhibit A-1 will automatically liquidate on or about August 21, 2009 and not later than August 26, 2009, which will be the 4-year date anniversary of the date of entry.

56.     Pursuant to 19 U.S.C. § 1504(b), the automatic liquidation of these entries is as entered, which means that Ford is entitled to receive the duty refunds as claimed in each of the three entries.

57.     Customs has not issued any duty refunds for either of these three entries nor has Customs given any indication of if or when it will do so.

58.     Pursuant to 19 U.S.C. § 1504(b), Customs must liquidate an entry that has reached its maximum 4-year period as entered, which with respect to automatically liquidated entries for Ford-JC means that Customs must refund the duties claimed in those entries.

59.     Ford requests that this Court issue Declaratory Judgment to Customs that the three A-1 Subject Entries liquidated as entered and that Customs must issue the duty refunds claimed by Ford in those entries forthwith.

**<u>Second Cause of Action</u>**

60.     The allegations contained in paragraphs 1 through 59 of this Complaint are incorporated by reference herein.

61.     Customs has issued Internal Advice, dated June 22, 2009, relating to Subject Entry 300-9945928-8, purportedly determining that the Transaction Value method of appraisement

cannot be applied to this entry and instructing the Port of Newark to make further inquiries to determine whether the Deductive Value method of appraisement can be applied.

62.     As instructed, the Port of Newark has issued Requests for Information, dated June 25 and July 14, 2009, asking Ford-JC to provide additional information relating to Deductive Value for all but one of the Subject Entries.

63.     Subject Entry 300-9945928-8 automatically liquidated as entered on July 17, 2009.

64.     Because Subject Entry 300-9945928-8 has automatically liquidated as entered, Customs Internal Advice ruling relating to this entry is moot and has no precedential authority with respect to that or any other entry.

65.      Because Subject Entry 300-9945928-8 has automatically liquidated as entered, and the Internal Advice ruling issued for that entry, Customs has no reason to require Ford-JC to respond to the Requests for Information issued on June 25 and July 14, 2009.

66.     Wherefore, Plaintiff requests this Court issue Declaratory Judgment that the Internal Advice issued by Customs on June 22, 2009 is moot and has no precedential authority with respect to any other entry, and the Request for Information is moot and need not be responded to, all because Subject Entry 300-9945928-8 liquidated as entered.

### Third Cause of Action

67.     The allegations contained in paragraphs 1 through 66 of this Complaint are incorporated by reference herein.

68.     Because Customs has not extended or suspended liquidation of any of the A-2 Subject Entries, each and all of the a-2 Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the A-2 Subject Entries.

69.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each of the A-2 Subject Entries at issue in this case was deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the A-2 Subject Entries.

**Fourth Cause of Action**

70.     The allegations contained in paragraphs 67 through 69 of this Complaint are incorporated by reference herein.

71.     Even if Customs did extend or suspend the liquidation of any or all of the A-2 Subject Entries, Customs did not issue notices of such extension or suspension to Ford-JC, as required by 19 U.S.C. § 1504(b) and (c).

72.     Because Customs did not issue notices of any such extension or suspension of liquidation of any or all of the A-2 Subject Entries to Ford-JC, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the A-2 Subject Entries.

73.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each and every one of the A-2 Subject Entries at issue in this case was deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the A-2 Subject Entries.

**Fifth Cause of Action**

74.     The allegations contained in paragraphs 70 through 73 of this Complaint are incorporated by reference herein.

75.     Even if Customs did issue notices to Ford-JC that any or all of the A-2 Subject Entries had been extended or suspended from liquidation, Customs did not give any reasons for the purported extension or suspension as required by 19 U.S.C. § 1504(b) and (c).

76.     Because Customs did not give reasons for any such extension or suspension of liquidation of any or all of the A-2 Subject Entries to Ford-JC, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the A-2 Subject Entries.

77.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the A-2 Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the A-2 Subject Entries.

## Sixth Cause of Action

78.     The allegations contained in paragraphs 74 through 77 of this Complaint are incorporated by reference herein.

79.     Pursuant to 19 U.S.C. § 1504(b) Customs may extend the liquidation of an entry for only one of two reasons:  (1) that Customs requires additional information from the importer needed for the proper appraisement of the entry or to ensure compliance with the law or (2) at the request of the importer.

80.     Until June 25, 2009, Customs had not asked Ford for any more information relating to any of the A-2 Subject Entries and, therefore, Customs must be presumed to have had all of the information it needed form Ford-JC to appraise the A-2 Subject Entries.

81.     Ford-JC never requested that liquidation of any of the A-2 Subject Entries be extended.

82.     Because Customs did not have either of the two exclusive, statutory reasons for extending any or all of the A-2 Subject Entries, each and every one of the A-2 Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the a-2 Subject Entries.

83.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the A-2 Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the A-2 Subject Entries.

## Seventh Cause of Action

84.     The allegations contained in paragraphs 1 through 83 of this Complaint are incorporated by reference herein.

85.     Customs continues to work on the Subject Entries, as evidenced by the issuance of Requests for Information to Ford-JC, dated June 25 and July 14, 2009, including, but not limited to, issuing Internal Advice which Ford never requested and for which Ford-JC was given no notice or opportunity to provide additional information or arguments to support appraisement of the Subject Entries under Transaction Value, as required by Customs' regulations at 19 CFR 152.103(m).

86.     Customs' actions are imposing an unreasonable and costly burden on Ford-JC in being placed in the position of having to respond to Customs' requests and demands for which there is no apparent legal authority or rationale.

87.     If Ford fails to respond to Customs' requests and demands, Ford-JC exposes itself to further adverse actions by Customs, including, the initiation of civil and even possibly

criminal investigations and cases against Ford-JC for failure to respond to Customs' requests and demands.

88.     Such actions, requests and demands have imposed irreparable harm and are likely to impose additional irreparable harm on Ford-JC if they are not enjoined by the Court.

89.     Therefore, the Court should issue an order enjoining Customs from taking any further action on any of the Subject Entries until a final decision has been made and entered as judgment with respect to Plaintiff's requests for Declaratory Judgment.  The injunction, if issued, should state that the statutory deadlines and limitations with respect to deemed liquidation of entries will not be tolled during the period of the injunction.

### Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court issue declaratory judgment that:

A.     Each of the A-1 liquidated as entered and Ford is entitled to receive from Customs the full amount of duty refunds claimed in each of those entries, plus interest as allowed by law.

B.     Each of the A-2 Subject Entries was deemed liquidated by operation of law one year from the date each reconciliation entry was made, because Customs did not timely and/or properly extend or suspend the liquidation of each entry as provided and required by 19 U.S.C. § 1504.

C.     Customs must forthwith process and refund to Ford-JC, all excess duties deposited by Ford-JC at the time of the underlying consumption entries, as asserted by Ford-JC in the Subject Entries, plus all interest allowed by law not later than 60 days after final judgment in this action is entered.

D.    Customs is enjoined until such time as a final decision and judgment is entered on

Plaintiff's request for Declaratory Judgment from taking any further action with respect to

Ford-JC and the Subject Entries.

Plaintiff also requests that the Court grant such other and relief as this Court deems

appropriate.

By. /s/ Paulsen K. Vandevert
Paulsen K. Vandevert
Ford Motor Company
1 American Road, Ste 612
Dearborn, MI  48126
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com

Dated: July 15, 2009

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable Gregory W. Carman

_____
                                        :
Ford Motor Company,                     :
                                        :     Case No.: 09-0151
                    Plaintiff,          :
                                        :
          v.                            :
                                        :
United States; U.S. Department of Homeland :
Security, U.S. Customs and Border Protection :
                    Defendants.         :
_____:


## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Ford Motor Co. ("Ford"), by and through its attorneys, hereby alleges as follows:

## PRELIMINARY STATEMENT

This Second Amended Complaint seeks declaratory and injunctive relief in a case and controversy existing between plaintiff, Ford Motor Company and defendants (collectively referred to as "Customs"). Between 2004 and 2005, Plaintiff Ford, through and for its division, Jaguar Cars North America (hereinafter referred to as either "Plaintiff" or "Ford-JC"), imported Jaguar-brand vehicles from the United Kingdom for sale and distribution in the United States. As part of that process, Ford-JC filed a number of entries with Customs that reconciled the values declared at the time of entry for the imported Jaguar-brand vehicles, pursuant to what is known as the ACS Reconciliation Prototype. In each of these entries, Ford-JC claimed that it was owed refunds of some of the duties deposited at the time of entry.

As of the date this action was commenced, Customs had not affirmatively liquidated any of these entries.  It is not clear to Ford-JC whether the liquidation of these entries was extended or suspended; the reasons for any such extension or suspension of liquidation, and whether any such action was timely or proper.  This action seeks relief in the form of declaratory judgment that each of the subject reconciliation entries has been deemed liquidated by operation of law as asserted by Ford-JC at the time of entry and that the amounts claimed in those entries should be refunded to Ford with interest as provided for by law.  In addition, with respect to three of the subject entries, Ford seeks declaratory judgment that Customs' purported reliquidations of these entries and denials of the refund of duties as entered by Ford-JC in the reconciliation entries are null and void.  Ford-JC also seeks declaratory judgment that Internal Advice issued by Customs to Ford-JC with respect to one of the subject entries is either null and void as a matter of law, or is moot as the entry on which the Internal Advice is based was deemed liquidated as entered by operation of law, prior to issuance of the Internal Advice.  Finally, Ford-JC seeks injunctive relief enjoining Customs from taking any further action with respect to any or all of the subject entries until Plaintiff's request for Declaratory Judgment has been finally decided.

## THE PARTIES

1.      Jaguar Cars North America was an unincorporated division of Ford Motor Company until July 2008 and operated as the U.S. distributor of Jaguar-brand vehicles, imported from the U.K.  Ford Motor Company is a Delaware corporation with its headquarters office and principal place of business located at One American Road, Dearborn, Michigan 48126-2798.  Hereinafter, Plaintiff will be referred to as "Ford-JC" or "Plaintiff".

2.      Effective July 1, 2008 Ford sold Jaguar Cars, Ltd, including JCNA to Tata Motors.

3.      The sale agreement between Ford and Tata included a provision that Ford retained all rights, interests, and obligations of Ford-JC prior to July 1, 2008 with respect to tax matters, including Customs duties.  Therefore, Ford is the proper party in interest and has standing in this action.

4.      Defendants, the U.S. Department of Homeland Security, of which US Customs and Border Protection is a part and which has its Headquarters in Washington, D.C., and operates over 300 ports of entry throughout the United States, including the port of Newark, New Jersey, are executive agencies of the United States government.  Defendants will be referred to individually and collective as "Customs".

## **JURISDICTION**

5.      This Second Amended Complaint is filed as a matter of course, pursuant to Rule 15(a) of the Court of the International Trade, as Defendants have not filed an Answer to the original Complaint or otherwise served a responsive pleading.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), because, as of the time this action was commenced, Customs had not liquidated any of the Subject Entries.  Therefore, Plaintiff has no administrative action to take or remedy to exhaust.  There is no other part of section of 28 U.S.C. § 1581 that applies.

7.      Declaratory judgment as to the legal consequence of statutorily deemed liquidation (which Plaintiff asserts, pursuant to the statute, 19 U.S.C. § 1504(b), should mean that the Subject Entries were deemed liquidated as entered and that Customs must refund the duties as claimed by Ford-JC), is the only appropriate course of action for Plaintiff and the only appropriate remedy for the Court to grant under the circumstances.

8.      Pursuant to 28 U.S.C. § 1585, this Court has authority to make declaratory judgments and grant Plaintiff the relief it requests under the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      Customs cannot divest this Court of jurisdiction by actions taken after this action was commenced.

## OTHER RELATED ACTIONS

10.     At this time, there are no other related actions involving this claim being litigated between the parties.

## FACTS

### Customs' Reconciliation Prototype

11.     Customs initiated the ACS Reconciliation Prototype in 1998, under which, with respect to valuation, an importer that "flags" a consumption entry of imported merchandise, separates the valuation from that entry and at a later time[1], files a reconciliation of the value originally declared at the time of entry.  In a reconciliation entry for value, the importer may include as many other consumption entries that have been flagged, up to a maximum of 99,999 entry lines, as long as all of the entries included in the reconciliation entry were not filed earlier than the maximum time period allowed for Reconciliation.  See Customs' Reconciliation Handbook v4, published in October 2005 ("Reconciliation Handbook").

12.     In a reconciliation entry for value, the values declared at the time of entry can be reconciled upward, so that the importer pays additional duties; downward, in which case, the importer receives a refund of duties deposited; or no change, in which the values declared at

---

[1] Initially, not more than 15 months from the date of the underlying consumption entry and now not more than 21 months from the date of the underlying consumption entry.

the time of entry and the duties deposited are made the final value declaration and the duties deposited are those that are owed.  See Reconciliation Handbook.

13.     Legally and procedurally, reconciliation entries are the same as consumption entries. Customs must liquidate them in accordance with 19 U.S.C. §§ 1500 and 1504.

14.     Pursuant to 19 U.S.C. § 1504, if Customs does not timely or properly extend or suspend the liquidation of a reconciliation entry, the reconciliation entry is deemed to have liquidated by operation of law as asserted by the importer at the time of entry, which, with respect to reconciliations, means at the time the reconciliation entry was filed.

15.     Pursuant to the statute, 19 U.S.C. § 1504(b), if Customs has properly and timely extended liquidation of an entry, but has not affirmatively liquidated the entry within four years from the date of entry, the entry is deemed liquidated by operation of law as entered.

16.     On information and belief, where Customs has taken no action on an entry, Customs' computer system has been programmed to automatically liquidate any entry that is within approximately 15 or fewer days of reaching the 4-year statutory limit for liquidation of entries, as provided for by 19 U.S.C. § 1504(b).

17.     If Customs has properly and timely extended the liquidation of an entry, but then liquidates or reliquidates the entry after the maximum four year period has expired, such purported liquidation or reliquidation is null and void and without legal effect.

**Ford-JC's Value Reconciliation Entries Filed in the Port of Newark**

18.     Between 2004 and 2005, Ford-JC imported motor vehicles from the United Kingdom into the United States.

19.     Ford-JC flagged for value reconciliation all of the consumption entries included in each of the reconciliation entries at issue in this action.

20.     Ford-JC timely filed each of the reconciliation entries listed in Exhibit A to this

Complaint and Customs accepted each of these reconciliation entries.  The reconciliation

entries listed in Exhibit A will be referred to herein, collectively and individually as the

"Subject Entries".

21.     As of the date of this action was commenced, Customs had taken no action with

respect to any of the Subject Entries, including, but not limited to, action proposed or taken

or affirmative liquidation.

22.     Any actions taken by Customs with respect to any of the Subject Entries after the date

this action was commenced, including, but not limited to, requests for information, action

proposed or taken, fixing the final appraisement or amount of duties paid, or affirmative

liquidation or reliquidation are without any legal effect or obligation and are null and void.

### Customs' Inaction With Respect to the Subject Entries

23.     Customs never issued a notice to Ford-JC that the liquidation of any of the Subject

Entries had been extended.

24.     Customs never issued a notice to Ford-JC that the liquidation of any of the Subject

Entries was suspended as required by statute or order of a Court.

25.     Customs has never notified Ford-JC of the reasons for any such extension or

suspension of liquidation of any of the Subject Entries at issue in this action.

26.     Customs maintain records of all action taken by Customs with respect to an entry,

including, but not limited to, extensions and suspensions of liquidation.

27.     Customs' records of actions taken on entries include, among other information, the

date and the reason for such action, the person who took the action, and the current status of

the entry and/or action.

28.     Customs can and is legally required to produce the records it has created and maintains for entries.

**Customs' Improper Liquidation of Three Subject Entries**

29.     Subject Entry 300-9945919-7 was made on June 29, 2005.  The four year maximum time period allowed by the statute for Customs to liquidate this entry expired on June 28, 2009.

30.     Customs purportedly reliquidated Subject Entry 300-9945919-7 on August 7, 2009, 40 days after this Subject Entry finally and irrevocably liquidated as entered by operation of law, without allowing the refunds as entered and claimed by Ford-JC in the Subject Entry. Customs' reliquidation of this Subject Entry was illegal, is null and void, and has no legal effect.

31.     Subject Entry 300-9945928-8 was made on July 28, 2005.  The four year maximum time period allowed by the statute for Customs to liquidate this entry expired on July 27, 2009.

32.     Customs purportedly reliquidated the above-referenced Subject Entry 300-9945928-8 on July 31, 2009, four days after this Subject Entry finally and irrevocably liquidated as entered by operation of law,  without allowing the refunds as entered and claimed by Ford-JC in the Subject Entry.  Customs' reliquidation of this Subject Entry was illegal, is null and void, and has no legal effect.

33.     Subject Entry 300-9945935-3 was made on August 26, 2005.

34.     Customs purportedly liquidated Subject Entry 300-9945935-3 on August 14, 2009, but did not fix the final appraisement or the amount of duty to be paid, as required by 19 U.S.C. § 1500(a) and (c).   Customs liquidated this Subject Entry without allowing the duty

refunds asserted by Ford-JC in the reconciliation. Customs' liquidation of this Subject Entry was illegal, is null and void, and has no legal effect.

35. Customs has not issued Notices of Liquidation for the three above-referenced Subject Entries as required by 19 U.S.C. § 1500(e).

## Customs' Initial Request for Information

36. In October 2005, Customs issued a supplemental Request for Information for Subject Entry # 300-9945928-8. Customs requested an explanation for the decrease in value asserted in the reconciliation entry as well as supporting documentation.

37. Ford responded to the Request for Information on November 3, 2005. Following a meeting between representatives of Ford-JC and an Import Specialist in the Port of Newark on November 30, 2005, at which Ford's response and Customs' inquiry regarding the Subject Entry were discussed, Ford submitted a supplemental response, dated December 9, 2005.

38. In a telephone conversation that occurred on or about November 25, 2005, Import Specialist Christopher Polashock in the Port of Newark (the person who had issued the CF28's to Ford-JC) told Paul Vandevert, Ford's in-house counsel for International Trade and Customs matters, that he had submitted a "general" request for Internal Advice to Customs Headquarters on the topic of how to handle reconciliation entries that requested duty refunds based on transfer pricing related adjustments.

39. In response to Mr. Vandevert's question whether the general request for Internal Advice had been triggered or related to Ford-JC and its response to the Request for Information, Mr. Polashock stated "No". Mr. Polashock further stated that if a request for Internal Advice relate to Ford-JC was made, he would have informed Ford-JC prior to making the request.

40.     In a November 30, 2005 meeting between representatives of Ford-JC and Customs in the Port of Newark, Mr. Polashock stated that Ford-JC's reconciliation entries and the issues of valuation they presented to him were "consistent" with other importers' reconciliation entries that he had under review.

41.     On information and belief, two of the other importers that Mr. Polashock was referring to were Saab USA and Volkswagen of America and possibly other automotive companies that had filed reconciliation entries in the Port of Newark seeking duty refunds.

42.     In that same meeting, Mr. Polashock also stated that he was considering seeking Internal Advice for one of Ford-JC's reconciliation entries.  But, he did not identify a specific entry or importer.

43.     In that same meeting, Mr. Polashock stated that he understood Ford's responses to the Request for Information and did not think he had any further questions.

44.     In a follow-up letter to the November 30 meeting, dated December 13, 2005, Ford-JC advised for the reasons set forth in that letter as well as the response to the CF28, Internal Advice was not required for Ford-JC's reconciliation entries.

45.     Because Mr. Polashock had stated that he would notify Ford-JC if Internal Advice was being requested with respect to a Ford-JC reconciliation entry and no notification was ever received, Ford-JC reasonably concluded that Customs was not working on any Internal Advice with respect to Ford-JC.

46.     Because Customs never requested any additional information beyond the supplemental Request for Information to which Ford-JC satisfactorily responded in 2005, Ford-JC reasonably concluded that Customs had all information it needed to appraise the Subject Entries under Transaction Value as entered and claimed by Ford-JC.

## Customs' Initiates Internal Advice for Other Importers That Filed Reconciliation Entries in the Port of Newark

47.    By February 2006, colleagues at Saab USA and Volkswagen of America had informed Ford-JC that they had been notified by Customs in the Port of Newark that their reconciliation entries were the subject of an Internal Advice request on whether Transaction Value was the appropriate method of appraisement for these types of reconciliation entries.

48.    At no time prior to June 25, 2009 did Customs ever notify Ford-JC that any of its reconciliation entries were the subject of Internal Advice or any other review by Customs.

49.    Sometime in late October 2008, Ms. Yulia Gulis, who on information and belief is an attorney-advisor in Customs' Headquarters' Office of Regulation and Rulings (OR&R) assigned to the Valuation Branch, called Mr. Vandevert at Ford.  Ms. Gulis said that she was "working" on the Subject Entry for which Ford had responded to the Request for Information and asked that Ford-JC provide a copy of its Transfer Pricing policy.  After some discussion between Ms. Gulis and Mr. Vandevert, it was agreed that Ford would not provide the Transfer Pricing policy as it was not a relevant document for Customs Valuation purposes, per Customs Informed Compliance Publication:  "Determining the Acceptability of Transaction Value for Related Party Transactions" (April 2007).

50.    At no time during the telephone conversation between Ms. Gulis and Mr. Vandevert was the liquidation, extension of liquidation, or the reasons for any such extension of liquidation of the Subject Entries mentioned or discussed by either person.

51.    Nor did Ms. Gulis give any notice of or even reference Internal Advice or any other ruling with respect to Ford-JC.

52.    Ms. Gulis' call was the first contact with Ford from Customs regarding the Subject Entries since December 2005.

53.     Sometime in February 2009, Ms. Gulis again contacted Mr. Vandevert by telephone and requested a complete copy of Ford's response to the Request for Information issued by Customs and responded to by Ford in 2005.  Mr. Vandevert sent a complete copy of Ford's response to Ms. Gulis, as requested.

54.      At no time during the February 2009 telephone conversation between Ms. Gulis and Mr. Vandevert was the liquidation, extension of liquidation, or the reasons for any such extension of liquidation of any of the Subject Entries mentioned or discussed by either person.

55.     Nor did Ms. Gulis give any notice of or even reference any pending Internal Advice or any other ruling with respect to Ford-JC or the Subject Entries.

### Customs Withdraws the Internal Advice for Saab USA and Liquidates Saab's Reconciliation Entries as Entered with Duty Refunds Paid as Claimed by Saab.

56.     In March 2009, Ford learned that Customs had notified Saab USA that the Internal Advice Customs had been working on for Saab had been withdrawn and that Saab's reconciliation entries had been liquidated as entered by Saab with duty refunds issued as originally claimed by Saab.

57.     On information and belief, Customs appraised Saab's reconciliation entries under Transaction Value.

58.     According to Mr. Polashock, the Import Specialist in Newark, Ford-JC's reconciliation entries were very similar to Saab's reconciliation entries and the question of whether Transaction Value was the appropriate method of appraisement applied equally and identically to both Ford-JC's and Saab's reconciliation entries.

59.     Customs has no reasonable or legal basis for appraising and liquidating Saab's reconciliation entries as entered and issuing duty refunds as claimed by Saab, but rejecting

Transaction Value as the appraisement method for Ford-JC's reconciliation entries and denying duty refunds as properly claimed by Ford-JC.

### **Customs' Issues Internal Advice to Ford-JC on One of the Subject Entries**

60.    On June 25, 2009, Import Specialist Gregory M. Riley in the Port of Newark faxed a copy of what purports to be Internal Advice issued with respect to Subject Entry 300-99459288.  In addition, a Request for Information was also issued seeking additional information from Ford-JC with respect to this entry.

61.    Ford never requested Internal Advice for any of the Subject Entries.

62.    Customs never notified Ford that Internal Advice had been requested or was being issued; nor did Customs seek additional information from Ford with respect to this Internal Advice, as would normally being expect during such a process.

63.    On July 14, 2009, Customs faxed several Requests for Information covering all of the remaining Subject Entries with the exception of Subject Entry 300-9945919-7.  These Requests for Information are based on the Internal Advice issued to Ford-JC and ask for the same information as the original June 25 Request for Information.

64.    On July 15, 2009, Ford responded to all of the outstanding Requests for Information, a copy of which is attached as Exhibit B to this Second Amended Complaint.

65.    On July 31, Customs issued Notices of Action Taken with respect to Subject Entries 300-9945928-8 and 300-9945935-3, copies of which are attached as Exhibit C to this Second Amended Complaint.  In the Notices of Action Taken, Customs stated for each of these two Subject Entries:

> Since we did not receive the necessary documentation requested in order to
> properly appraise the value of your merchandise; we have no recourse but to
> deny your claim.  This notice is to inform you that your reconciliation has been
> re-liquidated with no refunds.

See pages 1-2 of Exhibit C.

## DECLARATORY RELIEF

### First Cause of Action

66.     The allegations contained in paragraphs 1 through 65 of this Complaint are

incorporated by reference herein.

67.     At the time this action was commenced, Customs had not affirmatively liquidated any

of the Subject Entries.

68.     Customs did not extend the liquidation of any of the Subject Entries nor were any of

the Subject Entries suspended from liquidation.

69.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each of the

Subject Entries at issue in this case was deemed liquidated by operation of law one year after

the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-

JC in the Subject Entries.

70.     Furthermore, this Court should declare that the Internal Advice issued with respect to

Subject Entry 300-9945928-8 is either moot or is null, void and without any legal effect or

precedential value or authority.

### Second Cause of Action

71.     The allegations contained in paragraphs 66 through 70 of this Complaint are

incorporated by reference herein.

72.     Even if Customs did extend or suspend the liquidation of any or all of the Subject Entries, Customs did not issue notices of such extension or suspension to Ford-JC, as required by 19 U.S.C. § 1504(b) and (c).

73.     Because Customs did not issue notices of any such extension or suspension of liquidation of any or all of the Subject Entries to Ford-JC, each and every one of the Subject Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

74.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each and every one of the Subject Entries at issue in this case was deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

75.     Furthermore, this Court should declare that the Internal Advice issued with respect to Subject Entry 300-9945928-8 is either moot or is null, void and without any legal effect or precedential value or authority.

### Third Cause of Action

76.     The allegations contained in paragraphs 71 through 75 of this Complaint are incorporated by reference herein.

77.     Even if Customs did issue notices to Ford-JC that any or all of the Subject Entries had been extended or suspended from liquidation, Customs did not give any reasons for the purported extension or suspension as required by 19 U.S.C. § 1504(b) and (c).

78.     Because Customs did not give reasons for any such extension or suspension of liquidation of any or all of the Subject Entries to Ford-JC, each and every one of the Subject

Entries has been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

79.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

80.     Furthermore, this Court should declare that the Internal Advice issued with respect to Subject Entry 300-9945928-8 is either moot or is null, void and without any legal effect or precedential value or authority.

### Fourth Cause of Action

81.     The allegations contained in paragraphs 76 through 80 of this Complaint are incorporated by reference herein.

82.     Pursuant to 19 U.S.C. § 1504(b) Customs may extend the liquidation of an entry for only one of two reasons:  (1) that Customs requires additional information from the importer needed for the proper appraisement of the entry or to ensure compliance with the law or (2) at the request of the importer.

83.     Until June 25, 2009, Customs had not asked Ford for any more information relating to any of the Subject Entries and, therefore, Customs must be presumed to have had all of the information it needed from Ford-JC to properly appraise and liquidate the Subject Entries.

84.     Ford-JC never requested that liquidation of any of the Subject Entries be extended.

85.     Because Customs did not have either of the two exclusive, statutory reasons for extending any or all of the Subject Entries, each and every one of the Subject Entries has

been deemed liquidated by operation of law, as asserted by Ford-JC at the time it filed each of the Subject Entries.

86.     Therefore, this Court should declare that, pursuant to 19 U.S.C. § 1504(a), each every one of the Subject Entries at issue in this case were deemed liquidated by operation of law one year after the date each entry was filed at the rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries.

87.     Furthermore, this Court should declare that the Internal Advice issued with respect to Subject Entry 300-9945928-8 is either moot or is null, void and without any legal effect or precedential value or authority.

### Fifth Cause of Action

88.     The allegations contained in paragraphs 81 through 87 of this Complaint are incorporated by reference herein.

89.      Subject Entries 300-9945919-7 and 300-9945928-8 were entered on June 29 and July 28, 2005 respectively.  See paragraphs 29 and 31 above and Exhibit A-1.

90.     If it is established that Customs did properly and timely extend the liquidation of Subject Entries 300-9945919-7 and 300-9945928-8 (including issuing Notices of Extension of Liquidation to Ford-JC), then these two Subject Entries were deemed liquidated by operation of law on the fourth anniversary of their entry date, or June 28 and July 27, 2009, respectively, as mandated by 19 U.S.C. § 1504(b).

91.     Because Customs' purported reliquidations of these two Subject Entries on August 7 and July 31, respectively, occurred after the maximum four year period had expired, Customs' reliquidations are null and void.

92.     This Court should declare that, pursuant to 19 U.S.C. § 1504(b), Subject Entries 300-

9945919-7 and 300-9945928-8 were deemed liquidated by operation of law on the fourth

anniversary of their entry, as asserted by Ford-JC, and that Customs' purported reliquidation

of these two Subject Entries is null and void and of no effect.

93.     This Court should order Customs to refund the duties asserted by Ford-JC in the

Subject Entries' reconciliations plus interest as allowed by law.

94.     Furthermore, this Court should declare that the Internal Advice issued with respect to

Subject Entry 300-9945928-8 is moot, without any legal effect or authority, and shall not be

published or otherwise disseminated.

### Sixth Cause of Action

95.     The allegations contained in paragraphs 88 through 94 of this Complaint are

incorporated by reference herein.

96.     Subject Entry 300-9945935-3 was made on August 26, 2005.

97.     Customs issued issued a Request for Information for Subject Entry 300-9945935-3

on July 13, 2009.  In the Request for Information, Customs stated that it was "considering

other basis [sic] of valuation, and therefore request that you submit the following documents

...."[4]

98.     Customs liquidated Subject Entry 300-9945935-3 on August 14, 2009.

99.     Customs issued a Notice of Action Taken (dated nearly two weeks before the actual

liquidation date) for this Subject Entry, stating "Since we did not receive the requested

documents in order to properly appraise the value of your merchandise; [sic] we have no

recourse but to deny your claim."  See Exhibit C.  Ford understands Customs to be saying

---

[4] Ford-JC responded to the Request for Information on July 17, 2009 with legal arguments and objections as to the propriety of the Request for Information.

that this Subject Entry was liquidated without allowing the duty refunds asserted by Ford-JC in the reconciliation.

100.    By its own admission in the Notices of Action Taken, prior to liquidation, Customs did not fix the final appraisement for Subject Entry 300-9945935-3 as required by 19 U.S.C. § 1500(a), nor did Customs fix the final amount of duty to be paid as required by 19 U.S.C. § 1500(c).

101.    Without performing the statutorily required actions prior to liquidation, Customs' liquidation of Subject Entry 300-9945935-3 was null and void, and without any legal effect or precedential authority.

102.    Customs has not issued a Notice of Liquidation for this Subject Entry as required by 19 U.S.C. § 1500(e).

103.    Therefore, this Court should declare that Subject Entry 300-9945935-3 was deemed liquidated by operation of law as asserted by Ford-JC in the reconciliation and that Customs is ordered to refund the duties as asserted plus interest as allowed by law.

## Seventh Cause of Action

104.    The allegations contained in paragraphs 95 through 103 of this Complaint are incorporated by reference herein.

105.    Customs continues to work on the Subject Entries, as evidenced by the issuance of Requests for Information to Ford-JC, dated June 25 and July 14, 2009, issuing Internal Advice which Ford never requested and for which Ford-JC was given no notice or opportunity to provide additional information or arguments to support appraisement of the Subject Entries under Transaction Value, as required by Customs' regulations at 19 CFR 152.103(m), issuing Notices of Action Taken for two of the Subject Entries in which

Customs purports to "deny" Ford-JC's "claims" asserted in the reconciliations, and improperly liquidating or reliquidating three of the Subject Entries (see Exhibit A-1).

106.    Customs' actions are imposing an unreasonable and costly burden on Ford-JC in being placed in the position of having to respond to Customs' requests and demands for which there is no apparent legal authority or rationale.

107.    If Ford fails to respond to Customs' requests and demands, Ford-JC exposes itself to further adverse actions by Customs, including, the initiation of civil and even possibly criminal investigations and cases against Ford-JC for failure to respond to Customs' requests and demands.

108.    Such actions, requests and demands have imposed irreparable harm and are likely to impose additional irreparable harm on Ford-JC if they are not enjoined by the Court.

109.    Therefore, the Court should issue an order enjoining Customs from taking any further action on any of the Subject Entries until a final decision has been made and entered as judgment with respect to Plaintiff's requests for Declaratory Judgment.  The injunction, if issued, should state that the statutory deadlines and limitations with respect to deemed liquidation of entries will not be tolled during the period of the injunction.

## Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court issue declaratory judgment that:

A.    Each of the Subject Entries was deemed liquidated by operation of law one year from the date each reconciliation entry was made, because Customs did not timely and/or properly extend or suspend the liquidation of each entry as provided and required by 19 U.S.C. § 1504.

B.      Each of the Subject Entries listed in Exhibit A-1 liquidated as entered and Ford is entitled to receive from Customs the full amount of duty refunds claimed in each of those entries, plus interest as allowed by law.

C.      Customs must forthwith process and refund to Ford-JC, all excess duties deposited by Ford-JC at the time of the underlying consumption entries, as asserted by Ford-JC in the Subject Entries, plus all interest allowed by law not later than 60 days after final judgment in this action is entered.

D.      Customs is enjoined until such time as a final decision and judgment is entered on Plaintiff's request for Declaratory Judgment from taking any further action with respect to Ford-JC and the Subject Entries.

Plaintiff also requests that the Court grant such other and relief as this Court deems appropriate.

By   /s/ Paulsen K. Vandevert
         Paulsen K. Vandevert
         Ford Motor Company
         1 American Road, Ste 612
         Dearborn, MI  48126
         Tel.:  (313) 337-5082
         e-Mail:  pvandev3@ford.com

Dated: August 18, 2009

## Exhibit A

| Reconciliation Entry Number | IOR | Port | Recon File Date | 4th Filing Anniversary | Liqudation Date |
|---|---|---|---|---|---|
| **A-1** | | | | | |
| 300-9945919-7 | 38-0549190JC | 1001 | 6/29/2005 | 6/28/2009 | 8/7/2009 |
| 300-9945928-8 | 38-0549190JC | 1001 | 7/28/2005 | 7/27/2009 | 7/31/2009 |
| 300-9945935-3 | 38-0549190JC | 1001 | 8/26/2005 | 8/25/2009 | 8/14/2009 |

| **A-2** | | | | | |
|---|---|---|---|---|---|
| 300-4830222-5 | 38-0549190JC | 1001 | 5/15/2006 | | |
| 300-4830252-2 | 38-0549190JC | 1001 | 6/15/2006 | | |
| 300-4830272-0 | 38-0549190JC | 1001 | 7/20/2006 | | |
| 300-4830281-1 | 38-0549190JC | 1001 | 8/14/2006 | | |
| 300-4830280-3 | 38-0549190JC | 1001 | 8/14/2006 | | |
| 300-4830290-2 | 38-0549190JC | 1001 | 9/21/2006 | | |
| 300-4830301-7 | 38-0549190JC | 1001 | 10/4/2006 | | |

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GREGORY W. CARMAN, JUDGE

_____
|                                          :
FORD MOTOR COMPANY,                        :
                                           :
                  Plaintiff,            :
                                           :
                  v.                    :     Court No. 09-00151
                                           :
UNITED STATES OF AMERICA, UNITED           :
STATES DEPARTMENT OF HOMELAND              :
SECURITY, and UNITED STATES CUSTOMS        :
AND BORDER PROTECTION,                     :
                                           :
                  Defendants.           :
_____:

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

<div style="margin-left:40%">

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BARBARA S. WILLIAMS
Attorney-in-Charge
International Trade Field Office

JUSTIN R. MILLER
Trial Attorney
Civil Division, U.S. Dept. of Justice
26 Federal Plaza
New York, New York 10278

DAVID S. SILVERBRAND
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
1100 L St., N.W., Room 4044
Washington, D.C. 20530

</div>

Of Counsel:

YELENA SLEPAK
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

November 18, 2009                    ATTORNEYS FOR DEFENDANT

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GREGORY W. CARMAN, JUDGE

| | | |
|---|---|---|
| FORD MOTOR COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 09-00151 |
| | : | |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CUSTOMS AND BORDER PROTECTION, | : : : : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, defendants (collectively, the United States), respectfully request that the Court dismiss the second amended complaint filed by plaintiff, Ford Motor Co. ("Ford"), for lack of subject matter jurisdiction.

## BACKGROUND

This action involves ten reconciliation entries filed by Ford at the port of Newark, New Jersey, between June 2005 and October 2006. Second Amended Compl. Exhibit A; Id. ¶ 20. Ford filed the reconciliation entries pursuant to U.S. Customs and Border Protection's ("Customs'") Automated Commercial System ("ACS") Prototype in order to reconcile the values and claim refunds of duties deposited by Ford at the time of entry. Id. at preliminary statement.

Reconciliation is "an electronic process, initiated at the request of an importer, under which the elements of an entry (other than those elements related to the admissibility of the

merchandise) that are undetermined at the time the importer files or transmits the documentation

or information required by section 1484(a)(1)(B) of this title, or the import activity summary

statement, are provided to [Customs] at a later time.  A reconciliation is treated as an entry for

purposes of liquidation, reliquidation, recordkeeping, and protest."  19 U.S.C. § 1401(s).

An importer initiates the reconciliation process by placing a "flag" on the entry in order to

identify the undetermined issues.  This flag notifies Customs that the issue identified will later be

"reconciled" by the filing of a reconciliation entry providing the missing information.  The entry

that was flagged is known as the "underlying entry."  Generally, the undetermined issue revolves

around a valuation matter which the importer knows it cannot resolve at the time of making

entry.  The reconciliation process permits Customs to separate from an entry the "flagged" issue

and liquidate all other issues associated with that entry.  When an importer flags an issue for later

reconciliation, it effectively requests that the identified issue be separated from the underlying

entry and be kept open while the other issues on the underlying entry are liquidated.  The

importer also commits to filing the final, corrected information regarding the identified issue at a

later time by the filing of a reconciliation entry.

Ford has commenced this action to challenge Customs' treatment of the ten reconciliation

entries alleging that, pursuant to 19 U.S.C. § 1504(a), "each of the Subject Entries at issue in this

case was deemed liquidated by operation of law one year after the date each entry was filed at the

rate of duty, value and amount of duties asserted by Ford-JC in the Subject Entries."  Second

Amended Compl. ¶ 69.  19 U.S.C. § 1504(a) provides, in relevant part, as follows:

2

Unless an entry is extended under [19 U.S.C. § 1504(b)] or suspended as required by statute or court order, except as provided in section 1675(a)(3) of this title, an entry of merchandise not liquidated within one year from:

* * *

(4) if a reconciliation is filed, or should have been filed, the date of the filing under section 1484 of this title or the date the reconciliation should have been filed;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

19 U.S.C. § 1504(a).

Here, for each of the ten entries, Customs extended liquidation (at least once) pursuant to

19 U.S.C. § 1504(b)(1). See Def.'s Exhibit A (Declaration of David Olds with documents

attached thereto); and Def.'s Exhibit B. 19 U.S.C. § 1504(b)(1) provides, in relevant part, as

follows:

The Secretary may extend the period in which to liquidate any entry if–

(1) the information needed for the proper appraisement or classification of the merchandise, or for issuing compliance with applicable law, is not available to the Customs Service;

* * *

The Secretary shall give notice of an extension under this subsection to the importer of record and the surety of such importer of record. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record at the expiration of 4 years from the applicable date specified in [19 U.S.C. § 1504(a)].

19 U.S.C. § 1504(b)(1).

3

For nine[1] of the ten entries, Customs extended liquidation three times.  See Def.'s Exhibit A (Declaration of David Olds with documents attached thereto); and Def.'s Exhibit B.  After the third extension, the following three entries were liquidated and reliquidated as follows:

(1)     Entry number 300-9945919-7 liquidated by operation of law on June 19, 2009; then Customs reliquidated this entry on August 7, 2009.  See Def.'s Exhibit B; Second Amended Compl. ¶ 30.

(2)     Entry number 300-9945928-8 liquidated automatically as entered by Customs' ACS on July 17, 2009;  then Customs reliquidated this entry on July 31, 2009. See Def.'s Exhibit B; Second Amended Compl.  ¶¶ 31-34.

(3)     Entry number 300-9945935-3 liquidated automatically as entered by Customs' ACS on August 14, 2009;  then Customs reliquidated this entry on September 18, 2009.  See Def.'s Exhibit B; Second Amended Compl.  ¶¶ 31-34.

Ford filed a protest challenging liquidation of these three entries (entry nos. 300-9945919-7, 300-9945928-8 and 300-9945935-3).  See Def.'s Exhibit C.

For six entries (entry nos. 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7), liquidation remains extended pursuant to 19 U.S.C. § 1504(b)(1), and as such, the liquidation of these entries has not occurred.  See Def.'s Exhibit A (Declaration of David Olds with documents attached thereto); and Def.'s Exhibit B.

Entry number 300-4830272-0 liquidated automatically as entered on July 11, 2008, and Customs is in the process of providing Ford a refund for the duties claimed in this reconciliation entry.  Attached as defendant's exhibit B is a chart which details the status of the reconciliation entries covered by this action; specifically it describes the entry dates, the dates Customs extended liquidation, and the dates the entry liquidated or reliquidated (if applicable).

---

[1]  Entry Nos. 300-9945919-7, 300-9945928-8, 300-9945935-3, 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7.

4

In addition to arguing that the entries deemed liquidated pursuant to 19 U.S.C. § 1504(a), see Second Amended Compl. ¶ 69), Ford contends that Customs' extensions of the liquidations of the reconciliation entries were unlawful and, therefore, without effect.  Second Amended Compl. ¶¶ 77-79, 85-87, 89-93, 99-103.  However, instead of waiting for Customs to liquidate these reconciliation entries, protesting that liquidation, and commencing an action pursuant to 28 U.S.C. § 1581(a), Ford commenced this action alleging jurisdiction under 28 U.S.C. § 1581(i) arguing that the entries liquidated by operation of law.  Ford is seeking, among other things, a declaratory judgment as to whether the ten reconciliation entries deemed liquidated by operation of 19 U.S.C. § 1504(a).

## ARGUMENT

### I.  Standard Of Review

The Court's determination of subject matter jurisdiction is a threshold inquiry.  Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 94-95 (1998).  Whether to grant a motion to dismiss for lack of jurisdiction is a question of law.  JCM Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Where jurisdiction is challenged pursuant to Rule 12(b)(1), "'the burden rests on the plaintiff to prove that jurisdiction exists.'"  Pentax Corp. v. Robinson, 125 F.3d 1457, 1462 (Fed. Cir. 1997), modified, in part, 135 F.3d 760 (Fed. Cir. 1998) (citation omitted).

5

II.     **Ford's Claims Related To Entry Nos. 300-9945919-7, 300-9945928-8, and 300-9945935-3 Are Barred By The Statute Of Limitations And Thus This Court Does Not Possess Jurisdiction Over Those Claims**

Ford commenced this action pursuant to 19 U.S.C. § 1581(i).  Second Am. Compl. ¶ 6. For actions commenced under 19 U.S.C. § 1581(i), there is a two-year statute of limitations period.  See 28 U.S.C. § 2636(i) ("[a] civil action of which the Court of International Trade has jurisdiction under section 1581 of this title, other than an action specified in subsections (a)-(h) of this section, is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues.")  "The basic rule is that the clock of a statute of limitations begins to run from the date the plaintiff's cause of action 'accrues'; that is the term typically found in the statutes. The clock stops on the date the plaintiff files his complaint in a court of proper jurisdiction."  Hair v. United States, 350 F.3d 1253, 1260 (Fed.Cir.2003) (internal citations omitted).  For each of the entries that is the subject of this action, the date of accrual for the cause of action is the date of Ford's alleged deemed liquidation.

Here, Ford filed entry nos. 300-9945919-7, 300-9945928-8, and 300-9945935-3 in June, July, and August of 2005.  Second Am. Compl. ¶¶ 29, 31, & 33.  As previously described, Ford alleges that, pursuant to 19 U.S.C. § 1504(a), the subject entries "deemed liquidated by operation of law one year after the date each entry was filed . . . ."  Second Am. Compl. ¶ 69.  If we assume that Ford's allegations are true for purposes of this motion, then these three entries would have liquidated by operation of law in June, July, and August of 2006.  Ford, however, did not commence this action until April 15, 2009.  This date is more than two years after the alleged liquidation date for entry nos. 300-9945919-7, 300-9945928-8, and 300-9945935-3.

Not filing a claim within the two year statute of limitations period divests the Court of

6

subject matter jurisdiction over these claims. Indeed, the United States Court of Appeals for the

Federal Circuit has held that "[t]he limitations statute at issue in <u>Stone Container</u> [28 U.S.C. §

2636(i)], however, constituted a waiver of sovereign immunity and thus defined the court's

jurisdiction." <u>Arctic Slope Native Association, Ltd. v. Sebelius</u>, 583 F.3d 785, 792-93 (Fed. Cir.

2009); <u>see</u> <u>SKF USA, Inc. v. U.S. Customs and Border Protection</u>, 556 F.3d 1337, 1348 (Fed.

Cir. 2009) ("We assume, but do not decide, that the statute of limitations in § 2636(i) is

jurisdictional under <u>John R. Sand & Gravel Co.</u>"). Accordingly, because Ford commenced this

action more than two years after the date of accrual for entry numbers 300-9945919-7, 300-

9945928-8, and 300-9945935-3, Ford's claims with respect to these entries are time barred and

must be dismissed for lack of subject matter jurisdiction.[2]

### III. Entry No. 300-4830272-0 Liquidated "No Change" and Thus this Court Does Not Possess Jurisdiction over the Claims Related to this Entry as There Is No Case or Controversy

As described above, entry number 300-4830272-0 liquidated "no change" and as such,

Ford is entitled to a refund of duties claimed in this reconciliation entry. Customs is in the

process of issuing Ford the refund it is owed with respect to this claim. Accordingly, all

challenges related to this entry must be dismissed as there is no case or controversy over this

entry.

"Pursuant to Article III [of the United States Constitution], federal courts are only

empowered to decide those claims which present live cases or controversies. If a claim fails the

Article III criteria, the Court must dismiss the claim as non-justiciable regardless of a statutory

---

[2] We also show latter in this brief that the Court does not possess subject matter jurisdiction over these entries under 28 U.S.C. § 1581(i) because jurisdiction under 28 U.S.C. § 1581(a) is available and the remedy provided by section 1581(a) is manifestly adequate.

grant of jurisdiction." 3V, Inc. v. United States, 83 F. Supp. 2d 1351, 1352-53 (Ct. Int'l Trade 1999) (citations omitted). Here, there will be no justiciable claim with respect to entry number 300-4830272-0 because Customs is going to refund the amount claimed by Ford in reconciliation. A refund was not issued previously because Customs was under the mistaken belief that the auto-liquidation was at a higher value than that claimed by Ford. Once Customs discovered this error, it began to process Ford's refund. We anticipate that the refund should issue to Ford shortly. Accordingly, this claim fails the live case or controversy requirement of Article III, and the Court must dismiss this claim for lack of subject matter jurisdiction.

## IV. The Court Cannot Entertain Jurisdiction over Entry Numbers 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7, Because Ford's Claims with Respect to These Entries Are Not Ripe for Judicial Review

Ford's claims with respect to entry numbers 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7 are subject to dismissal under the doctrine of ripeness.

FEDERAL PRACTICE AND PROCEDURE describe "ripeness" as follows:

Ripeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision. The determination is rested both on Article III concepts and on discretionary reasons of policy. The central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all. One of the famous formulations of ripeness principles is an abstract statement frequently quoted in declaratory judgment cases:

> The test to be applied * * * is the familiar one * * *: 'Basically, the question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'

A more practical formula is that

8

> [R]ipeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'

13B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS, § 1352 at 365-69 (3d ed. 2008) (citations omitted).

Here, Ford cannot dispute that six of the ten entries remain unliquidated as Customs properly extended the liquidations pursuant to 19 U.S.C. § 1504(b)(1). See Def.'s Exhibit A (Declaration of David Olds with documents attached thereto and Declaration of Jeffrey Werner Baer); and Def.'s Exhibit B. Because liquidation for these six entries has not occurred, Ford's claims with respect to these six entries are not ripe for judicial review. If Ford presents the information requested by Customs with respect to its reconciliation claims for these entries, there is a possibility that Customs, after reviewing the information, may liquidate those entries "no change." If that were to occur, Ford would be entitled to a refund for these claims. Thus, given the current unliquidated status of these entries, Ford's claims with respect to these entries are purely speculative, that is they "involve[] uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. Accordingly, Ford's claims with respect to entry numbers 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7 are subject to dismissal under the doctrine of ripeness.

**V.     If Ford Wishes to Challenge the Liquidation of its Entries, it must Protest the Liquidation of Those Entries and Commence an Action Pursuant to 19 U.S.C. § 1581(a); Because 19 U.S.C. § 1581(a) Provides an Adequate Remedy to Ford, this Court Does Not Possess Jurisdiction under 19 U.S.C. § 1581(i)**

In addition to the reasons set forth in sections II, III, and IV, if Ford wishes to challenge Customs' liquidations of its entries, it possesses the statutory right to file a protest of those liquidations pursuant to 19 U.S.C. § 1514, and if Customs denies Ford's protests, Ford possesses

9

the statutory right to file an action in this Court pursuant to 28 U.S.C. § 1581(a).  Accordingly,

section 1581(i) jurisdiction is unavailable.

Litigants may not invoke this Court's jurisdiction pursuant to section 1581(i) when

jurisdiction under another subsection of section 1581 "is or could have been available," unless

the remedy provided under that other subsection would be "manifestly inadequate."  Hartford

Fire Ins. Co. v. United States, 544 F.3d 1289, 1292 (Fed. Cir. 2008); Int'l Custom Prods., Inc. v.

United States ("ICP"), 467 F.3d 1324, 1326 (Fed. Cir. 2006).  The United States Court of

Appeals for the Federal Circuit has "consistently held that to prevent circumvention of the

administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be

invoked if jurisdiction under another subsection of section 1581 is or could have been available,

unless the other subsection is shown to be manifestly inadequate."  Hartford, 544 F.3d at 1292

(citing ICP, 467 F.3d at 1327).

Pursuant to the relevant portions of 19 U.S.C. § 1514:

> any clerical error, mistake of fact, or other inadvertence . . . adverse
> to the importer, in any entry, liquidation, or reliquidation, and,
> decisions of the Customs Service, including the legality of all
> orders and findings entering into the same, as to . . .  the liquidation
> or reliquidation of an entry, or reconciliation as to the issues
> contained therein, or any modification thereof, including the
> liquidation of an entry, pursuant to either section 1500 or section
> 1504 of this title; [or] the refusal to pay a claim for drawback; shall
> be final and conclusive upon all persons . . . unless a protest is filed
> in accordance with this section, or unless a civil action contesting
> the denial of a protest in whole or in part, is commenced in the
> United States Court of International Trade . . . .

Id.  Jurisdiction pursuant to 28 U.S.C. § 1581(a) is available to litigants challenging the denial of

a protest under 19 U.S.C. §§ 1514 and 1515.  Here, for all of Ford's entries except entry number

10

300-4830272-0 (which Customs is in the process of issuing Ford a refund), the Court does not possess jurisdiction under section 1581(i) as section 1581(a) is an available and adequate remedy to Ford.

### A.    Entry numbers 300-9945919-7, 300-9945928-8 and 300-9945935-3

Customs liquidated and reliquidated entry numbers 300-9945919-7, 300-9945928-8 and 300-9945935-3 and Ford has filed a protest challenging those liquidations.  See Def.'s Exhibit C. If Customs denies the protest, Ford has a right to challenge the denial of that protest by commencing a judicial action pursuant to 28 U.S.C. § 1581(a).  Therefore, with respect to entry numbers 300-9945919-7, 300-9945928-8 and 300-9945935-3, there can be no dispute that Ford can secure jurisdiction pursuant to subsection 1581(a), and this Court "does not have jurisdiction pursuant to subsection 1581(i) to entertain a challenge to the charge without a showing that subsection 1581(a) was manifestly inadequate." Hartford, 544 F.3d at 192.

Ford, however, has failed to allege that jurisdiction pursuant to 28 U.S.C. § 1581(a) would be manifestly inadequate with respect to those three entries.  Accordingly, this Court cannot entertain jurisdiction over those entries pursuant to section 1581(i).  Pentax Corp. v. Robison, 125 F.3d 1457, 1462 (Fed. Cir. 1997) (opinion amended by 135 F.3d 760 (Fed. Cir. 1997) ("[T]he plaintiff bears the burden of proving that the court's jurisdiction is invoked properly."); Almond Bros. Lumber Co. v. United States, 2009 WL 1397182 * 4 (Ct. Int'l Trade May 20, 2009) ("To avoid dismissal in whole or in part for lack of subject matter jurisdiction, [plaintiffs] must plead facts from which the court may conclude that it has subject matter jurisdiction with respect to each of their claims.") (citations omitted).  A "belief that it had no remedy under subsection 1581(a) would not make that remedy inadequate. [Ford] simply made

11

no attempt to use it." <u>Hartford</u>, 544 F.3d at 1294.

In short, Ford is attempting to manipulate jurisdiction by attempting to bring this action pursuant to section 1581(i), when an adequate remedy exists and is clearly available to it under 28 U.S.C. § 1581(a). <u>See</u>, <u>e.g.</u>, <u>Washington Int'l Ins. Co. v. United States</u>, 138 F. Supp. 2d 1314, 1325 (Ct. Int'l Trade 2001)).

**B.     Entry Numbers 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7**

Further, and for similar reasons, with respect to the six entries[3] that have not yet finally liquidated, but Ford alleges have liquidated by operation of law, this Court does not possess jurisdiction to entertain the complaint for two reasons.  First, if Ford believes that its entries have liquidated by operation of law, then it should have protested the deemed liquidation of those entries and commenced an action pursuant to 28 U.S.C. § 1581(a).  Second, despite Ford's allegations with respect to deemed liquidation, the liquidation of these six entries has not occurred.  Accordingly, if Ford seeks to challenge the liquidation of these entries, Ford must wait until the liquidation occurs and then commence action under  28 U.S.C. § 1581(a).

With regard to a deemed liquidation, an importer has "two 90-day protest periods within which to protest a deemed liquidation.  The first 90-day protest period commences . . . on the date on which the entry is automatically deemed liquidated by operation of law. . . .  The second protest period commences on the date that Customs gives notice of the deemed liquidation or notice of a liquidation reflecting the deemed liquidation as provided by 19 U.S.C. § 1514(c)(3)(A)." <u>Koyo Corp. of U.S.A. v. United States</u>, 497 F.3d 1231, 1241 (Fed. Cir. 2007);

---

[3]  Entry Nos. 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, and 300-4830301-7.

see id. at 1237 ("There is no language in § 1514(a) that bars an importer from formally protesting the amount of duties or the liquidation of entries that result by operation of § 1504(d)."); see also Detroit Zoological Society v. United States, 630 F. Supp. 1350, 1354 (Ct Int'l Trade 1986) ("Thus, it is evident that plaintiff's dispute as to the alleged deemed liquidation, classification and duties to be paid on its entries is protestable subject matter under section 1514(a)."). Here, if Ford believes that these entries have liquidated by operation of law then it should have protested those deemed liquidations, sought Customs' position as to the status of the entries, and commenced an action under 28 U.S.C. § 1581(a). Because section 1581(a) is an available and adequate remedy, the Court lacks jurisdiction pursuant to section 1581(i).

Second, despite Ford's allegations, Customs extended the liquidation of entry numbers 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, 300-4830301-7, and as such, the liquidation of these entries has not occurred. Once liquidation occurs, if Ford disagrees with the rate of liquidation, as demonstrated above, Ford may file an administrative protest and subsequently file a challenge in this Court pursuant to 28 U.S.C. § 1581(a). Indeed, the Court of Customs and Patent Appeals made clear that section 1581(i) may not be used to bypass the administrative process, as Ford seeks to do here. United States v. Uniroyal, Inc., 687 F.2d 467, 472 (1982) ("Uniroyal's concern over anticipated assessments arising from the six completed entries must be addressed by means of timely protest filed when and if such assessments are made, as Congress intended."). Accordingly, Ford must wait until the entry liquidates to determine whether it wants to challenge Customs' assessments. If Customs liquidates any of the remaining entries "no change," there would be no reason for Ford to challenge Customs' decision. That is why the statutory scheme envisioned by Congress requires

13

exhaustion of administrative remedies - to avoid unnecessary litigation.

To the extent that Ford might cite to Fujitsu General America, Inc. v. United States, 24 CIT 733, 739 110 F. Supp. 2d 1061, 1069 (2000), *affirmed,* 283 F.3d 1364 (Fed. Cir. 2002), for the argument that "where an importer believes its entries were deemed liquidated under § 1504(d), and Customs has not actively liquidated the entries anew, the importer's only remedy, at that point, is to seek a declaratory judgment from the CIT confirming that there was a deemed liquidation under 28 U.S.C. § 1581(i)," Ford's argument would be without merit. The Fujitsu court also stated that:

> Notwithstanding Fujitsu's contention that the subject entries were deemed liquidated, Customs actively liquidated the entries in November/December 1997 and February 1998. A Customs decision to liquidate certain entries anew after the entries had already been deemed liquidated is a protestable decision under 19 U.S.C. § 1514(a)(5). See Pagoda Trading Corp. v. United States, 804 F.2d 665, 668 (Fed. Cir. 1986). Therefore, once Customs purportedly liquidated the subject entries, Fujitsu could no longer invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i), because Fujitsu was then afforded an adequate remedy under § 1581(a).

Id.

As demonstrated by defendant's exhibit A (Declaration of David Olds with documents attached thereto and Declaration of Jeffrey Werner Baer) and defendant's exhibit B, Ford's belief that its entries deemed liquidated has no basis in fact because the liquidation of the entries was properly extended by Customs. Even though one entry, entry no. 300-9945919-7, deemed liquidated, it was reliquidated by Customs within 20 days of the deemed liquidation. Based on Fujitsu, Customs "actively liquidated" this entry, and, therefore, plaintiff cannot invoke the Court's jurisdiction under 28 U.S.C. § 1581(i), because it is afforded an adequate remedy under section 1581(a).

14

In sum, Ford has not alleged that jurisdiction pursuant to 28 U.S.C. § 1581(a) would be manifestly inadequate.  Pentax Robison, 125 F.3d at 1462; Hartford, 544 F.3d at 1294.  If Ford wishes to challenge Customs' liquidation of the six entries that have been extended, it must do so pursuant to the protest remedies available under 19 U.S.C. § 1514 and judicial review pursuant to 28 U.S.C. § 1581(a).

For these reasons, the Court lacks subject matter jurisdiction to entertain Ford's claims pursuant to 28 U.S.C. § 1581(i), and therefore Ford cannot succeed on the merits.

15

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint

Respectfully submitted,

TONY WEST
Assistant Attorney General

/s/ Barbara S. Williams
BARBARA S. WILLIAMS
Attorney-in-Charge
International Trade Field Office

/s/ Justin R. Miller
JUSTIN R. MILLER
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278

| | |
|---|---|
| Of Counsel: | /s/ David S. Silverbrand |
| | DAVID S. SILVERBRAND |
| YELENA SLEPAK | Trial Attorney |
| Office of the Assistant Chief Counsel | Civil Division, U.S. Dept. of Justice |
| International Trade Litigation | Commercial Litigation Branch |
| U.S. Customs and Border Protection | 1100 L St., N.W., Room 4044 |
| | ATTN: Classification Unit, 8th Floor |
| | Washington, D.C. 20530 |
| November 18, 2009 | ATTORNEYS FOR DEFENDANT |

16

# Exhibit B

Status of
Court No. 09-00151
Reconciliation Entries

| Reconcilation Entry Number | Reconciliation Entry Date | Anticipated Deemed Liquidation Date | Date of First Extension | Anticipated Deemed Liquidation Date | Date of Second Extension | Anticipated Deemed Liquidation Date | Date of Third Extension | Anticipated Deemed Liquidation Date |
|---|---|---|---|---|---|---|---|---|
| 300-9945919-7 | 6/29/2005 | 6/29/2006 | 4/8/2006 | 6/29/2007 | 2/10/2007 | 6/29/2008 | 5/24/2008 | 6/29/2009 |
| 300-9945928-8 | 7/28/2005 | 7/28/2006 | 8/27/2005 | 7/28/2007 | 8/5/2006 | 7/28/2008 | 8/4/2007 | 7/28/2009 |
| 300-9945935-3 | 8/26/2005 | 8/26/2006 | 7/29/2006 | 8/26/2007 | 6/9/2007 | 8/26/2008 | 5/24/2008 | 8/26/2009 |
| 300-4830222-5 | 5/15/2006 | 5/15/2007 | 4/7/2007 | 5/15/2008 | 5/10/2008 | 5/15/2009 | 7/5/2008 | 5/15/2010 |
| 300-4830252-2 | 6/15/2006 | 6/15/2007 | 4/7/2007 | 6/15/2008 | 6/7/2008 | 6/15/2009 | 7/5/2008 | 6/15/2010 |
| 300-4830281-1 | 8/14/2006 | 8/14/2007 | 7/14/2007 | 8/14/2008 | 7/5/2008 | 8/14/2009 | 3/21/2009 | 8/14/2010 |
| 300-4830280-3 | 8/14/2006 | 8/14/2007 | 7/14/2007 | 8/14/2008 | 7/5/2008 | 8/14/2009 | 3/21/2009 | 8/14/2010 |
| 300-4830290-2 | 9/21/2006 | 9/21/2007 | 9/8/2007 | 9/21/2008 | 7/5/2008 | 9/21/2009 | 3/21/2009 | 9/21/2010 |
| 300-4830301-7 | 10/4/2006 | 10/4/2007 | 9/22/2007 | 10/4/2008 | 10/13/2007 | 10/4/2009 | 3/21/2009 | 10/4/2010 |
| 300-4830272-0 | 7/20/2006 | 7/20/2007 | 7/14/2007 | 7/20/2008 | | | | |

| Reconcilation Entry Number | Liquidation Date | Reliquidation Date |
|---|---|---|
| 300-9945919-7 | 6/19/2009 | 8/7/2009 |
| 300-9945928-8 | 7/17/2009 | 7/31/2009 |
| 300-9945935-3 | 8/14/2009 | 9/18/2009 |
| 300-4830222-5 | | |
| 300-4830252-2 | | |
| 300-4830281-1 | | |
| 300-4830280-3 | | |
| 300-4830290-2 | | |
| 300-4830301-7 | | |
| 300-4830272-0 | 7/11/2008 | |

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GREGORY J. CARMAN, *SENIOR JUDGE*

—————————————————————————
|                                          | :  |                      |
| Ford Motor Company,                      | :  |                      |
|                                          | :  |                      |
|                     Plaintiff,           | :  |                      |
|                                          | :  |                      |
|                          v.              | :  | Case No.: 09-00151   |
|                                          | :  |                      |
| United States of America, et al.,        | :  |                      |
|                          Defendants.     | :  |                      |
—————————————————————————:

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND APPLICATION FOR A WRIT OF MANDAMUS

Pursuant to Rules 7 and 56 of the Rules of the United States Court of International Trade, plaintiff, Ford Motor Company, respectfully requests this Court to deny Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, and grant Plaintiff's Motion for Partial Summary Judgment as well as issue a Writ of Mandamus as Plaintiff has requested. The reasons for the motion and application are set forth in the accompanying brief.

WHEREFORE, Plaintiff respectfully requests that an order be entered denying Defendants' Motion to Dismiss, and granting Plaintiff's Motion for Partial Summary Judgment and Application for a Writ of Mandamus.

Respectfully submitted,

/s/ Paulsen K. Vandevert
Paulsen K. Vandevert, Esq.
The Ford Motor Company
One American Road, Ste 612
Dearborn, MI 48126-2798
Tel.: (313) 337-5082
e-Mail: pvandev3@ford.com

**ATTORNEYS FOR PLAINTIFF
FORD MOTOR COMPANY**

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GREGORY J. CARMAN, *SENIOR JUDGE*

———————————————————————  :
Ford Motor Company,                          :
                                             :
                Plaintiff,        :
                                             :
                v.                :     Case No.: 09-00151
                                             :
United States of America, et al.,            :
                Defendants.       :
———————————————————————:


## FORD'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF FORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND APPLICATION FOR A WRIT OF MANDAMUS


Respectfully submitted,

/s/ Paulsen K. Vandevert
Paulsen K. Vandevert, Esq.
The Ford Motor Company
One American Road, Ste 612
Dearborn, MI 48126-2798
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com

**ATTORNEYS FOR PLAINTIFF
FORD MOTOR COMPANY**

# TABLE OF CONTENTS

I. KEY BACKGROUND FACTS ........................................................................................... 1

    A. FORD FILES THE SUBJECT RECONCILIATION ENTRIES .................................. 1

    B. CUSTOMS HAD NOT LIQUIDATED ANY OF THE SUBJECT ENTRIES AT THE TIME THIS ACTION WAS COMMENCED ...................................................... 1

    C. CUSTOMS' ALLEGED EXTENSIONS OF LIQUIDATION OF THE SUBJECT ENTRIES HAVE NO BEARING WHATSOEVER ON THE SOLE, RELEVANT MATERIAL FACT FOR SUBJECT MATTER JURISDICTION ............................. 2

    D. SUBJECT ENTRY NOS. 300-9945919-7, 300-9945928-8 AND 300-9945935-3 WERE AUTOMATICALLY LIQUIDATED AS ENTERED BY CUSTOMS AND CUSTOMS' PURPORTED RELIQUIDATIONS OF THE THREE RECONCILIATION ENTRIES WERE INEFFECTIVE AND LEGALLY NULL AND VOID BECAUSE THEY OCCURRED AFTER THE FOURTH ANNIVERSARY OF THEIR FILING. ........................................................................ 2

    E. ALTHOUGH CUSTOMS LIQUIDATED ENTRY NUMBER 300-4830272-0 AS ENTERED BY FORD, CUSTOMS HAS NOT, 18 MONTHS LATER, ISSUED THE DUTY REFUNDS ASSERTED BY FORD IN THAT RECONCILIATION ENTRY. .................................................................................................................. 3

II. SUMMARY OF THE ARGUMENT ............................................................................... 3

III. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE UNLIQUIDATED DRAWBACK CLAIMS ..................................................................... 4

    A. AT THE TIME FORD COMMENCED THIS ACTION, CUSTOMS HAD NOT AFFIRMATIVELY LIQUIDATED OR RELIQUIDATED ANY OF THE SUBJECT RECONCILIATION ENTRIES, EXCEPT FOR ONE. ............................ 4

    B. ACCORDING TO THE UNMISTAKABLY CLEAR AND UNQUESTIONED LAW OF THIS COURT, FORD'S "ONLY" REMEDY AT THE TIME THIS ACTION WAS COMMENCED WAS TO SEEK DECLARATORY JUDGMENT UNDER § 1581(I) JURISDICTION. ............................................................................ 5

        1. In Filing Suit in This Court, Ford Simply Followed the Unmistakable Instructions of this Court ............................................................................. 5

        2. Jurisdiction Under 28 U.S.C. § 1581(a) Was Not Available Because Without Liquidation, Ford Could Not File a Protest that Customs Could Decide. ......................................................................................................... 6

3. The Legal Authority Cited by Defendants Does Not Support Their Argument that the Court Lacks Subject Matter Jurisdiction ............................ 7

    **a. Customs Had Not Liquidated Any of the Reconciliation Entries at Issue in this Case, Which Distinguishes this Case from the Cases Cited** ...................................................................................... 7

    b. Ford Did Not Have to Wait for Customs to Liquidate the Reconciliation Entries At Issue to Seek Declaratory Judgment that the Entries Were Deemed Liquidated by Operation of Law ................ 8

4. Ford's Claims With Respect to the Three Oldest Reconciliation Entries Are Not Barred by the Statute of Limitations. ......................................................... 9

C. CONCLUSION: DEFENDANTS' MOTION FOR DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION MUST BE DENIED. .................................... 10

**IV. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT ENTRY NOS. 300-9945919-7, 300-9945928-8 AND 300-9945935-3 ARE DEEMED LIQUIDATED BY OPERATION OF LAW BECAUSE THESE THREE ENTRIES REACHED THE MAXIMUM FOUR YEAR PERIOD FOR LIQUIDATION** ............................................................................................................ 11

A. PARTIAL SUMMARY JUDGMENT FOR FORD IS FULLY APPROPRIATE. ..... 12

B. BECAUSE CUSTOMS' RELIQUIDATIONS OF THE THREE RECONCILIATION ENTRIES OCCURRED AFTER THE FOUR-YEAR MAXIMUM TIME ALLOWED BY THE STATUTE FOR CUSTOMS TO TAKE SUCH ACTION, THE RELIQUIDATIONS WERE NULL AND VOID. ............... 13

**V. THE COURT SHOULD ISSUE A WRIT OF MANDAMUS ORDERING CUSTOMS TO REFUND THE DUTIES CLAIMED BY FORD IN RECONCILIATION ENTRY NO. 300-4830272-0 FORTHWITH WITH INTEREST AS ALLOWED BY LAW** .......................................................................... 14

**VI. CONCLUSION** ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 12

*Arrowhead Indus. Water, Inc.*, 846 F.2d 731 (Fed. Cir.1988) .................................... 5, 11

*Avenal v United States*, 100 F.3d 933, 936 (Fed Cir. 1997) ........................................ 12

*Cheney United States Dist. Court for D.C.* , 542 U.S. 367, 380-81 (2004) .................................. 15

*Crown Coat Front Co. v United States*, 386 US 503 (1967) .................................... 9, 10

*Diamond Sawblades Mfrs. Coalition v United States*, 650 F.Supp. 2d 1331 (CIT 2009) ............ 15

*Fujitsu General America v United States*, 110 F.Supp2d 1061 (CIT 2000) ......................... passim

*Hair v United States*, 350 F.3d 1253, 1260 (Fed Cir. 2003) .......................................... 9

*Hartford Fire Insurance Company v United States*, 544 F.3d 1289 (Fed. Cir. 2008) ............... 6, 7

*International Custom Products, Inc. v United States*, 467 F.3d 1324 (Fed Cir. 2006) .................. 7

*John S. Phipps v. United States*, 22 C.C.P.A. (Customs) 595 (1938) .......................................... 14

*Keene Corp. v. United States*, 508 U.S. 200 (1993) ...................................................... 5

*Koyo Corp of U.S.A. v United States*, 497 F.3d 1231 (Fed Cir. 2007) .......................................... 8

*Lane Bryant Inc. v United States*, 35 F.3d 1570 (Fed Cir. 1994) .......................................... 5

*M.M Dupouey v. United States*, 8 Cust. Ct. 6 (1941) .......................................... 14

*Mukand Int'l Ltd. v. United States*, 412 F. Supp. 2d 1312 (CIT 2005) .......................................... 6

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) .......................................... 5

*Nunn Bush Shoe Company v United States*, 784 F. Supp. 892, 895 (CIT 1992) .................... 13, 14

*Pacific Brokerage Co. v. United States*, 3 Cust. Ct. 20 (1939) .......................................... 14

*Sevenson EnvServices, Inc. v Shaw Environmental, Inc.*, 477 F.3d 1361, (Fed Cir. 2007) .......... 12

*SKF USA Inc. v United States*, 512 F.3d 1326 (Fed Cir. 2008) .......................................... 12

*Washington Int'l Ins. Co.  v. United States*, 138 F. Supp. 2d 1314 (CIT 2001) ............................. 4


**Statutes**

19 U.S.C. § 1501 .......................................... 16

19 U.S.C. § 1504(a)(1) .......................................... 5

19 U.S.C. § 1514 .......................................... 8

28 U.S.C. § 1581(a) .......................................... 8, 9

28 U.S.C. § 1581(i) .......................................... passim

Plaintiff, Ford Motor Company ("Ford"), by and through its attorneys, files its Response in Opposition to Defendants' Motion to Dismiss and in support of Plaintiff's Cross-Motion for Partial Summary Judgment and Application for a Writ of Mandamus, as follows:

## I.   KEY BACKGROUND FACTS

### A.   Ford Files the Subject Reconciliation Entries

Between June 2005 and July 2006, Ford filed the subject reconciliation entries on behalf of its then unincorporated division, Jaguar Cars North America. See Defendant's Exhibit B to Motion to Dismiss (hereinafter "Defendants' Exhibit B"). In each of these reconciliation entries, Ford asserted that estimated duties had been overpaid at the time the underlying consumption entries were filed and that Ford was owed a refund of duties in the amounts specified in each reconciliation entry.

### B.   Customs Had Not Liquidated Any of the Subject Entries at the Time this Action Was Commenced.

For purposes of the Government's motion to dismiss for lack of subject matter jurisdiction, however, the only relevant fact, which is not disputed, is that with the exception of entry number 300-4830272-0, none of the subject Reconciliation Entries had been liquidated as of April 15, 2009, the date Ford filed the Summons and Complaint in this case. With respect to entry number 300-4830272-0, it is undisputed that as of the date of Ford commencing this action, Customs had liquidated the entry as entered, but had not yet issued to Ford the overpaid duties as asserted.

**C. Customs' Alleged Extensions of Liquidation of the Subject Entries Have No Bearing Whatsoever on the Sole, Relevant Material Fact for Subject Matter Jurisdiction.**

The Government's extensive allegations with respect to establishing the probability that notices of extension of liquidation of the subject Reconciliation Entries were mailed to Ford, its designated representative, and Ford's surety have no relevance whatsoever to the Motion to Dismiss for Lack of Subject Matter Jurisdiction. These facts, which Ford does not agree are undisputed, only have relevance if the Court reaches the question of whether the subject Reconciliation Entries were deemed liquidated by operation of law, because Customs had either not properly extended their liquidation or, assuming proper extensions of liquidation, that Ford was or was not properly notified of the purported extensions.

**D. Subject Entry Nos. 300-9945919-7, 300-9945928-8 and 300-9945935-3 Were Automatically Liquidated As Entered by Customs and Customs' Purported Reliquidations of the Three Reconciliation Entries Were Ineffective and Legally Null and Void Because They Occurred After the Fourth Anniversary of Their Filing.**

Defendants admit that three of the subject reconciliation entries (entry nos. 300-9945919-7, 300-9945928-8 and 300-9945935-3) were automatically liquidated *as entered* because they had reached the maximum four year time limit for Customs to affirmatively liquidate entries. See Defendants' Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (hereinafter "Defs' Brief") at p. 4. Defendants further admit that each of these three reconciliation entries were purportedly reliquidated at a value that denied Ford's assertions for a duty refund on dates *after* the fourth anniversary of entry filing had been reached. Id.[1]

---

[1] It should be noted that Ford has not received notices of liquidation from Customs for any of these three entries and Customs has not claimed that it has issued any such liquidation notices, even though it is required to do so by law.

**E. Although Customs Liquidated Entry Number 300-4830272-0 As Entered By Ford, Customs Has Not, 18 Months Later, Issued the Duty Refunds Asserted by Ford in that Reconciliation Entry.**

Customs admits that it liquidated entry no. 300-4830272-0 on July 11, 2008 as entered. Defs' Br. at p. 4. But, Customs also admits, now more than 18 months later, it still has not issued the duty refunds asserted by Ford in that reconciliation entry.

## II.  SUMMARY OF THE ARGUMENT

This Court has original and exclusive jurisdiction over this action because it is a civil action against the United States and its agencies arising out of the law of the United States providing for revenue from imports or tonnage, tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue, or administration and enforcement with respect to such matters.  *See* 28 U.S.C. § 1581(i).  At the time Plaintiff filed this action, it is undisputed that Defendants had not liquidated any of the reconciliation entries at issue in this case.  Therefore, pursuant to the well-established precedent and case law of this Court as well as the Federal Circuit, the only way that Ford could obtain a judicial determination that all or some of the subject entries were deemed liquidated by operation of law, pursuant to 19 U.S.C. § 1504(a)(1), was to obtain declaratory judgment under the Court's 28 U.S.C. § 1581(i) jurisdiction.  The remainder of the reasons offered by Defendants in support of their motion to dismiss are without merit and have no legitimate legal authority to support the various propositions.  Therefore, the Government's Motion to Dismiss for lack of subject matter jurisdiction must be denied.

In addition, Ford moves for partial Summary Judgment with respect to three of the subject Reconciliation Entries filed that Customs liquidated as entered and then purported to reliquidate, but only after the fourth anniversary of their filing had occurred.  There are no

material facts in dispute and the plain and unambiguous language of the statute mandates a

judgment in favor of Ford as a matter of law.

Finally, Ford seeks a Writ of Mandamus from this Court ordering Customs to issue the

duty refunds Ford claimed in entry number 300-4380272-0, which Customs liquidated as entered

on July 18, 2008.

## III.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE UNLIQUIDATED DRAWBACK CLAIMS

### A. At the Time Ford Commenced This Action, Customs Had Not Affirmatively Liquidated or Reliquidated Any of the Subject Reconciliation Entries, Except for One.

It is undisputed that as of the date Ford filed the Summons and Complaint in this action,

April 15, 2009, with the exception of one, Customs had not affirmatively liquidated or

reliquidated any of the subject Reconciliation Entries.  And, with respect to the one undisputed

liquidated as entered entry, Customs had not yet issued the duty refunds as asserted by Ford.

"[S]ubject-matter jurisdiction is determined at the time the suit is filed and, after vesting, cannot

be ousted by subsequent events ..." *Washington Int'l Ins. Co.  v. United States*, 138 F. Supp. 2d

1314, 1325 (2001). Therefore, any and all actions taken or contemplated to be taken by Customs

after this action was commenced were a "nullity".  *Id* at 1326.  To hold otherwise would "require

this Court to construe [the law] in a manner that contradicts recognized legal principles ...

[which] would be tantamount to granting Customs the authority to hinder, delay, and frustrate

judicial review through arbitrary post-summons actions."  *Id*. at 1325-1326.

Customs' supposed extensions of liquidation prior to Ford filing this suit have no effect

on the Court's jurisdiction, even if Customs is able to prove that it did in fact extend liquidation

and did so legally[2], because whether or not the subject entry has been affirmatively liquidated is the only relevant jurisdictional fact where, as here, an importer seeks declaratory judgment on deemed liquidation. "The presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Arrowhead Indus. Water, Inc.*, 846 F.2d 731, 734 n. 2 (Fed. Cir.1988). Federal court jurisdiction is "time-specific," because the existence of federal jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). The only relevant fact is that at the time Ford commenced this action, none of the subject Reconciliation Entries had been liquidated.

**B. According to the Unmistakably Clear and Unquestioned Law of this Court, Ford's "Only" Remedy at the Time This Action Was Commenced Was to Seek Declaratory Judgment under § 1581(i) Jurisdiction.**

**1. In Filing Suit in This Court, Ford Simply Followed the Unmistakable Instructions of this Court.**

In filing this suit, Ford simply followed the unmistakable instructions this Court has articulated to importers who find themselves in the precise factual situation that Ford did in April 2009. Most notable is the Court's statement in *Fujitsu General America v United States*, 110 F.Supp2d 1061 (CIT 2000):

> Therefore, where an importer believes its entries were deemed liquidated under § 1504(d), and Customs has not actively liquidated the entries anew, the importer's only remedy, at that point, is to seek a declaratory judgment from the CIT confirming that there was a deemed liquidation under 28 U.S.C. § 1581(i).

---

[2] All that the affidavits do is suggest that Customs has a regular process for mailing out notices of extension of liquidation. Customs has proffered no tangible or admissible evidence that Customs actually extended the liquidation of any of the subject Reconciliation Entries, which action would have had to have been taken by a Customs employee, such as an Import Specialist. See Olds affidavit, ¶ 3. But, even if Customs did extend the liquidation of all of the subject reconciliation entries, it would have no bearing or relevance on the Government's motion to dismiss and, therefore, these facts must be disregarded. See *Lane Bryant Inc. v United States*, 35 F.3d 1570 (Fed Cir. 1994).

*Fujitsu*, 110 F. Supp. 2d at 1069 (emphasis added)[3]; *see also*, *Mukand Int'l Ltd. v. United States*, 412 F. Supp. 2d 1312, 1317 (CIT 2005) (importer "should have filed a § 1581(i) action with this Court as soon as it received notice of the potential liquidation of its entries and obtained injunctive relief against liquidation before Customs liquidated its entries.").

This Court has made clear that Ford had a right to seek judicial review of the question of whether its Reconciliation Entries, not having been affirmatively liquidated by Customs, had been deemed liquidated by operation of law. Ford has met the factual requirements to commence an action for declaratory judgment and this Court has jurisdiction to hear this case under 28 U.S.C. § 1581(i).

### 2. Jurisdiction Under 28 U.S.C. § 1581(a) Was Not Available Because Without Liquidation, Ford Could Not File a Protest that Customs Could Decide.

The jurisdictional fact that confers this Court's jurisdiction under § 1581(i) also serves to establish that jurisdiction under § 1581(a) is not available. Because the subject Reconciliation Entries had not been affirmatively liquidated by Customs adverse to Ford's claims (i.e., denying Ford's claims for a refund of duties) at the time Ford commenced this action in April 2009, or in the case of entry number 300-4380272-0, Customs liquidation of the entry as entered was not adverse to Ford, Ford could not file a protest pursuant to 19 U.S.C. § 1514. 19 U.S.C. § 1514(c)(3)(A). See also *Hartford Fire Insurance Company v United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) ("A protestant must file a protest of a decision, order, or finding described in subsection 1514(a) within 180 days after but not before the date of liquidation or reliquidation.

---

[3] Defendants profoundly misread or misunderstand this Court's decision in *Fujitsu*. See Defs' Brief at p. 14. In *Fujitsu*, 1581(i) jurisdiction and declaratory judgment was unavailable precisely because Customs had affirmatively and timely reliquidated the entries at issue. See quotation from *Fujitsu* in Defs' Brief at p. 14, "once Customs purportedly liquidated the subject entries, Fujitsu could no longer invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i)." The Court's holding as to the only remedy available where Customs has not liquidated or reliquidated an entry applies squarely to Ford's central jurisdictional and substantive fact: Customs had not liquidated any of the subject Reconciliation Entries at the time Ford commenced this action. An extension is not a liquidation and it is whether or not there has been a liquidation which determines whether the Court's jurisdiction applies under (i) or (a).

Id. § 1514(c)(3).")  Since § 1581(a) jurisdiction is for judicial review of Customs' denial of a protest and Ford could not have filed a protest for any of the subject Reconciliation Entries, because none of them had been liquidated, § 1581(a) jurisdiction was not available.  Jurisdiction under § 1581(a) not being available, the test of it being manifestly inadequate need not being addressed.  Because 28 U.S.C. § 1581(a) jurisdiction was not available, the Court must exercise its residual jurisdiction under 28 U.S.C. § 1581(i):  *Fujitsu, supra.*

### 3.  The Legal Authority Cited by Defendants Does Not Support Their Argument that the Court Lacks Subject Matter Jurisdiction.

#### a.  Customs Had Not Liquidated Any of the Reconciliation Entries at Issue in this Case, Which Distinguishes this Case from the Cases Cited by Defendants.

None of the legal authority cited by Defendants in its brief actually supports their argument that the Court lacks subject matter jurisdiction over this case under § 1581(i).  As shown above, § 1581(a) jurisdiction is not available.  Thus, Defendants' reliance on *Hartford*, *supra*, and *International Custom Products, Inc. v United States*, 467 F.3d 1324 (Fed Cir. 2006) is misplaced.  See Defs' Brief at pp. 9 – 11.  Both of those cases involved situations where Customs had liquidated the entries at issue and, therefore, the Court found that § 1581(a) was available and not manifestly inadequate.  But, with the exception of one, Customs had not liquidated any of the subject Reconciliation Entries when Ford commenced this action; therefore § 1581(a) jurisdiction was not available.  Defendants' argument and cited authority that Ford could and should have protested the deemed liquidations of six of the subject Reconciliation Entries is equally misplaced.  Defs' Brief at pp. 12 – 13.  If the subject Reconciliation Entries were deemed liquidated, they would have liquidated as "asserted" by Ford, meaning that they would have been deemed liquidated at the values asserted by Ford and that Customs would have to refund the overpaid duties as Ford asserted in the Reconciliation Entries.    A protest, even of a deemed liquidation, can only be filed against a liquidation that is "adverse to the importer".  See 19

U.S.C. § 1514(a).  That was the situation in *Koyo Corp of U.S.A. v United States*, 497 F.3d 1231

(Fed Cir. 2007); but, it is not the situation here.  Without a liquidation adverse to Ford, no protest

could be filed, the denial of which would invoke this Court's jurisdiction under § 1581(a).

> **b. Ford Did Not Have to Wait for Customs to Liquidate the Reconciliation Entries At Issue to Seek Declaratory Judgment that the Entries Were Deemed Liquidated by Operation of Law.**

The gist of Customs' position in this case (as well as another case in which Ford is a

plaintiff involving the question of deemed liquidation of drawback claims; CIT case no. 09-375)

is that an importer must "wait until the entry (or drawback claim) liquidates to determine whether

it wants to challenge Customs' assessments."  Defs' Brief at p. 13.  But, that is not what Congress

intended when it enacted 19 U.S.C. § 1504 nor how the statute has been interpreted by the Court.

In enacting § 1504, Congress not only placed strict time limits on Customs to take action on

entries and drawback claims, but imposed consequences on Customs for its failure to take timely

action by having aging entries and drawback claims deemed liquidated as "asserted" by the

importer or drawback claimant.  19 U.S.C. § 1504(a)(1) ("an entry ... not liquidated with 1 year

... shall be deemed liquidated at the rate of duty, value ... and amount of duties asserted by the

importer"); (a)(2) ("an entry or claim for drawback not liquidated within 1 year ... shall be

deemed liquidated at the drawback amount asserted by the claimant"); (b) ("any entry the

liquidation of which is extended ... shall be treated as having been liquidated at the rate of duty,

value ... and amount of duty asserted by the importer ... or the drawback claimant, at the

expiration of 4 years from [the date of entry]").   Nothing in the language of the statute itself or

in the legislative history remotely suggests that Congress intended the statute to be applied only

passively or defensively as Defendants would have the Court hold.  Moreover, the Courts have

made explicit that where Customs has not affirmatively liquidated an entry, the "only remedy"

for the importer or drawback claimant is to seek declaratory judgment that the entries or

drawback claims at issue have been deemed liquidated by operation of 19 U.S.C. 1504.  *Fujitsu* and *Mukand Int'l, supra.*

### c. Ford's Claims With Respect to the Three Oldest Reconciliation Entries Are Not Barred by the Statute of Limitations.

Defendants argue that Ford's claims with respect to the three Reconciliation Entries filed in 2005 are barred by the two-year statute of limitations in 28 U.S.C. § 2636(i).  Defs' Brief at pp. 6 – 7.[4]  Defendants correctly state that "the clock of a statute of limitations begins to run from the date the plaintiff's cause of action 'accrues'".  Defs' Brief at p. 6, citing to *Hair v United States*, 350 F.3d 1253, 1260 (Fed Cir. 2003).  But, Defendants' assertion that Ford's cause of action with respect to the oldest Reconciliation Entries at issue accrued on the date of the first anniversary of entry is incorrect.  *Id.*  See, *Crown Coat Front Co. v United States*, 386 US 503 (1967).

The question here is when does a cause of action accrue for determining whether or not entries (or drawback claims) have been deemed liquidated by operation of law?  In *Crown Coat*, the Supreme Court held that this question is to be answered "in the light of general purposes of the statute  and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought."  *Id.* at 517 (citations omitted).  In this case, the question cannot be answered by the statute of limitations alone; "due regard" must be given to the statute against which the limitation is to be applied, which in this case is 19 U.S.C. § 1504.  *Id.*

While the Court has clearly authorized importers to initiate an action to determine the deemed liquidated status of unliquidated entries (*Fujitsu* and *Mukand Int'l*, supra); the obvious

---

[4] At the same time, Defendants stretch the malleability of legal logic to its extreme limits by arguing that other entries are not ripe for judicial review.  Defs' Brief at pp. 8 – 9,  However, as has been made clear, this Court has already ruled where there is a question as to deemed liquidation of unliquidated entries, not only is the issue ripe for review, but the Court will decide the issue by declaratory judgment.  *Fujitsu* and *Mukand Int'l, supra.*

purpose of § 1504 was to give Customs a reasonable period of time to make decisions on entries and drawback claims. Congress decided that Customs should have up to four years to liquidate. It is correct to say that a cause of action accrues at the first anniversary of entry, but it "would have an unfortunate impact" to hold that the two-year statute of limitations in § 2636(i) begins to run then. *Crown Coat* at 514. As in *Crown Coat*, if an action for deemed liquidation accrues on the first anniversary of entry, then in any case in which liquidation has been suspended or extended (as Customs claims it did with all of the subject Reconciliation Entries), the statute of limitations would often run years before any final action had been taken. In this case, the "practical ends which are to be served by any limitation of time" and to avoid the unfortunate impact of a too strict application would require that the two-year period provided by § 2636(i) not expire until two years after the fourth anniversary of entry, unless Customs has affirmatively liquidated or reliquidated the entries at issue within that time. *Id*. Thus, the maximum time to initiate an action for declaratory judgment on deemed liquidation would be six years from the date of entry, which Ford would observe is the same amount of time provided by common law and the general federal statute of limitations.

### C. Conclusion: Defendants' Motion for Dismissal for Lack of Subject Matter Jurisdiction Must Be Denied.

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction must be denied for all of the foregoing reasons. In particular, since with the exception of one, Customs had not affirmatively liquidated any of the Subject Entries as of April 15, 2009, when Ford commenced this action, Ford's only remedy was to seek declaratory judgment that its reconciliation entries had been deemed liquidated as entered by operation of law under 28 U.S.C. § 1581(i). *Fujitsu* and *Mukand Int'l, supra*. The Court also has residual jurisdiction pursuant to § 1581(i) over entry number 300-4380272-0, because Customs did not liquidate that entry adversely to Ford,

but has not yet issued the duty refunds claimed by Ford now more than 18 months after liquidation. Customs' alleged prior extensions of liquidation have no pertinent bearing on the liquidation status as of the date Ford filed this case (indeed, assuming Customs did in fact extend liquidation, it would confirm the central jurisdictional fact that they were unliquidated at the time this action was commenced). Customs' subsequent actions cannot divest this Court of subject matter jurisdiction (*Washington Int'l, supra*), because it is only the facts as they existed at the time the case was filed that are relevant (*Arrowhead, supra*). Defendants have cited to no authority nor made any compelling argument why this Court does not have subject matter jurisdiction over this case; therefore, their motion to dismiss for lack of subject matter jurisdiction must be denied.

## IV. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT CUSTOMS LIQUIDATED ENTRY NOS. 300-9945919-7, 300-9945928-8 and 300-9945935-3 AS ENTERED AND THAT THE PURPORTED RELIQUIDATIONS ARE NULL AND VOID BECAUSE THEY WERE DONE OUT OF TIME

It is undisputed that Ford filed reconciliation entries 300-9945919-7, 300-9945928-8 and 300-9945935-3 on June 29, 2005, July 28, 2005 and August 26, 2005, respectively. Defendants have admitted that they 'automatically' liquidated each of these entries as entered on June 19, 2009, July 17, 2009 and August 14, 2009. See Defs' Brief at p. 4. The fourth anniversary dates of filing of these reconciliation entries were June 29, 2009, July 28, 2009 and August 26, 2009, respectively. Defendants have further admitted that they purportedly reliquidated each of these three reconciliation entries and denying Ford's duty refund claims on August 7, 2009 (40 days after the 4th anniversary of filing), July 31, 2009 (3 days after the 4th anniversary of filing), and September 18, 2009 (23 days after the 4th anniversary of filing). Because Customs' reliquidations, denying Ford's duty refund claims, occurred after the maximum four year period allowed by the statute for Customs' to take action on entries, Ford is entitled to partial summary

judgment that each of these three reconciliation entries was liquidated by Customs as entered and that the purported reliquidations were ineffective, null and void because they were done out of time, after the fourth anniversary of their filing.

### A. Partial Summary Judgment for Ford Is Fully Appropriate.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact…." USCIT R. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Where the facts material to the motion are not disputed, the court may determine as a matter of law whether the movant is entitled to summary judgment. See *Sevenson Environmental Services, Inc. v Shaw Environmental, Inc.*, 477 F.3d 1361, 1364 (Fed Cir. 2007); see also, *Avenal v United States*, 100 F.3d 933, 936 (Fed Cir. 1997) (where "facts material to the decision are not in genuine dispute ... [s]ummary judgment is fully appropriate ....").

The material facts relevant to Ford's motion for partial summary judgment are not at all disputed. Customs "automatically" liquidated[5] the three Ford reconciliation entries on June 17, July 19 and August 14, 2009 respectively. The fourth anniversaries of these entries' filing were June 29, 2009, July 28, 2009 and August 26, 2009, respectively. Customs reliquidated the three reconciliation entries, purporting to deny Ford's claims in the entries for duty refunds, 40, 3 and

---

[5] Plaintiff is not aware of any statutory, regulatory or other legal authority for distinguishing for purposes of finality an automatic liquidation from a manual liquidation. Indeed, the Federal Circuit has suggested that there is no distinction, because the focus is

> "on the fact of liquidation; it [does] not turn on the nature of the action giving
> rise to liquidation. ... Both types of liquidation are designed to close the books
> on an importer's entries; ... the decision that an importer's liability has been
> finalized.

*SKF USA Inc. v United States*, 512 F.3d 1326, 1329 – 1330 (Fed Cir. 2008). While the Court in SKF was refusing to distinguish affirmative and deemed liquidations, the same rationale should apply to not distinguishing "automatic" and "manual" liquidations.

23 days, respectively, past the four-year maximum time allowed by the statute for liquidation or reliquidation.

### B. Because Customs' Reliquidations of the Three Reconciliation Entries Occurred After the Four-Year Maximum Time Allowed by the Statute for Customs to Take Such Action, the Reliquidations Were Null and Void.

Where liquidation of an entry has been extended (as Customs has alleged it did with respect to the three Ford reconciliation entries), Customs has a maximum of four years in which to affirmatively liquidate that entry. 19 U.S.C. § 1504(b) provides:

> Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a) of this section.

By their own admission, Customs took the required action within the statutory time period when it automatically liquidated the three Ford reconciliation entries *as entered*. Defs' Brief at p. 4. Customs' purported reliquidations were moot, ineffective and null and void, because they took place beyond the four year maximum time Congress granted Customs to take affirmative action on entries. In *Nunn Bush Shoe Company v United States*, 784 F. Supp. 892, 895 (CIT 1992), this Court held that an agency's attempt to liquidate or reliquidate an entry after the four year period allowed by 19 U.S.C. § 1504(a) is "invalid". The Court in *Nunn* held that the four year maximum time is "unambiguous" and not subject to interpretation or modification by the Court. *Id*. at 894. Therefore, Customs' purported reliquidations of the three reconciliation entries, which occurred after the fourth filing anniversary for each entry were "invalid" and without any legal effect. Customs' timely liquidations of the three reconciliation entries as entered are final and binding on both Customs and Ford.

In *Nunn*, this Court simply applied the long established precedent and rule of its predecessor courts. In *M.M Dupouey v. United States*, 8 Cust. Ct. 6 (1941), relying on *John S. Phipps v. United States*, 22 C.C.P.A. (Customs) 595 (1938) and *Pacific Brokerage Co. v. United States*, 3 Cust. Ct. 20 (1939), the Customs Court, Third Division, held that a reliquidation done after the 60 day period for finalizing a liquidation was "void". Nearly 70 years ago, the Court observed that Congress intended "to withdraw the power of the collector to reliquidate an entry more than 60 days after a valid liquidation." *Id*. In limiting Customs to four years in which to take action on an entry, Congress merely reaffirmed its policy that some limitations on Customs' power to take action must be imposed.

Defendants may argue that Customs had 90 days to reliquidate the reconciliation entries following the automatic liquidations, pursuant to 19 U.S.C. § 1501. But, once the four-year maximum time for Customs to take any action had been reached, Customs had no power to do anything with respect to these entries. *Dupouey, supra*; see also *Nunn, supra* at 894. ("This interpretation, however, applies only to entries that remain suspended beyond the four year statutory period. Nowhere in the legislative history is it stated that the provision, requiring an entry of merchandise to be liquidated with four years, is discretionary.") None of the three reconciliation entries were suspended from liquidation; therefore, the four year time period applied and Customs' out of time reliquidations were invalid, null and void. Indeed, the Court has no authority to even consider the propriety of Customs' reliquidations.

## V. THE COURT SHOULD ISSUE A WRIT OF MANDAMUS ORDERING CUSTOMS TO REFUND THE DUTIES CLAIMED BY FORD IN RECONCILIATION ENTRY NO. 300-4830272-0 FORTHWITH WITH INTEREST AS ALLOWED BY LAW

Defendants have stated that "Entry number 300-4380272-0 liquidated automatically as entered on July 11, 2008, and Customs is in the process of providing Ford a refund for the duties claimed in this reconciliation entry." Defs' Br. at p. 4. Aside from the fact, that defendants make

no attempt to explain why it has taken more than 18 months for Customs to issue the refund, the fact remains that Customs has not yet refunded the duties it has admitted it owes Ford. Plaintiff, has no alternative, but to seek a writ of mandamus from this Court ordering Customs to refund the duties that Customs has admitted it has owed Ford since July 18, 2008.

Before the court may issue a writ of mandamus, three conditions must be met: "First, the petitioner must demonstrate a clear and indisputable right to the writ. Second, the petitioner must demonstrate that he or she lacks adequate alternative means to obtain the desired relief. And third, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Diamond Sawblades Manufacturers Coalition v United States*, 650 F.Supp. 2d 1331, 1339 (CIT 2009), citing to *Cheney United States Dist. Court for D.C.* , 542 U.S. 367, 380-81 (2004). In this case, all three conditions are indisputably met, and so, a writ of mandamus should issue.

First, Ford has a "clear and indisputable right" to the refunds it claimed in this reconciliation entry. Given that Customs liquidated the entry as entered, there is no doubt or question as to Ford's right to receive the refunds it claimed in that entry. Second, Ford has no "adequate alternative remedy" to obtain the refunds. Since the liquidation was as entered, Ford could not protest the liquidation even if it had been given timely notice of the liquidation back in 2008. Issuing the refund is a ministerial act with no need or cause for any further consideration or exercise of discretion on the part of Customs. Even outside this action, the only remedy that Ford is aware of to recover duties that Customs itself has admitted are due and owing, but for some inexplicable reason has not actually issued in the more than 18 months since liquidation is seeking a writ of mandamus. Third, the Court should be satisfied in this case that "writ is appropriate under the circumstances". Fully cognizant that a writ of mandamus is to be issued "only in extraordinary situations" (*Id*.), where Customs has acknowledged its duty, but has not

yet even made an apparent attempt to fulfill it, seems to Ford to be precisely the "extraordinary situation" that requires this writ. Therefore, Ford respectfully submits that it has met all of the prerequisites for this Court to issue a writ of mandamus ordering Customs to refund forthwith (not later than 10 days from the date of the order or writ) the duties claimed by Ford in reconciliation entry number 300-4380272-0 plus interest as allowed by law.

## VI. <u>CONCLUSION</u>

For these reasons, Plaintiff Ford Motor Company respectfully requests that the Court (1) deny Defendants' Motion to Dismiss, (2) grant Ford's motion for partial summary judgment, (3) issue a Writ of Mandamus, and (4) and provide Ford with such other and further relief as this Court deems to be just proper and equitable.

Dated: January 22, 2010                Respectfully submitted,


                                        /s/ Paulsen K. Vandevert
                                        Paulsen K. Vandevert, Esq.
                                        The Ford Motor Company
                                        One American Road, Ste 612
                                        Dearborn, MI 48126-2798
                                        Tel.:  (313) 337-5082
                                        e-Mail:  pvandev3@ford.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **FORD MOTOR COMPANY**

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

# Exhibit A

**Status of**
**Reconciliation Entries**  Court No. 09-00151

| Reconcilation Entry Number | Reconciliation Entry Date | Anticipated Deemed Liquidation Date | Date of First Extension | Anticipated Deemed Liquidation Date | Date of Second Extension | Anticipated Deemed Liquidation Date | Date of Third Extension | Anticipated Deemed Liquidation Date |
|---|---|---|---|---|---|---|---|---|
| 300-9945919-7 | 6/29/2005 | 6/29/2006 | 4/8/2006 | 6/29/2007 | 2/10/2007 | 6/29/2008 | 5/24/2008 | 6/29/2009 |
| 300-9945928-8 | 7/28/2005 | 7/28/2006 | 8/27/2005 | 7/28/2007 | 8/5/2006 | 7/28/2008 | 8/4/2007 | 7/28/2009 |
| 300-9945935-3 | 8/26/2005 | 8/26/2006 | 7/29/2006 | 8/26/2007 | 6/9/2007 | 8/26/2008 | 5/24/2008 | 8/26/2009 |
| 300-4830222-5 | 5/15/2006 | 5/15/2007 | 4/7/2007 | 5/15/2008 | 5/10/2008 | 5/15/2009 | 7/5/2008 | 5/15/2010 |
| 300-4830252-2 | 6/15/2006 | 6/15/2007 | 4/7/2007 | 6/15/2008 | 6/7/2008 | 6/15/2009 | 7/5/2008 | 6/15/2010 |
| 300-4830281-1 | 8/14/2006 | 8/14/2007 | 7/14/2007 | 8/14/2008 | 7/5/2008 | 8/14/2009 | 3/21/2009 | 8/14/2010 |
| 300-4830280-3 | 8/14/2006 | 8/14/2007 | 7/14/2007 | 8/14/2008 | 7/5/2008 | 8/14/2009 | 3/21/2009 | 8/14/2010 |
| 300-4830290-2 | 9/21/2006 | 9/21/2007 | 9/8/2007 | 9/21/2008 | 7/5/2008 | 9/21/2009 | 3/21/2009 | 9/21/2010 |
| 300-4830301-7 | 10/4/2006 | 10/4/2007 | 9/22/2007 | 10/4/2008 | 10/13/2007 | 10/4/2009 | 3/21/2009 | 10/4/2010 |

| Reconcilation Entry Number | Liquidation Date | Reliquidation Date |
|---|---|---|
| 300-9945919-7 | 6/19/2009 | 8/7/2009 |
| 300-9945928-8 | 7/17/2009 | 7/31/2009 |
| 300-9945935-3 | 8/14/2009 | 9/18/2009 |
| 300-4830222-5 | 5/7/2010 | |
| 300-4830252-2 | 6/4/2010 | 7/23/2010 |
| 300-4830281-1 | 7/30/2010 | |
| 300-4830280-3 | 7/30/2010 | |
| 300-4830290-2 | 7/30/2010 | |
| 300-4830301-7 | 7/30/2010 | |

JA165b

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE MARK A. BARNETT, *JUDGE*

| | |
|---|---|
| Ford Motor Company, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Case No.: 09-00151 |
| | : |
| United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection | : |
| | : |
| Defendants. | : |
| | : |

## FORD'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE AGENCY RECORD AND MOTIONS TO DISMISS

Respectfully submitted,

BAKER & HOSTETLER LLP

By: s/ Matthew W. Caligur
Matthew W. Caligur
e-Mail: mcaligur@bakerlaw.com
C. Thomas Kruse
e-Mail: tkruse@bakerlaw.com
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-5009
(713) 751-1600 Telephone
(713) 751-1717 Telecopier

OF COUNSEL:
Paulsen K. Vandevert, Esq.
The Ford Motor Company
One American Road, Ste. 612
Dearborn, MI 48126-2798
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com
**ATTORNEYS FOR PLAINTIFF**
**FORD MOTOR COMPANY**

# TABLE OF CONTENTS

I.   BACKGROUND OF THE DISPUTE ..............................................................1

    A. Ford's Reconciliation Entries .............................................................1

    B. Prior Proceedings in This Court.........................................................3

    C. Proceedings in the Federal Circuit .....................................................4

II.  SUMMARY OF THE ARGUMENT .............................................................5

    A. FORD'S CLAIMS ARE NOT TIME BARRED ..................................5

    B. THE COURT SHOULD NOT DISMISS THIS CASE ON PRUDENTIAL GROUNDS ..............................................................6

    C. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR JUDGMENT ...................................................................................6

        1. The Administrative Record Does Not Support the Government's Claims Regarding the Supposed Extensions of the Reconciliation Entries ..........6

        2. Customs' Interpretation of 19 U.S.C. § 1501 Is Inconsistent With the Deemed Liquidation Provision of 19 U.S.C. § 1504 ...............................7

        3. The Administrative Record Demonstrates That Customs Failed to Timely and Properly Appraise Entry D ..............................................................8

        4. Ford's Claim for Injunctive Relief Is Ripe Because Post-Filing Actions Cannot Deprive the Court of Jurisdiction .................................................9

    D. THE COURT SHOULD GRANT JUDGMENT ON THE AGENCY RECORD IN FORD'S FAVOR .............................................9

III. ARGUMENT..............................................................................................10

    A. FORD'S CLAIMS 1-4 AND 6 FOR ENTRIES B, C AND D ARE NOT TIME BARRED .......................................................................10

    B. PRUDENTIAL CONSIDERATIONS MANDATE RETENTION OF THIS ACTION .......................................................................12

    C. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR JUDGMENT .................................................................................14

1. The Administrative Record Contains No Evidence That Ford's Entries Were Validly Extended, or That Ford Received Notices of Extension ..14

2. Customs' Failure to Provide Reasons for the Extensions Was Prejudicial to Ford, and Ford Was Not Aware That Customs Had Requested Internal Advice to Address the Entries................................................17

3. Customs' Argument Regarding Ford's Fifth Claim Is Inconsistent With the Legal Prohibition of Untimely Liquidations ....................................20

4. Customs' Argument Regarding Ford's Sixth Claim Contradicts Case Law and the Facts of the Case ......................................22

5. Ford's Seventh Claim Is Ripe ..................................................24

D. JUDGMENT ON THE AGENCY RECORD SHOULD BE GRANTED IN FORD'S FAVOR...................................................................................25

1. The Standard of Review..........................................................25

2. Entries B, C, D and F Liquidated by Operation of Law Because Customs' Reliquidation of These Entries Was Improper.......................................26

a. Customs' Auto-Liquidation and Reliquidation of These Entries Was Improper.........................................................26

b. Customs' Reliquidation of These Entries Was Untimely........28

3. All of Ford's Reconciliation Entries Were Deemed Liquidated by Operation of Law Because the Manner in Which Customs Conducted the Internal Advice Process and the Time Customs Took to Liquidate the Entries was Unreasonable ....................................................29

4. All of Ford's Reconciliation Entries Were Deemed Liquidated by Operation of Law Because Customs Had All Information Necessary to Liquidate the Subject Entries, Making Extensions Improper ................31

5. All of Ford's Reconciliation Entries Were Deemed Liquidated by Operation of Law Because the Notices of Extension of Liquidation, If Any Were Issued, Were Likely Defective ....................................................33

IV. CONCLUSION...............................................................................34

V. CERTIFICATE OF COMPLIANCE.........................................................36

VI. CERTIFICATE OF SERVICE .................................................................37

# TABLE OF AUTHORITIES

## CASES:

*Ammex, Inc. v. United States*,
24 CIT 851, 116 F. Supp. 2d 1269 (2000) ...................................................................26

*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*,
272 F.3d 276 (5th Cir.2001) ........................................................................................11

*Ambassador Div. of Florsheim Shoe v. United States*,
748 F.2d 1560 (Fed. Cir.1984).....................................................................................21

*C.B. Imports Transamerica Corp. v. United States*,
807 F. Supp. 2d 1350 (Ct. Int'l Trade 2011) ............................................................. 12

*Central Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983).....................................................................................10

*Enron Oil & Transp. Co. v. United States*,
15 CIT 511 (Ct. Int'l Trade 1991) ...............................................................................15

*F. Alderete General Contractors, Inc. v. United States*,
715 F.2d 1476 (Fed. Cir.1983).....................................................................................24

*Ford Motor Co. v. United States*,
286 F.3d 1335 (Fed Cir. 2002) .....................................................................................30

*Ford Motor Co. v. United States*,
716 F. Supp. 2d 1302 (Ct. Int'l Trade 2010) ...............................................................4

*Ford Motor Co. v. United States*,
751 F. Supp. 2d 1316 (Ct. Int'l Trade 2010) ...............................................................4

*Ford Motor Co. v. United States*,
806 F. Supp. 2d 1328 (Ct. Int'l Trade 2011) .............................................................13

*Ford Motor Co. v. United States*,
688 F.3d 1319 (Fed. Cir. 2012).................................................................4, 10, 12, 25

*Frontier Ins. Co. v. United States*,
155 F. Supp. 2d 779 (Ct. Int'l Trade 2001) ...............................................................15

*Fujitsu General America, Inc. v. United States*,
24 CIT 733 (2000) .......................................................................................................13

*In re Felt*,
225 F.3d 220 (5th Cir. 2001) ........................................................................................11

*Intercargo Ins. Co. v. United States*,
83 F.3d 391 (Fed. Cir. 1996).........................................................................................17

*Int'l Cargo & Sur. Ins. Co. v. United States*,
15 CIT 541, F. Supp. 174 (Ct. Int'l Trade 1991) .....................................15, 21, 27, 28

*Intra-Mar Shipping Co. v. United States*,
66 Cust. Ct. 3 (1971)....................................................................................................15

*L.G. Elecs. U.S.A., Inc. v. United States,*
991 F. Supp. 668 (Ct. Int'l Trade 1997) ................................................................11, 23

*Mitsubishi Elecs. Am., Inc. v. United States*,
44 F.3d 973 (Fed. Cir. 1994)........................................................................................11

*Micropoint, Inc. v. United States*,
77 Cust. Ct. 135, 426 F. Supp. 569 (Cust. Ct. 1976) ..................................................23

*Mukand Int'l Ltd. v. United States*,
412 F. Supp. 2d 1312 (Ct. Int'l Trade 2005) ..............................................................24

*Pagoda Training Co. v. United States*,
617 F. Supp. 96 (Ct. Int'l Trade 1995) ..................................................................21, 22

*Sandvik Steel Co. v. United States*,
957 F. Supp. 276 (Ct. Int'l Trade 2007) ......................................................................12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1997)........................................................................................................10

*St. Paul Fire & Marine Ins. Co. v. United States*,
959 F.2d 960 (Fed. Cir. 1992)................................................................................12, 21

*The Hanover Ins. Co. v. United States*,
2001 WL 521842 (Ct. Int'l Trade 2001)......................................................................15

*Toro Co. v. White Consol. Industries, Inc.*,
383 F.3d 1326, 1335 (Fed Cir. 2004) ..........................................................................10

*United States v. Cherry Hill Textiles, Inc.*,
112 F.3d 1550 (Fed. Cir. 1997).........................................................................13, 21, 28

*United States v. Commodities Exp. Co.*,
972 F.2d 1266 (Fed. Cir. 1992)............................................................11

*United States v. U.S. Shoe Corp.*,
523 U.S.360 (1998)............................................................12

*Washington Int'l Ins. Co. v. United States*,
138 F. Supp. 2d 1314 (Ct. Int'l Trade 2001) ...............................24, 25

*Xerox Corp. v. United States*,
423 F.3d 1356 (Fed. Cir. 2005)............................................................13

**RULINGS:**

HQ 229670 (Feb. 10, 2003) ............................................................34

HQ 224629 (Aug. 17, 1993) ............................................................21, 27

HQ 544736 (Aug. 26, 1992) ............................................................21

HQ 223835 (July 24, 1992) ............................................................21

**STATUTES AND LEGISLATIVE AUTHORITY:**

5 U.S.C. § 706............................................................25, 26

19 U.S.C. § 1401(s)............................................................2

19 U.S.C. § 1500(a) ............................................................8, 23

19 U.S.C. § 1500(c) ............................................................8, 23

19 U.S.C. § 1501............................................................7, 8, 20, 21, 22, 26, 27, 28

19 U.S.C. § 1504............................................................7, 8, 9, 10, 12, 13, 17, 20, 21, 22, 26, 28, 34

19 U.S.C. § 1504(a) ............................................................2, 6

19 U.S.C. § 1504(b) ............................................................2, 3, 7, 8, 14, 17, 22, 28, 32, 33

19 U.S.C. § 1504(b)(1) ............................................................31, 33

19 U.S.C. § 1514............................................................5, 13, 23

28 U.S.C. § 1581 ...........................................................................................................11, 12

28 U.S.C. § 1581(a) ...................................................................................................6, 12, 14

28 U.S.C. § 1581(i) ..............................................................................3, 4, 5, 6, 12, 13, 24, 25

28 U.S.C. § 2636(i) ...........................................................................................5, 10, 11, 12

28 U.S.C. § 2640(a) ..................................................................................................................25

28 U.S.C. § 2640(e) ..................................................................................................................25

19 C.F.R. § 152.103(m) ..........................................................................................................19

19 C.F.R. § 159.12 ...................................................................................................................10

19 C.F.R. § 159.12(a) ..........................................................................................................2, 8

19 C.F.R. § 159.12(a)(1) ..................................................................................................2, 14, 33

19 C.F.R. § 159.12(b) ......................................................................................2, 15, 16, 17, 34

19 C.F.R. § 159.12(d) ..........................................................................................................2, 8

19 C.F.R. § 159.12(e) ..........................................................................................................2, 8

19 C.F.R. § 159.12(f) ..........................................................................................................2, 8

19 C.F.R. § 173.3 ....................................................................................................20, 21, 26, 27

19 C.F.R. § 173.3(a) ..........................................................................................................20, 26

S. Rep. No. 95-778 (1978) ...............................................................................................17, 21

## OTHER LEGISLATIVE MATERIALS:

Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222, Before the Subcomm. on Trade of the House Comm. on Ways and Means, 95th Cong., 1st Sess. (1977)17, 21

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE MARK A. BARNETT, *JUDGE*

| | |
|---|---|
| Ford Motor Company, | : |
| Plaintiff, | : |
| v. | : Case No. 09-00151 |
| United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection | : |
| Defendants. | : |

## FORD'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE AGENCY RECORD AND MOTION TO DISMISS

Plaintiff, Ford Motor Company ("Ford"), by and through its attorneys, files its Amended Response in Opposition to Defendants' Motion for Judgment on the Agency Record and Motion to Dismiss, as follows:

### I.    BACKGROUND OF THE DISPUTE

#### A.    Ford's Reconciliation Entries

Between June 2005 and July 2006, Ford filed nine (9) Reconciliation Entries (hereinafter "Entries" or "Reconciliation Entries")[1] on behalf of its then-unincorporated division, Jaguar Cars North America, at the port of Newark, New Jersey.  *See* Sec. Am. Compl. ¶ 20, Ex. A  (Dkt. #19).   With respect to the Entries at issue here, Ford deposited estimated duties using the best information available at the time of entry, flagged each of the Entries for subsequent reconciliation of the value, and then filed the Reconciliation Entries wherein Ford determined that it had overpaid the duties actually owed.  Ford requested a refund of duty in the amount

---

[1] The nine Reconciliation Entries are Entry Nos. 300-9945919-7, 300-9945928-8, 300-9945935-3, 300-4830222-5, 300-4830252-2, 300-4830281-1, 300-4830280-3, 300-4830290-2, and 300-4830301-7.   Reconciliation Entry number 300-4830272-0 is no longer a part of these proceedings.

specified in each Entry.   The total amount owed by U.S. Customs and Border Protection (hereinafter "U.S. Customs", "Customs" or "CBP") to Ford is over $6.2 million.

Reconciliation is "an electronic process, initiated at the request of an importer, under which the elements of an entry (other than those elements related to the admissibility of the merchandise) that are undetermined at the time the importer files or transmits the documentation or information required by [19 U.S.C. § 1484(a)(1)(B)], or the import activity summary statement, are provided to [Customs] at a later time."  19 U.S.C. § 1401(s).[2]  When filed by an importer, a reconciliation "is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest."  *Id.*

Unless extended or suspended, a reconciliation entry that has not been liquidated within one year from the date of filing "shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record."  19 U.S.C. § 1504(a).  Customs is authorized to "extend the period in which to liquidate an entry only if (1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, . . . or for insuring compliance with applicable law, is not available" to Customs, or if the importer "requests such extension and shows good cause therefor."  19 U.S.C. § 1504(b); *see also* 19 C.F.R. § 159.12(a)(1).  If the port director extends the time for liquidation, he must "notify the importer or the consignee and his agent and surety . . . that the time has been extended and the reasons for doing so."  § 159.12(b).

Customs may only extend the time period for liquidating an entry three times, for a length of one year each time.   19 C.F.R. § 159.12(a), (d), & (e).   After four years, regardless of extensions, if Customs has not liquidated the entry, it will liquidate by operation of law.  *See* 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(f).

---

[2] All citations to the United States Code refer to the 2006 edition.

Ford disputes that Customs ever <u>validly</u> extended the time period for liquidation of the Entries. In order for any purported extensions to be valid, Customs would have to have had a statutorily-valid reason for extending the Entries. In addition, Customs was required to give notice of the extensions to Ford and the notice was required to state the specific reasons for the extension. Ford believes that the Administrative Record demonstrates that none of these conditions for a valid extension was fulfilled. Since the Entries were never validly extended, they became deemed liquidated by operation of law one year after the date each Entry was filed (at the rate of duty, value, and amount of duties claimed by Ford.)[3] As a result, Ford is entitled to repayment of the $6.2 million in overpaid duties Ford made in connection with the Entries.

### B.      Prior Proceedings in This Court

Ford commenced this action to seek a declaratory judgment that all of the Entries at issue were deemed liquidated by operation of law at the value asserted at the time of entry. Ford also requested injunctive relief consistent with this position.

At the time Ford filed its complaint, Customs had not liquidated any of the Entries. Thus, the only jurisdictional vehicle available was to bring an action under 28 U.S.C. § 1581(i) to seek judicial confirmation of the deemed liquidations. Customs later purported to liquidate some of the Entries. But because jurisdiction is determined at the time of filing, Customs' post-summons liquidations could not divest the Court's jurisdiction. Ford also maintained that the undisputed facts showed that Customs failed to timely liquidate any of the Entries within the four year timeframe for liquidation established by Congress in 19 U.S.C. § 1504(b).

Defendants moved to dismiss Ford's claim for lack of subject matter jurisdiction under § 1581(i) and in the alternative, under the two year statute of limitations for § 1581(i) actions. In

---

[3] None of the subject nine Entries had been liquidated as of April 15, 2009, the date Ford filed the summons and complaint in this case.

response, Ford moved for partial summary judgment and applied for a writ of mandamus seeking to compel Customs to refund the duties requested by Ford for Entry A (Entry number 300-4830272-0). Defendants moved to strike portions of Ford's response. Ford then filed an application for injunctive relief to enjoin Customs from taking further action on the Entries that was inconsistent with the Entries' deemed liquidation status.

On July 22, 2010, this Court issued Slip Op. 10-80. *Ford Motor Co. v. United States*, 716 F. Supp. 2d 1302 (Ct. Int'l Trade 2010). For those Entries Customs liquidated <u>after</u> the commencement of the suit, the Court determined that it lacked jurisdiction under § 1581(i). Although the Court held that it did have jurisdiction under § 1581(i) over Entries that remained unliquidated, it declined to issue declaratory or injunctive relief, citing prudential considerations, which the Federal Circuit later determined were inextricably intertwined with the Court's "flawed jurisdictional analysis." The Court did not discuss Defendants' statute of limitations argument regarding Claims 1-4 and 6 of Entries B, C and D.[4] In addition, for Entry A, the Court dismissed Ford's claim for lack of case or controversy because Customs previously refunded the disputed duties to Ford for this Entry. The Court denied Ford's subsequent motion for reconsideration in Slip Op. 10-116. *Ford Motor Co. v. United States*, 751 F. Supp. 2d 1316 (Ct. Int'l Trade 2010).

### C. Proceedings in the Federal Circuit

Ford appealed this Court's decision to the U.S. Court of Appeals for the Federal Circuit, which reversed in part, vacated in part, and remanded the case to the trial court for further proceedings. *See Ford Motor Co. v. United States*, 688 F.3d 1319 (Fed. Cir. 2012).

---

[4] References to specific claim numbers and entry letters are taken from the chart the Court developed in connection with its opinion of July 22, 2010 (Dkt. # 40).

The Federal Circuit held that Customs could not defeat this Court's jurisdiction under § 1581(i) by liquidating Ford's Entries during the pendency of this action. According to the Federal Circuit, § 1514 "makes no endorsement of the administrative protest system for importers' claims that CBP unlawfully *failed* to act," and the court saw no contrary intent in § 1514 and no basis for abandoning the time-of-filing rule. *Id.* at 1327 (emphasis in original). The Federal Circuit also held that the merits of Ford's allegations were ripe for review, reversed this Court's dismissal of Ford's first claim for lack of case or controversy, and vacated this Court's discretionary dismissals, noting that the Court's "reasoning extended in significant part from its flawed jurisdictional analysis." *Id.* at 1330.

## II.     SUMMARY OF THE ARGUMENT

Ford opposes Defendants' Motions to Dismiss. Ford agrees with Defendants that the Court may decide and dispose of this case by issuing judgment on the agency record, except that Ford will demonstrate that judgment on the agency record should be issued in Ford's favor.

### A.     Ford's Claims Are Not Time Barred

The Federal Circuit at least impliedly rejected Defendants' limitations argument. Because a determination of subject matter jurisdiction is a threshold issue that the federal courts must necessarily decide before proceeding to the merits, the Federal Circuit's decision finding that it and this Court had subject matter jurisdiction over all of the Entries constitutes the law of the case, which Defendants cannot relitigate. But even if that ruling is not law of the case, the Court has jurisdiction over Ford's claims 1-4 and 6 for Entries B, C and D because Ford's action satisfied the two year statute of limitations mandated by 28 U.S.C. § 2636(i). Ford commenced this action in April 2009, just two months after Ford first discovered that Customs was not treating the Entries as being deemed liquidated.

### B.      The Court Should Not Dismiss This Case on Prudential Grounds

No good cause exists for dismissing this case on prudential grounds.  Both this Court and the Federal Circuit have made clear that the only avenue for relief for an importer in Ford's position at the time it brought suit in April 2009, when all of the subject Entries were unliquidated, was to bring an action under § 1581(i) to seek a judicial determination that its Entries had deemed liquidated by operation of law.  Defendants' arguments regarding the availability and adequacy of § 1581(a) (made possible only because Customs proceeded to liquidate the Entries after Ford brought this action) have already been expressly rejected by both this Court and the Federal Circuit.

### C.      The Court Should Deny Defendants' Motion for Judgment

#### 1.      The Administrative Record Does Not Support the Government's Claims Regarding the Supposed Extensions of the Reconciliation Entries

The Court should deny the Motion for Judgment on Claims 1-4 because nothing in the Administrative Record supports Defendants' contentions regarding Customs' purported extensions of the Entries.  First, nothing in the Administrative Record shows that Customs actually extended any of the Entries, indicating that the Entries liquidated by operation of law one year after filing pursuant to 19 U.S.C. § 1504(a).[5]  Second, assuming that Customs did extend any of the Entries, which Ford denies, the extensions were invalid because Ford never received notices of the extensions.  The Administrative Record is devoid of conclusive evidence that any notices of extension connected with the Entries were ever sent by Customs, or received by Ford.  Instead, the only circumstantial "evidence" in the record that Defendants have adduced is a general description of the process Customs purports to utilize in connection with generating

---

[5] Similarly, there is no evidence in the Administrative Record that any of the Entries were suspended by Customs or by court order.

and mailing notices of extension.  There is no actual evidence that any notices pertaining to Ford's Entries were actually generated or mailed.  Although Defendants correctly note that a "presumption of regularity" may apply, Ford will conclusively rebut the presumption by relying on evidence in the Administrative Record and the declaration testimony of Paul Vandevert demonstrating that the notices were never received.  Third, Ford will demonstrate that even if the Entries were extended and Ford received notices of extension, both of which are denied, the extensions would still be legally invalid because Customs never provided a reason for the extensions.  Ford has been clearly prejudiced by Customs' conduct with respect to the Entries.  Finally, with respect to Claim 4, the Administrative Record contains no evidence showing that a statutorily valid reason existed for extending the Entries, since Customs was at all material times in possession of the information it needed to appraise the Entries.  In addition, even if Customs could demonstrate that it needed additional information in order to appraise and liquidate any or all of the Entries, Customs' unreasonable delays in addressing the Entries caused them to liquidate by operation of law.

## 2. Customs' Interpretation of 19 U.S.C. § 1501 Is Inconsistent With the Deemed Liquidation Provisions of 19 U.S.C. § 1504

With respect to Claim 5, the Administrative Record reveals that Entries B and C were liquidated more than four years after filing.  Thus, even if the Entries had been validly extended, which Ford denies, they were deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(b) on the fourth anniversary of their respective entry dates.  Defendants contend that the Entries did not liquidate by operation of law because they were "auto-liquidated prior to the extended deadline for liquidation," *see* Mot. to Dismiss at 27, then "reliquidated" by Customs, ostensibly under the authority of 19 U.S.C. § 1501.  Defendants' reading of § 1501 as permitting unlimited reliquidations of entries, even beyond the four-year anniversary of their entry date, is

diametrically opposed to the plain language and legislative purpose of the deemed liquidation statute, § 1504.  Customs may only extend the time period for liquidating an entry three times, for a length of one year each time.  19 C.F.R. § 159.12(a), (d), & (e).  On the fourth anniversary of the filing of an entry, regardless of extensions, if Customs has not liquidated the entry, it will liquidate by operation of law.  *See* 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(f).

In order to provide the time limit on liquidation that Congress intended in enacting the deemed liquidation statute, Ford contends that § 1504(b) should be read to impose an absolute time limit on the time Customs has to take action on an entry either by liquidation or reliquidation.  Defendants' interpret § 1501 as giving Customs the authority to reliquidate any entry within 90 days of the prior liquidation (or reliquidation), regardless of when the fourth entry filing anniversary occurred.  This must be seen as contrary to the clear intent of Congress in providing for a four year limit on extensions of liquidation.

If Defendants' interpretation of § 1501 was correct, there would be no end to Customs' ability to reliquidate entries every ninety days as a matter of course.  Tellingly, the Administrative Record is silent as to why Entries B and C were auto-liquidated in Ford's favor, but were reliquidated with no refund.  In contrast to the "reliquidations" that purportedly occurred with respect to Entries B and C, reliquidations should be utilized only for meaningful and particularized reasons.  To use this mechanism otherwise is arbitrary, capricious, and an abuse of discretion.

### 3.  The Administrative Record Demonstrates That Customs Failed To Timely and Properly Appraise Entry D

With respect to Claim 6, the Administrative Record demonstrates that Customs did not fix the final appraisement or amount of duty for Entry D as required under 19 U.S.C. § 1500(a) and (c).  The plain language of the Notice of Action for Entry D demonstrates that Customs did

not appraise the value of the merchandise in Entry D. Customs cannot reasonably argue that it did, in fact, fix the final appraisement and duty of the Entry when it admittedly denied Ford's claim because it did not have the information necessary to appraise the entry.

### 4. Ford's Claim for Injunctive Relief Is Ripe Because Post-Filing Actions Cannot Deprive the Court of Jurisdiction

Finally, Ford's seventh claim is ripe for adjudication because at the time Ford commenced this action, none of the subject Reconciliation Entries had been liquidated. Customs' post-filing conduct cannot deprive the Court of jurisdiction to hear this case. Once Ford filed its lawsuit, and subject matter jurisdiction appropriately vested in this Court, Customs had no authority to liquidate the Entries at issue here, all of which were unliquidated at that time. Any and all actions taken or contemplated to be taken by Customs after the filing of this action were a legal nullity, which the Court should undo.

### D. The Court Should Grant Judgment on the Agency Record in Ford's Favor

The Administrative Record filed by Customs in this case supports judgment in Ford's favor on several issues. First, Entries B, C, D, and F were auto-liquidated as entered by Ford. Customs' reliquidations of these Entries adversely to Ford were null and void because the reliquidations occurred beyond the four year maximum time for Customs to take action on any Entry, as prescribed by 19 U.S.C. § 1504. Second, all of Ford's Entries were deemed liquidated by operation of law because Customs did not have valid reasons for extending the liquidation of the Entries. The Administrative Record establishes that Customs had all of the information it needed to appraise and liquidate Ford's Reconciliation Entries before the time for the first liquidation extension arose. Moreover, Customs delay in addressing the Entries was unreasonable, as was the manner in which Customs conducted the Internal Advice process. Third, all of Ford's Reconciliation Entries at issue in this case were deemed liquidated by

operation of law because the notices of extension of liquidation, assuming that such notices were ever issued, which Ford denies, were fatally defective in that they did not state the specific reasons for the extensions, as required by both 19 U.S.C. § 1504 and 19 C.F.R. § 159.12.

## III.   ARGUMENT

### A.   FORD'S CLAIMS 1-4 AND 6 FOR ENTRIES B, C, AND D ARE NOT TIME BARRED

In their original Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. # 27) and then again on appeal, Defendants raised (and both parties briefed) the argument that the Courts lacked subject matter jurisdiction because Ford's Claims 1-4 and 6 for Entries B, C, and D were time barred by 28 U.S.C. § 2636(i).  Now, in an attempt to get a third bite at the apple, Defendants again raise the limitations argument.

The limitations issue was necessarily decided by implication when the Federal Circuit held that it and this Court had subject matter jurisdiction over all of Ford's Entries at issue in this case.  *Ford*, 688 F.3d at 1328.  *See also Steel Co. v Citizens for a Better Env't*, 523 U.S. 83, 94 (1997) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.") (citations omitted.).

Under the doctrine of law of the case, which was "created to ensure judicial efficiency and to prevent the possibility of endless litigation," *see Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed. Cir. 1983), "issues that were actually decided, either explicitly or by necessary implication" are not to be revisited in subsequent litigation.  *Toro Co. v. White Consol. Indus., Inc.,* 383 F.3d 1326, 1335 (Fed. Cir. 2004).  Subject matter jurisdiction is a threshold issue, the absence of which deprives the courts of any authority or power to act.  As

Defendants have acknowledged, the limitations issue was briefed by both parties.  Since the

Federal Circuit found subject matter jurisdiction over all of Ford's Entries at issue in this case,

Defendants' limitations argument was rejected by "necessary implication."  *See Alpha/Omega*

*Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) ("In other words,

even when issues have not been expressly addressed in a prior decision, if those matters were

'fully briefed to the appellate court and … necessary predicates to the [court's] ability to address

the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly

or implicitly, and their disposition is law of the case.'") (quoting *In re Felt*, 225 F.3d 220, 225

(5th Cir. 2001).

In addition, ample legal authority expressly supports the Court's subject matter

jurisdiction over Entries B, C and D.  Under 28 U.S.C. § 2636(i):

> A civil action of which the Court of International Trade has
> jurisdiction under section 1581 . . . , other than an action specified
> under subsections (a)-(h)  . . . , is barred unless commenced in
> accordance with the rules of the court within two years after the
> cause of action first accrues.

*See also L.G. Elecs. U.S.A., Inc. v. United States*, 991 F. Supp. 668, 672 (Ct. Int'l Trade 1997).

Customs argues that the date of accrual for each of Ford's Entries is the date on which the

alleged deemed liquidation occurred and Ford became eligible for a refund.  Mot. to Dismiss at 6

(Dkt. # 27); Mot. to Dismiss (Dkt. # 60).  "A cause of action accrues when 'all events' necessary

to state the claim, or fix the alleged liability of the Government, have occurred."  *Mitsubishi*

*Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994) (citing *United States v.*

*Commodities Exp. Co.,* 972 F.2d 1266, 1270 (Fed. Cir. 1992)).  In plain terms, a claim accrues

when "the aggrieved party reasonably should have known about the existence of the claim."  *See*

*Sandvik Steel Co. v. U.S.*, 957 F. Supp. 276, 280 (Ct. Int'l Trade 2007) (quoting *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Circ. 1992)).

Here, Ford's claim did not accrue until Ford received notice that Customs did not intend to treat the Entries as being liquidated by operation of law. Ford's first indication that this might be the case occurred in February 2009, when Ford discovered that the Entries at issue were not deemed liquidated. Ford filed its complaint in this Court in April 2009 requesting declaratory judgment that the Entries were deemed liquidated under 19 U.S.C. § 1504. Because Ford filed its complaint a mere two months after it discovered that the Entries were not deemed liquidated, this action fell well within the two year statute of limitations mandated by § 2636(i).[6]

## B. PRUDENTIAL CONSIDERATIONS MANDATE RETENTION OF THIS ACTION

The Federal Circuit has decided that this Court indisputably has jurisdiction under § 1581(i) to adjudicate Ford's claims. *Ford*, 688 F.3d at 1327. In its decision, the court noted that the unique characteristics of a case in which an importer seeks a declaratory judgment that a deemed liquidation has occurred, such as this case, mandate the rejection of the exhaustion argument advanced by Customs. *See id*. The court found additional support in the intent of § 1581:

> [§ 1581] enumerates that the Court of International Trade may adjudicate disputes stemming from denials of protests once the importer has exhausted its administrative protest options. 28 U.S.C. § 1581(a); *see also United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365, 118 S. Ct. 1290, 140 L.Ed.2d 453 (1998) . . . . Subsection (a) does not reach the circumstance of this case, where the importer alleges that CBP failed to enter either an approval or a

---

[6] Defendants cite *C.B. Imports* case to support their position that an importer's cause of action accrues for purposes of § 1581(i) on the date the importer becomes eligible for a refund. *C.B. Imports Transamerica Corp. v. United States*, 807 F. Supp. 2d 1350, 1353 (Ct. Int'l Trade 2011). However, Defendants appear to have misinterpreted the holding of that case, in which the Court specifically decided that the two-year limitations period started to run when notice of Customs' revocation of antidumping duty order was published in the Federal Register. *Id*. Because that case involved facts where the importer was put on notice of its eligibility for a refund by an affirmative act of Customs, the case is inapposite.

> denial within the prescribed time.  For § 1514's protest provisions
> to be invoked, "Customs must engage in some sort of decision-
> making process[.]"  *Xerox Corp. v. United States*, 423 F.3d 1356,
> 1363 (Fed. Cir. 2005).  Where, as here, there has been an
> allegation that CBP unlawfully failed to make any such decision,
> we cannot see how an administrative appeal could have been
> initiated pre-filing, and we decline to hold that subsection (a)
> permits the importer to be forced back into the administrative
> process post-complaint.

*Id.*  In addition, this Court has previously held that Ford is entitled to bring a declaratory judgment action against Customs to confirm that a deemed liquidation has taken place.  *See Ford Motor Co. v. United States*, ___ CIT ___, 806 F. Supp. 2d 1328, 1335 (Ct. Int'l Trade 2011). ("As long as Customs has yet to affirmatively liquidate, the importer can bring action under 28 U.S.C. § 1581(i) to obtain 'a declaratory judgment from the CIT confirming that there was a deemed liquidation.'") (quoting *Fujitsu Gen. Am., Inc. v. United States*, 24 CIT 733, 739, 110 F. Supp. 2d 1061, 1068-69 (2000)).  The Court also noted that requiring Ford to wait for affirmative liquidations or enforcement actions could extend the "unwarranted liability" Congress sought to eliminate when it amended 19 U.S.C. § 1504 in 2004.  806 F. Supp. 2d at 1336.  In so noting, this Court discussed *Cherry Hill*, in which the Federal Circuit specifically stated that if the importer could not avail himself or herself of the ability to defend against liability on the ground of a deemed liquidation without first having to protest a purported liquidation by Customs, then "[t]here would be nothing, in theory, that would prevent Customs from conducting multiple successive liquidations of the same entry and requiring the importer or surety to assume the burdens of protesting each one."  *Id.* (quoting *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1560 (Fed. Cir. 1997)).

Defendants' position that Ford must wait for Customs to affirmatively liquidate the underlying Entries that purportedly remain open, challenge the liquidations in an administrative

protest, and not be afforded judicial review unless and until the protest is denied, has been previously rejected by both the Federal Circuit and this Court. Defendants' claims that § 1581(a) is a "perfectly adequate forum" with "distinct advantage" that would prevent piecemeal litigation have already been rejected by courts exploring the issue of deemed liquidation because they fail to address the fact that if Customs unreasonably delays liquidation, or acts improperly to stop a deemed liquidation from occurring, an importer would never be able to timely seek judicial review.

### C.   THE COURT SHOULD DENY DEFENDANTS' MOTION FOR JUDGMENT

#### 1.   The Administrative Record Contains No Evidence That Ford's Entries Were Validly Extended, or That Ford Received Notices of Extension

As noted above and contrary to the Defendants' allegations, Ford did not receive any notices of extension regarding the Entries. Under 19 U.S.C. § 1504(b), the Secretary of the Treasury may extend the period in which to liquidate any entry if:

> (1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to the Customs Service; . . .

> The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be . . . Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe . . .

The statutory language is confirmed in applicable Customs regulations, which state that the port director may extend the one year statutory period for liquidation for an additional period not to exceed one year if "[i]information needed by CBP for the proper appraisement or classification of the merchandise is not available". 19 C.F.R. § 159.12(a)(1). In addition, if the

port director extends the time for liquidation, he or she must "notify the importer or the consignee and his agent and surety . . . that the time has been extended and the reasons for doing so." § 159.12(b).

Although Customs officials are entitled to a presumption of regularity with regard to the discharge of their official duties, these presumptions are rebuttable by proof of non-receipt, non-issuance, or non-delivery of the notice. *See Frontier Ins. Co. v. United States*, 155 F. Supp. 2d 779, 789 (Ct. Int'l Trade 2001) (stating that while the issue of whether the extension notices were properly addressed goes to the presumptions of regularity and delivery, the issue of whether the notices were actually received by the plaintiff goes to the question of whether the presumptions were rebutted); *see The Hanover Ins. Co. v. United States*, 2001 WL 521842, at *9 (Ct. Int'l Trade 2001); *Intra-Mar Shipping Corp. v. United States*, 66 Cust. Ct. 3, 5-6, C.D. 4160 (1971).

In *Hanover Insurance*, this Court held that the plaintiff's affidavits from the Hanover employees and broker responsible for handling suspension notices from Customs rebutted the presumption that notice was in fact given. *Hanover Ins. Co.*, 2001 WL 521842, at *9-10. It has additionally been held that an affidavit from a plaintiff importer's record keeper stating that an extension notice had not been received was sufficient to rebut the presumption that notice was in fact given. *See, e.g., Enron Oil & Transp. Co. v. United States*, 15 CIT 511 (1991), *vacated and remanded on other grounds*, 988 F.2d 130 (Fed. Cir. 1993); *Int'l Cargo & Sur. Ins. Co. v. United States*, 15 CIT 541, 544, F. Supp. 174, 177 (Ct. Int'l Trade 1991) ("The presumption is not conclusive, and may be rebutted by a declaration or other evidence indicating that notice was not received").

As the attached Declaration of Paul Vandevert makes clear, Ford did not receive any notices of extension regarding the Entries. In mid-2006, Mr. Vandevert became concerned about

the status of Ford's Reconciliation Entries and consequently contacted Ford's third-party Customs services provider, JPMorgan Chase Vastera ("Vastera").  *See* Declaration of Paul Vandevert, ¶ 26 ("Vandevert Decl.") (attached hereto as an Exhibit).  Mr. Vandevert's contact at Vastera at that time, Ms. Dawn Assaf, informed Mr. Vandevert that despite having a systematic process for logging and tracking extension notices when received, and having received notices of extension of liquidation for other Ford entries, Vastera had not received any notices of extension for the Entries at issue here.  *Id.* at ¶¶ 27-28, 33.  Although Mr. Vandevert regularly requested and received updates from Vastera regarding the status of Ford's Entries from 2006 to 2010, such updates were based on partial and incomplete information obtained from the "the ABI, the ACE Portal, NLS, and/or the FOIA report, but not from any notices of extension, because no notices had been received."  *Id.* at ¶¶ 30-32.

Further, nothing in the Administrative Record indicates the reason(s) why the purported extensions were requested or granted as required by § 159.12(b).  For example, in a November 17, 2008 letter to Mr. Gregory Riley, JP Morgan Global Trade Services ("JP Morgan") Staff Trade Analyst Ms. Deana Marotta revealed that the <u>reasons</u> for the various purported extensions for Ford Reconciliation Entries were <u>unknown</u>, and that she specifically requested that Customs advise her "on the cause of the extensions and when these may be liquidated."  (AR 1126) (emphasis added).  In addition, a JP Morgan Report ("Report") not only illustrates that no reasons were given for any of the requested extensions, but also that there is no Entry which lists even two (out of three) dates of the purported extensions.  (AR 129).  Because the information in the Report is incomplete, it further demonstrates that Customs neither gave Ford or JP Morgan the necessary proper notices or the reasons for such notices as they relate to the extensions of the

liquidations of the relevant Entries. Ford has therefore rebutted the presumption that Customs extended liquidation of the Entries and that Customs properly issued the notices.

> ### 2. Customs' Failure to Provide Reasons for the Extensions Was Prejudicial to Ford, and Ford Was Not Aware That Customs Had Requested Internal Advice to Address the Entries

Defendants' argument that even if Ford was able to demonstrate that the notices lacked a valid basis for the extension, the defect would not vitiate the extension because Ford cannot illustrate prejudice is without merit. "Prejudice" means "injury to an interest that the statute, regulation, or rule in question was designed to protect." *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996). 19 U.S.C. § 1504(b) and 19 C.F.R. § 159.12(b) were designed to ensure that proper notice is given to an importer regarding the time and reason for any extensions or suspensions, and that such notice brings finality to the duty assessment process that was not available under previous laws. *See* S. Rep. No. 95-778, at 31-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2242-43 ("Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due"); *Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. On Trade of the House Comm. On Ways and Means*, 95th Cong., 1st Sess. 56 (1977) (noting that Robert E. Chasen, Commissioner of Customs, stated that the provision which became § 1504 was designed to "eliminate unanticipated requests for additional duties coming years after the original entry"). Because no proper notice or reason for the purported extensions or liquidations has been given to Ford, as noted above, Ford has experienced the unanticipated requests, *see* Vandevert Decl. ¶¶ 6, 10, 22, and financial loss as well as unexpected delays that § 1504 was designed to prevent, and has thus been "prejudiced" in accordance with the definition of such term.

Further, the Administrative Record demonstrates that, until June 25, 2009, Ford was not aware that any of its Reconciliation Entries were the subject of an Internal Advice Request. To the contrary, Mr. Vandevert was specifically advised that he would be notified *before* Customs made the Internal Advice referral to Headquarters. (AR 332, n.1). Although Mr. Polashock's handwritten notes from October 12, 2005 indicate that he informed Mr. Vandevert about the "issue possibly going for I.A. at H.Q.," such an indication was not the definite notification that Mr. Vandevert was previously promised in the case that the request for Internal Advice was actually submitted to Headquarters. (AR 161). In fact, in a December 13, 2005 letter to Customs regarding Entry C, Mr. Vandevert indicated that he was only aware that Customs was "considering seeking Internal Advice;" Mr. Vandevert's consequent explanation that the "result will be the same regardless of whether Customs uses Transaction Value, Deductive Value or Modified Transaction" and his assertion that "there seems little reason to seek internal advice" illustrate that Mr. Vandevert did not have a reason to believe that Customs had already decided or that it would decide to seek Internal Advice. (AR 166). Thus, it is not surprising that handwritten notes made by Customs Officer Gregory Riley on July 10, 2009 maintain that Mr. Vandevert "stated the Internal Advice 'blindsided' him and he thought some other [automobile companies] would be getting this Advice." (AR 314) (emphasis added).

Ford's lack of knowledge regarding Customs' plans to seek Internal Advice is further supported by Mr. Vandevert's July 15, 2009 letter to Officer Riley. In this letter, Mr. Vandevert stated that the Requests for Information issued in June and July 2009 were the "very first time" that Ford was advised that Customs had determined that the Entries could not be appraised under Transaction Value and that Customs needed additional information to determine whether

Deductive Value was the appropriate appraisement method.  (AR 331).  According to Mr. Vandevert,

> The central and insurmountable problem with the ruling and the CF 28's is that Ford neither requested Internal Advice for any of these reconciliation entries nor was ever advised or given notice that Internal Advice had been requested by the Port with respect to these entries until you sent us a copy of the finished ruling, mid-afternoon on Friday, June 25 . . . Customs never notified or advised Ford that it was working on Internal Advice for any of these reconciliation entries.  Customs never gave Ford the mandatory opportunity to submit any, much less "further detailed information" to support appraisement under Transaction Value.

(AR 332).  The fact that Customs never afforded Ford the opportunity to justify appraisement under the Transaction Value invalidates both the ruling and the CF 28s.  *See* 19 C.F.R. § 152.103(m).

In addition to failing to give Ford a chance to support valuation under the Transaction Value, Customs, as argued above, "made no contact with Ford regarding any question about these entries until October 2008", illustrating with such a three year lapse of time that "Customs had no need for any further information to correctly appraise and liquidate" all of the relevant Entries under Transaction Value.  (AR 332).

Customs had all of the information it needed to properly liquidate the Entries in question at the time the Request for Advice was submitted to Headquarters.  The request for Internal Advice concludes:

>  After this review, it is the position of this office that the subject merchandise should be appraised based on a modified transaction value under section 402(f) of the TAA.   Accordingly, the importer's transfer pricing methodology, which allows the tentative price to be adjusted upwards or downwards, appears to be a reasonable means of determining the value of the automobiles.  As such, this office believes the $1,239,333.86 refund of duties and fees is acceptable.

(AR 160). Two weeks later, the National Commodity Specialist Division concurred with the Port's position, stating:

> We have reviewed an Internal Advice request from the Area Director Newark/New York. ... We are forwarding this issue to your office since it involves entry procedures and value issues. We agree with the Area Director's opinion that the value adjustments are warranted.

(AR 258) Even the ruling appeared to acknowledge that Customs had all of the information needed to appraise Ford's entries:

> . . . it is the **Port's** position that at the time of the importation, the price of the merchandise was not fixed and that the subject merchandise should be appraised on the basis of a modified transaction value . . .

(AR 297) (emphasis added). It is thus clear that the Port had the requisite information to liquidate the Entries at the time that the Request was made, and that the Port was ready and able to liquidate such Entries. Based on the foregoing, Customs should have liquidated the Entries at issue prior to the submittal of the Request for Internal Advice to Headquarters.

### 3. Customs' Argument Regarding Ford's Fifth Claim Is Inconsistent with the Legal Prohibition of Untimely Liquidations

Customs alleges that the reliquidations of Entries B and C were timely because they occurred prior to the four year anniversary of the filing of the Entries and under Customs' authority, pursuant to 19 U.S.C. § 1501, to reliquidate an entry 90 days from the date of the notice of the original liquidation. This argument runs counter to the express language and purpose of the deemed liquidation statute, 19 U.S.C. § 1504, as well as relevant Customs regulations contained in 19 C.F.R. § 173.3.

According to 19 C.F.R. § 173.3(a), the regulatory scheme that is applicable to § 1501,

> Within 90 days from the date notice of deemed liquidation or notice of the original liquidation is given to the importer,

> consignee, or agent, the port director may reliquidate on his own
> initiative a liquidation or a reliquidation to correct errors in
> appraisement, classification, or any other element entering into the
> liquidation or reliquidation, including errors based on
> misconstruction of applicable law.

19 C.F.R. § 173.3. Thus, although Customs is free to liquidate or reliqudate an entry pursuant to

§ 1501, such a liquidation or reliquidation must be "to enable Customs officers to correct errors

in the appraisement, classification, liquidation or reliquidation of the merchandise within the

specified time period." *See* HQ 224629 (Aug. 17, 1993); *see also* HQ 544736 (Aug. 26, 1992);

HQ 223835 (July 24, 1992). Here, the Administrative Record contains no evidence that

Customs' reliquidation of Ford's Entries was to correct any errors specified in § 1501.

In addition, in *International Cargo*, the Court specifically noted that § 1504 was enacted

to "increase certainty in the customs process for importers, surety companies, and other third

parties with a potential liability relating to a customs transaction." *Int'l Cargo & Surety Ins. Co.*,

15 CIT at 543-44 (quoting S. Rep. No. 95-778, 95th Cong., 2d Sess. at 32, *reprinted in*, 1978

U.S. Code Cong. and Adm. News at 2243). The statute was also "enacted to accommodate

requests from trade partners that the government establish a time limit within which a liquidation

must occur." *Id.* As noted above, the deemed liquidation provision of the statute was drafted "to

bring finality to the duty assessment process" and to "eliminate unanticipated requests for

additional duties coming years after the original entry." *Cherry Hill Textiles, Inc.*, 112 F.3d at

1559 (quoting statement of Robert E. Chasen, Commissioner of Customs, at the Hearings on

H.R. 8149 and H.R. 8222 before the Subcommittee on Trade of the House Committee of Ways

and Means). § 1504 was therefore intended to "place a limit on the period within which

importers and sureties would be subject to the prospect of liability for a customs entry." *Cherry*

*Hill Textiles*, 112 F.3d at 1559; *see St. Paul Fire & Marine Ins. Co.*, 6 F.3d at 767; *Ambassador*

*Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984); *Pagoda Training*

*Co. v. United States*, 617 F. Supp. 96, 99 (Ct. Int'l Trade 1995), *aff'd*, 804 F.2d 665 (Fed. Cir. 1986).

The last sentence of § 1504(b) states:

> Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a) of this section.

19 U.S.C. § 1504(b). Ford contends that since Congress "enacted [§ 1504] to accommodate requests from trade partners that the [United States] establish a time limit within which a liquidation must occur," 1504(b) should be read to impose an absolute time limit of four years from the date of entry for Customs to take any action on entry, be it liquidation or reliquidation. In other words, Customs' reliquidation authority under § 1501 should not be interpreted to trump the absolute four limit on liquidation of entries imposed by § 1504.

Customs' interpretation of § 1501 would allow it to not only reliquidate an entry for 90 days prior to the expiration of the four year anniversary of the filing of the entry, but also to reliquidate the entry again, for another 90 days, and after that, another 90 days, and so on. However, such potentially perpetual reliquidations would do anything but increase certainty in the customs process and establish a predictable time limit within which the liquidations must occur. Therefore, the Court should act to ensure that such arbitrary reliquidations, which are direct contradictions of the intent of § 1504, do not occur.

**4.  Customs' Argument Regarding Ford's Sixth Claim Contradicts Case Law and the Facts of the Case**

In response to Ford's sixth claim, Customs alleges that because auto-liquidations by ACS are treated as decisions by Customs, when ACS auto-liquidates an entry, such as Entry D, Customs' obligation to fix the final appraisement and the final amount of duty to be paid as

required under 19 U.S.C. § 1500(a) and (c) are fulfilled.  Defs.' Mot. to Dismiss (Dkt. # 66).

However, this claim is without merit under both utilized case law and the facts of this case.

While auto-liquidations by ACS are treated as decisions by Customs for purposes of

protest under § 1514, this does not discharge Customs' obligation under § 1500(a) and (c) to fix

the final appraisement of merchandise and the final amount of duty to be paid on such

merchandise.  *See* 19 U.S.C. § 1500(a) and (c); *L.G. Elecs. U.S.A., Inc.*, 21 CIT at 1427, 991 F.

Supp. at 674-75.  The particular case that Customs utilizes to support its position is *L.G. Elecs.*

*USA* in which, under the "Automatic Liquidations" section of the opinion, this Court specifically

noted that "Customs is also required to make an individual decision for each entry."  *Id.* (citing

*Micropoint, Inc. v. United States*, 77 Cust. Ct. 135, 426 F. Supp. 569, 570 (Cust. Ct. 1976)).  The

Court then went on to state that the triggering of a notice without any individualized decision of

any Customs officer to act on the Entries did not effect a liquidation under the relevant statute in

effect at the time.  *Id.*  Thus, Customs' reliance on *L.G. Elecs. USA* is misplaced, and does not

prove that auto-liquidations are sufficient to fulfill the requirements elucidated by § 1500(a) and

(c).

The Notice of Action for Entry D additionally suggests that Customs did not fix the final

appraisement or final amount of duty as required by 19 U.S.C. § 1500(a) and (c).  Even if it is the

case that Customs' automatic liquidation constituted decision-making, this does not inherently

mean that Customs made a decision regarding the appraisement of the merchandise.  In fact, the

Notice of Action states the following:

> On June 25, 2009, Customs & Border Protection sent you a request
> for information with regards to your reconciliation entry #300-
> 99459353 [Entry D].  Since **we did not receive the requested**
> **documents in order to properly appraise the value of your**
> **merchandise**, we have no recourse but to deny your claim.  This

> notice is to inform you that your reconciliation entry has been re-
> liquidated with no refunds.

(emphasis added).  Thus, the language in the Notice of Action for Entry D suggests that Customs did not appraise the value of the merchandise in Entry D because Customs did not receive the documents that it previously requested.  Customs cannot take the position that it fixed the final appraisement and duty of the merchandise when it specifically stated that it denied Ford's claim because it did not have the information necessary to engage in such an appraisement.

### 5. Ford's Seventh Claim Is Ripe

In response to Ford's seventh claim, Customs alleges that because it has now liquidated all of the Entries at issue here, and the agency does not intend to take any further action on such Entries unless directed by the Court, Ford's request for declaratory relief is unnecessary.  However, Defendants' position is without any legal merit.

Once Ford filed its lawsuit, and subject matter jurisdiction appropriately vested in this Court, Customs had no authority to liquidate the Entries, all of which were unliquidated at the time Ford brought suit.  Ford's position is grounded in sound legal authority.  *See F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (Fed. Cir. 1983) (noting the long-standing rule that "jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties"); *Washington Int'l Ins. Co. v. United States*, 138 F. Supp. 2d 1314, 1325 (Ct. Int'l Trade 2001) (stating that the rule "precludes subsequent agency action from divesting [a] court of jurisdiction, once jurisdiction is established).  *Mukand Int'l Ltd. v. United States*, 412 F. Supp. 2d 1312, 1318 (Ct. Int'l Trade 2005) (stating that the plaintiff should have filed a 1581(i) action in the CIT "as soon as it received notice of the potential liquidation of its entries and obtained injunctive relief against liquidation before Customs liquidated its entries"), *aff'd*, 502 F.3d 1366 (Fed. Cir. 2007).  Thus,

any and all actions taken or contemplated to be taken by Customs after the filing of this action were a "nullity". *Washington Int'l Ins. Co.*, 138 F. Supp. 2d at 1326. To hold any differently would "require this Court to construe [the law] in a manner that contradicts recognized legal principles . . . [which] would be tantamount to granting Customs the authority to hinder, delay, and frustrate judicial review through arbitrary post-summons actions." *Id.* at 1325-1326.

**D. JUDGMENT ON THE AGENCY RECORD SHOULD BE GRANTED IN FORD'S FAVOR**

Based on the preceding discussion of the state of the Administrative Record in this matter, and for the additional reasons set forth below, Ford is entitled to judgment on the record as follows:

**1. <u>The Standard of Review</u>**

The Federal Circuit has decided that this Court indisputably has jurisdiction under § 1581(i) to adjudicate Ford's claims. *Ford,* 688 F.3d at 1327. In actions commenced under § 1581(i), this Court must review the matter as provided under 5 U.S.C. § 706. 28 U.S.C. § 2640(e). Section 2640(a) specifically gives the Court the authority to make determinations. In addition, 5 U.S.C. § 706 provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1)     compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2)     hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>> (A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (B)     contrary to constitutional right, power, privilege, or immunity;

    (C)      in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D)      without observance of procedure required by law;

    (E)      unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F)      unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or whose parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706. *Accord Ammex, Inc. v. United States*, 24 CIT 851, 853, 116 F. Supp. 2d 1269, 1272 (2000). The plain language of § 706 therefore provides the Court with the authority to decide all relevant questions of law in this matter, interpret the statutory provisions at issue in this matter, and determine the "meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

### 2.     Entries B, C, D and F Liquidated By Operation of Law Because Customs' Reliquidation of These Entries Was Improper

Customs' reliquidations of Entries B, C, D and F adversely to Ford were null and void because such reliquidations occurred past the four year maximum allowed for Customs to take any action on any Entry, in accordance with 19 U.S.C. § 1504. Therefore, Ford's Entries B, C, D and F were liquidated by operation of law at the rate of duty, value, and amount of duties claimed by Ford.

### a. Customs' Auto-Liquidation and Reliquidation of These Entries Was Improper

As noted above, Customs' reliquidation of Entries B, C, D and F is directly counter to the express language found in 19 C.F.R. § 173.3, the regulatory language that is applicable to 19 U.S.C. § 1501. According to § 173.3(a) and supporting Customs rulings, Customs may only

reliquidate an entry in order to "correct errors in appraisement, classification, or any other element entering into the liquidation or reliquidation, including errors based on misconstruction of applicable law." 19 C.F.R. § 173.3; HQ 224629 (Aug. 17, 1993). Therefore, Customs must have a reason related to some element relevant to an entry's liquidation or reliquidation in order to reliquidate such an entry under § 1501. As Customs did not provide Ford with any reasons for reliquidating the Entries in question, nor are any reasons for these reliquidations apparent in the Administrative Record, these Entries liquidated by operation of law.

Case law has additionally established that reliquidations should be granted for "meaningful and particularized" reasons and only for a reasonable period of time relative to the situation. *See Int'l Cargo & Sur. Ins. Co.*, 15 CIT at 546, 779 F. Supp. at 179, n.9 (supporting Customs' extensions of liquidations because Customs engaged in "meaningful particularized decision-making combined with proper notice"). Here, with the possible exception of Entry B, the Administrative Record shows no reason at all for Customs' reliquidation, other than to reverse the effect of an "auto" liquidation as originally entered by Ford. All of the "auto" liquidations occurred after the Port of Newark had received the June 22, 2009 Internal Advice ruling. The Administrative Record shows nothing that happened in between the "auto" liquidation and reliquidation dates. In other words, there is no evidence or support for Customs changing its "decision" to liquidate these Entries as entered by Ford to liquidation adverse to Ford, denying Ford's duty refund claims. Therefore, Customs' reliquidations were clearly not "meaningful and particularized" as required; the reliquidations were arbitrary, capricious, and an abuse of Customs' discretion.

### b.  Customs' Reliquidation of These Entries Was Untimely

In addition, Customs' reliquidation of Entries B, C, D and F was improper because the reliquidations occurred beyond the four-year maximum time for liquidation or reliquidation allowed by 19 U.S.C. § 1504(b).  As argued above, in order to fulfill Congress' intent in enacting the deemed liquidation statute, § 1504, must be interpreted as terminating Customs' reliquidation authority under § 1501 without exception, on the fourth anniversary of an entry being filed.

As noted above, case law also illustrates the impropriety of Customs' reliquidation of Entries B, C, D and F under a statute, § 1504, specifically enacted to "increase certainty in the customs process" and "accommodate requests . . . that the government establish a time limit within which a liquidation must occur."  *See Int'l Cargo & Surety Ins. Co.*, 15 CIT at 543-44. The deemed liquidation statute was also drafted to bring finality to the process, eliminate perpetual requests for duties, and place a time limit during which importers could be subject to liability for an entry.  *See Cherry Hill Textiles, Inc.*, 112 F.3d at 1559.  However, Customs' interpretation of § 1504 indicates the opposite, as Customs imparts on itself the ability to not only reliquidate an entry for 90 days prior to the expiration of the four year anniversary of the entry's filing, but also to reliquidate that same entry over and over, in 90 day increments, for so long as Customs believes that it has purportedly valid explanations for doing so (even though Customs also believes that it has no obligation to inform the importer of the reasons for reliquidation).  Such potentially ongoing reliquidations have the ability to run for unpredictable amounts of time and thus in direct contradiction to both the express language and purpose behind § 1504.

**3.** **All of Ford's Reconciliation Entries Were Deemed Liquidated By Operation of Law Because the Manner in Which Customs Conducted the Internal Advice Process and the Time Customs Took to Liquidate the Entries Was Unreasonable**

While Ford maintains its allegations and arguments with respect to Customs' failure to actually extend liquidation of any or all of the subject Entries, issue the required notices of extension, or have valid reasons for extending the time for liquidation, all of Ford's Reconciliation Entries at issue in this case liquidated by operation of law because the Administrative Record clearly shows that Customs took no action to obtain the supposedly needed information for liquidation or to appraise and liquidate the subject Entries for over three years.

Customs initiated an Internal Advice request without giving either notice to Ford or an opportunity to submit facts and arguments regarding whether Transaction Value was the appropriate method of appraisement. As the Declaration of Paul Vandevert illustrates, in November 2005, Import Specialist Chris Polaschock specifically advised Mr. Vandevert that he was not seeking Internal Advice on Ford's Entries, and that if he subsequently decided to do so, he would notify Mr. Vandevert before submitting such a request. *See* Vandevert Decl., ¶ 14. Mr. Vandevert relied on Mr. Polaschock's statement, information he obtained from an industry colleague, and knowledge that Customs liquidated as entered entries of another manufacturer which were similar to those of Ford to conclude that Ford would not be subject of an Internal Advice Request. *Id.* at ¶¶ 17-19, 23. In fact, Ford was not notified and Mr. Vandevert was not aware that Customs sought Internal Advice for Ford's Entries until July 2009. *Id.* at ¶ 14.

Customs' conduct in this Internal Advice process was clearly unreasonable. The Administrative Record shows that there was virtually no activity whatsoever by Customs in either working on the Internal Advice request or pursuing the liquidation of Ford's

Reconciliation Entries between February 16, 2006, when the Administrative Record shows that

the Port of Newark made its Request for Internal Advice (AR 158-160), and June 22, 2009, the

date Internal Advice HQ W563467 was issued to the Port (AR 304-311).  The Administrative

Record shows that the only activity in that time period occurred in March 2009, which was still

more than three years after the Internal Advice was requested, when an Import Specialist in the

Port of Newark inquired about the status of the Internal Advice and the withheld liquidations, to

which OR&R responded that the Internal Advice was still pending and to continue to withhold

liquidation of the affected Entries.  (AR 121-125).

In *Ford v. United States*, 286 F.3d 1335, 1343 (Fed. Cir. 2002), the Federal Circuit held

that where Customs cannot explain or justify a period of inactivity and that period extends for a

long time, that Customs' inaction is unreasonable and, therefore, the neglected entries are to be

deemed liquidated by operation of law on the first anniversary after entry.  The court stated:

> We do not hold that, in times of natural or national calamity, repeated extensions
> of liquidation and periods of inactivity could not withstand judicial scrutiny for
> reasonableness. Customs' delay in this case did not occur in such a setting,
> however. Rather, Customs sought to explain its delay in conducting the fraud
> investigation by pointing to typical day-to-day workplace exigencies, such as
> competing responsibilities, an agent taking sick leave, and the various tasks
> associated with starting a new office. Acceptance of these exigencies as excuses
> for Customs' lengthy delay in this case would leave the statutory objective of
> prompt liquidation, and this court's requirement that any liquidation delays be
> reasonable, largely meaningless.  Put another way, were we to hold that Customs
> did not abuse its discretion in issuing the three extensions of liquidation at issue in
> this case, we would be setting an unacceptably low bar for reasonableness.

*Id.* (citations omitted).  The court noted that although "Customs enjoys wide discretion in

liquidating entries, that discretion is not unbridled.  ... [W]e cannot escape the conclusion that

both the manner of conducting the investigation and the length of the investigation were

unreasonable."  *Id*.  Here, Customs has not even offered the excuse of normal daily workload;

instead, the lengthy period of complete inactivity in either responding to the Internal Advice

request or completing the liquidation of the subject Reconciliation Entries was without justification, and therefore was unreasonable.

### 4. All of Ford's Reconciliation Entries Were Deemed Liquidated By Operation Of Law Because Customs Had All Information Necessary to Liquidate the Subject Entries, Making Extensions Improper

Customs may only extend the liquidation of Entries if "the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available…." 19 U.S.C. § 1504(b)(1). Defendants have stated that the purported extensions were valid because Customs needed additional information in order to liquidate Ford's Reconciliation Entries. *See* Defendants' Brief in Support of Motion for Judgment on the Agency Record at 24-25 (Dkt. #66).

In this case, however, the Administrative Record makes clear that Customs had all of the information it needed to liquidate all of Ford's Entries.[7] Moreover, Customs had all of the information it needed by February 16, 2006 and thus before Customs first purported to extend liquidation of any of the Entries. In the Internal Advice request, Customs in the Port of Newark stated:

> After this review, it is the position of this office that the subject merchandise should be appraised based on a modified transaction value under section 402(f) of the TAA. Accordingly, the importer's transfer pricing methodology, which allows the tentative price to be adjusted upwards or downwards, appears to be a reasonable means of determining the value of the automobiles. As such, this office believes the $1,239,333.86 refund of duties and fees is acceptable.

---

[7] To justify the extension of liquidation, Defendants use as evidence two Requests for Information, or CF-28s, issued to Ford in connection with the Entries. However, well before even the first extension of liquidation supposedly occurred, the Administrative Record makes indisputably clear that not only had Ford fully responded to the CF-28s, but that Customs itself acknowledged that it had all of the information it needed to liquidate Ford's Entries. Defendants' statements that Ford's allegations on this issue have "no basis in fact" (Defs' Brief, Dkt. # 66, p. 25) are misleading and irresponsible.

(AR 160). In fact, the Internal Advice request never asked for advice or put a question to Customs Headquarters. (AR 158-160). Two weeks later, the National Commodity Specialist Division, to which the Port had sent the Internal Advice request, concurred with the Port that Ford's Entries could be liquidated as entered by Ford. (AR 258). The response to the Internal Advice request, dated June 22, 2009 (which included an apology for the more than three year delay) shows no reason why Transaction Value could not have been used as the method of appraisement. (AR 306-307). However, the Internal Advice request does not reflect any efforts by Customs to collect the facts necessary to reach such a conclusion. Thus, the Internal Advice ruling is "arbitrary and capricious" in itself, and cannot form the basis of a valid justification for an extension of liquidation.

Where Customs needs additional information to classify or appraise imported merchandise, the statute allows Customs to extend the time for liquidating the affected entries up to a maximum of four years. 19 U.S.C. § 1504(b). However, the Administrative Record filed by Customs in this case makes quite and indisputably clear that Customs did not need any information from any source to liquidate the Entries. Indeed, the Port of Newark stated that it was prepared to liquidate the Entries as entered by Ford under the Modified Transaction Value method and in fact never asked whether that method was appropriate. What the Internal Advice ruling makes clear is that Customs Headquarters did not need additional information for the liquidation of Ford's Entries. Customs Headquarters simply disagreed with the Port and with the National Commodity Specialist Division over the choice of Modified Transaction Value as the method of appraisement.[8] Where, as here, Customs did not need any additional information to classify or appraise Ford's Entries, Customs had no statutory authority to extend the time for liquidation.

---

8 It should be noted that the Port Directors have final authority in liquidating entries.

**5.** **All of Ford's Reconciliation Entries Were Deemed Liquidated by Operation of Law Because the Notices of Extension of Liquidation, If Any Were Issued, Were Likely Defective**

Even if Defendants convince the Court that Customs (a) did in fact extend the liquidation of each of Ford's Reconciliation Entries, (b) issued notices of extension of liquidation for each of the subject Entries, and (c) that Customs had legally valid reasons for extending liquidation, all of which Ford denies, all of Ford's Reconciliation Entries at issue in this case still would be deemed liquidated by operation of law because Customs' notices of extension of liquidation were likely facially defective because they failed to state the specific reasons why Customs was purporting to extend the liquidation for the Entries listed in the notices.

Although Ford concedes that the Administrative Record does not contain any of the notices of extension that Customs purports to have sent to Ford in connection with the Entries, a review of other notices received by Ford (in connection with entries that are not the subject of this action) reveals that even if notices were sent, which is denied, they were likely defective. As set forth in the Declaration of Paul Vandevert, a notice issued by the Port of Newark to Ford in 2010 (with respect to an entry that is not the subject of this action) states only that "[t]he period to liquidate this entry has been extended pursuant to 19 U.S.C. 1504(b)(1)." Vandevert Decl. ¶ 33; Ex. A. Another notice issued to Ford by Customs in Port Heuneme, California (again, with respect to an entry that is not the subject of this action) states only that "[t]he period to liquidate this entry has been extended for a period not to exceed one year, pursuant to 19 USC § 1504(b) and 19 C.F.R. § 159.12(a)(1)." *Id.* These notices are ineffective as a matter of law because they do not include the information required by Customs' own regulations:

> If the port director extends the time for liquidation, as provided in paragraph (a)(1) of this section, he promptly will notify the importer or the consignee and his agent and surety on CBP Form 4333–A, appropriately modified, that the time has been extended <u>and the reasons for doing so</u>.

19 C.F.R. § 159.12(b) (emphasis added).  A mere reference to the statute and/or regulation authorizing extensions of liquidation and prescribing the relatively narrow grounds for such extensions as the "reason" cannot reasonably be construed as a statement providing the reasons for extending liquidation and therefore satisfying the express requirements of Customs' regulations.

In HQ 229670 (Feb. 10, 2003), Customs discussed the broader framework of the impact of the deemed liquidation statute, § 1504, the "intent" of which, Customs acknowledged, "is to relieve importer and their sureties of prolonged uncertainty regarding duty liability" and Customs' responsibility to grant a "valid extension of suspension," the absence of which "results in the entries being deemed liquidated by operation of law."  *Id.*  The ruling also notes that "[t]he relevant regulation, 19 C.F.R. § 159.12(b), provides for notification of an extension to be given to the importer and the importer's surety on a modified CF 4333-A, <u>with a statement of reason for the extension</u>."  *Id.* (emphasis added).  Customs directly stated that a "failure to provide proper notice results in a liquidation by operation of law."  *Id*.

## IV.    <u>CONCLUSION</u>

For these reasons, Plaintiff Ford Motor Company respectfully requests that the Court deny Defendants' motions to dismiss and deny Defendants' motion for judgment on the agency record.  Ford also respectfully requests that the Court grant its motion for judgment on the agency record and such other and further relief as this Court deems to be just, proper and equitable.

Dated: September 3, 2013                       Respectfully submitted,

                                               BAKER & HOSTETLER LLP

By: s/ Matthew W. Caligur
Matthew W. Caligur
e-Mail: mcaligur@bakerlaw.com
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-5009
(713) 751-1600 Telephone
(713) 751-1717 Telecopier

OF COUNSEL:
Paulsen K. Vandevert, Esq.
The Ford Motor Company
One American Road, Ste. 612
Dearborn, MI 48126-2798
Tel.:  (313) 337-5082
e-Mail:  pvandev3@ford.com
**ATTORNEYS FOR PLAINTIFF**

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE MARK A. BARNETT, *JUDGE*

_____
                          :
Ford Motor Company,            :
                          :
           Plaintiff,     :
                          :
          v.            :    Case No.: 09-00151
                          :
United States of America, U.S. Department of  :
Homeland Security, U.S. Customs and Border  :
Protection                         :
          Defendants.     :
_____:

## <u>DECLARATION OF PAULSEN K. VANDEVERT</u>

1. My name is Paulsen K. Vandevert. I am over twenty-one (21) years of age, of sound mind and am fully competent to make this declaration. Based on my personal knowledge, and my review of the business records of Ford Motor Company ("Ford"), I have personal knowledge of the statements contained herein. I make this declaration in support of Ford's Response in Opposition to Defendants' Motion to Dismiss and Motion for Judgment on the Agency Record.

2. I am an International Trade Attorney in the Office of General Counsel at Ford. I have been employed by Ford since late June 2000. My responsibilities include International Trade and Customs issues for Ford globally.

3. I have been practicing law for more than 25 years. My practice has focused primarily on Customs and International Trade Law.

4. Beginning in April 1994, I have worked as in-house counsel on global Customs and International Trade law issues for the automotive industry. I worked as a Customs Attorney for General Motors ("GM") from 1994 until 1998, and as International

Trade Counsel for Delphi Automotive Systems from 1999 until June 2000, at which time I accepted an offer from Ford.

5.     In my work for the automotive industry, I have acquired substantial experience in the area of Customs Valuation, particularly in matters involving the Customs Valuation and Transfer Pricing.  GM, Delphi and Ford are large, multinational companies with global operations.  Substantial numbers of their import transactions throughout the world are related-party transactions, such as sales of vehicles and parts from manufacturing operations to wholly-owned subsidiary distributors in other countries. I have worked on Customs Valuation and Transfer Pricing matters for my employers in South Africa, Norway, China, Canada, Mexico, Brazil, Russia, Japan, the Philippines, among others, as well as the United States.  I have also completed two workshops at the World Customs Organization ("WCO") on Customs Valuation and Transfer Pricing.

6.     In August 2005, Jaguar Cars North America ("JCNA"), which operated as an unincorporated division of Ford in the United States, received a supplemental Request for Information ("CF-28") for an explanation and supporting documentation of JCNA's claim for substantial refunds of excess duties paid, as a result of downward adjustments to the Transfer Prices that JCNA paid its parent company, Jaguar Cars Company ("Jaguar") for imported vehicles and automotive parts.  (AR 227).

7.     From 1979 until 2008, Jaguar was wholly owned by Ford.  JCNA imported vehicles and automotive parts into the United States under Ford's importer of record number with the suffix JC.

8.     I was the primary author of Ford's two responses to the supplemental CF-28, which were submitted to Customs in the Port of Newark, dated November 3, 2005 and December 13, 2005, respectively.  In addition, I met with Import Specialist Chris

Polaschock at Customs' offices in Newark, New Jersey on November 30, 2005 to discuss the supplemental CF-28 and to obtain a better understanding of the information Customs was seeking.  I also provided complete copies of these two submissions to Attorney-Advisor Yulia Gulis in the office of Regulations and Rulings, Valuation Branch, at Customs Headquarters, at her request, in February 2009.

9.  The November 3, 2005 submission, in addition to the cover letter, consisted of a five page letter that provided the requested explanation of the value decrease, plus thirteen (13) attachments, including copies of credit and debit notes exchanged between Jaguar and JCNA, a trial balance sheet for JCNA, and a detailed spreadsheet, prepared by myself, that showed how the value decrease had been derived from the initial Transfer Prices, which were the values declared at the time of entry, to the final Transfer Prices, after required adjustments had been made.

10.  Based on my review of the Administrative Record produced by Customs in this matter, it does not appear that the Administrative Record accurately reflects the submissions I made to Customs in response to the supplemental CF-28.  In particular, the Administrative Record does not contain the entirety of the November 3, 2005 submission.

11.  I obtained the data and explanations for the Transfer Pricing process from colleagues in the Transfer Pricing group of Ford's Office of Tax Counsel, and the details of the specific adjustments and accounts shown in the attachments and spreadsheet from a colleague who was Jaguar and Land Rover's North American Finance Manager, based in the United Kingdom and a colleague who managed JCNA finances and accounts in the U.S.

12. Of particular note, Attachment 4 to the November 3, 2005 CF-28 response was not included in the Administrative Record. Attachment 4 was a spreadsheet that showed by account, the revenue, JCNA costs and expenses, and resulting transfer prices paid by JCNA for imported vehicles and parts. The absence of Attachment 4 from the Administrative Record suggests that Customs did not consider it in making its decision to deny Ford the duty refunds claimed in the Reconciliation Entries at issue in this case.

13. The December 13, 2005 submission was a follow-up to the November 30, 2005 meeting I had with Mr. Polaschock, which was also attended by Mr. Tim Upton, who was then Customs Manager for the Premier Automotive Group, an organizational grouping of the North American operations of JCNA, Land Rover, Volvo and Aston-Martin, all of which were owned by Ford at that time.

14. As the Administrative Record demonstrates, particularly my correspondence with Mr. Polaschock, although Mr. Polaschock did mention in our meeting that Customs was considering seeking Internal Advice on downward adjustments to Customs value caused by Transfer Pricing adjustments, he told me specifically that he was not seeking Internal Advice on JCNA's reconciliation entries. He also stated that if he later decided to seek Internal Advice on JCNA's reconciliation entries, he would notify me before he submitted such a request. Ford was never notified that Customs had sought Internal Advice for JCNA (until I received CF-28 Requests for Information, in July 2009.

15. Through conversations I had with colleagues in the automotive industry in the fall of and late 2005 and early 2006, I learned that several other automotive companies that imported vehicles through the Port of Newark had received similar CF-28 Requests for Information from Customs in the Port of Newark. In our November 30, 2005, Mr.

Polaschock told me that that JCNA's responses were "consistent" with the responses received from other importers.

16. There were much speculation among Customs practitioners of the automotive companies over whether Customs would actually seek Internal Advice and if so, what company would be the subject of it.

17. In February 8, 2006 e-mail I received from an industry colleague, I was informed that another automotive importer had received a copy of an Internal Advice request from Customs in Newark for that importer's reconciliation entries. The issue in that Internal Advice request was apparently whether "end of year adjustments" were permissible in reconciling Customs values. In the request, Customs in the Port of Newark apparently expressed the opinion that Transaction Value could not be applied in such circumstances.

18. At that time, it was my belief that JCNA would not be the subject of Internal Advice, because the issue of related party Transfer Pricing adjustments would be addressed in the Internal Advice issued to the other importer.

19. Moreover, based on my impressions from meeting with Mr. Polaschock and speaking with him on the phone in subsequent conversations, and my confidence in the responses we had made to the supplemental CF-28, as well as Customs' prior liquidation as entered of very similar reconciliation entries of another vehicle importing subsidiary of Ford (which I referenced in my letter to Customs of December 13, 2005), I believed that JCNA's facts and circumstances were such that an Internal Advice issued to another manufacturer could not be applied to JCNA.

20. I did understand, however, that although Internal Advice issued to another importer should not apply to JCNA, the pendency of the other importer's Internal Advice might

cause a delay in the processing of JCNA's reconciliation entries and obtaining the claimed duty refunds.

21.   After my last communication to Mr. Polaschock, dated December 13, 2005, I did not have any further communications with Customs regarding JCNA's pending reconciliation entries until I received a telephone call in October 2008 from Ms. Yulia Gulis in the Valuation Branch in the Office of Regulations & Rulings ("OR&R") at Customs Headquarters.  In that call, Ms. Gulis said that she was working on a JCNA "entry," which I understood to be the JCNA reconciliation entry that was the subject of the supplemental CF-28 and which has been identified in this matter as Entry C. Ms. Gulis never mentioned anything about Internal Advice being issued.

22.   In February 2009, I received another phone call from Ms. Gulis.  She stated that she was still working on Entry C.  She requested another copy of the responses I had submitted in response to the supplemental CF-28 in 2005, because, according to her, the copies of the responses in her file appeared to be incomplete.  Ms. Gulis made no mention or reference to Internal Advice being issued to JCNA.

23.   Following that call, I called the industry colleague who had advised me of the Internal Advice request for other automotive importer.  I was told that the Internal Advice had been "withdrawn" and that the duty refunds originally claimed in the reconciliation entries had been received from Customs.

24.   In that same telephone call, I was told that prior to receiving notice of the withdrawn Internal Advice and the duty refund checks, they too had been looking into the liquidation and extension status of the other importer's entries, because so much time had passed, and had been researching whether any of that importer's reconciliation entries might have been deemed liquidated.

25. I believe that the correspondence between the Port of Newark and OR&R in 2009 regarding Internal Advice and instructions to liquidate another importer's entries that appears in the Administrative Record submitted in this matter is consistent with what I was told by my colleagues about the other importer's entries

26. By mid-2006, with no notice of any action by Customs relating to JCNA's Reconciliation Entries, I became concerned about the status of JCNA's reconciliation entries. I contacted Ford's third-party Customs services provider, known at that time as JPMorgan Chase Vastera ("Vastera").

27. I spoke with Ms. Dawn Assaf at Vastera and asked her whether Vastera had received any notices of extension of liquidation for any of the JCNA reconciliation entries, and whether they could check on the liquidation status of the entries. Ms. Assaf told me that Vastera had not received any liquidation extension notices.

28. I also asked Ms. Assaf whether Vastera received notices of extension of liquidation (for other Ford entries) and whether Vastera had a process for logging and tracking these extension notices when received. Ms. Assaf told me that Vastera had indeed received notices of extension of liquidation for other Ford entries, and that Vastera did have a process for logging and tracking such notices when received.

29. I also asked Ms. Assaf whether Vastera had any other means for checking the liquidation status of entries or whether Customs had extended the liquidation of entries. Ms. Assaf responded that Vastera regularly checked the ACE Portal, Customs' National Liquidation System ("NLS"), as well as "the FOIA" report, which Customs issued upon request that purported to show the status of entries made by importers, such as Ford and JCNA.

30. From 2006 through 2010, I regularly requested and received monthly updates from Vastera on the status of the JCNA Reconciliation Entries. These reports showed the

amounts requested as refunds for each entry, and had columns for first, second, and third liquidation extensions, as well as a liquidation date. When Vastera could provide a purported liquidation extension date, I was told this information was obtained from the ABI, the ACE Portal, NLS, and/or the FOIA report, but not from any notices of extension, because no notices had been received.

31. With respect to dates for the purported extensions of liquidation, the reports I received from Vastera were inconsistent. Some entries never showed a liquidation extension date. Others showed purported dates for second or third extensions, but not dates for purported prior extensions. Others showed only one purported extension date.

32. In addition to receiving and reviewing the monthly updates from Vastera regarding the status of the JCNA Reconciliation Entries, I would regularly call my contact at Vastera to ask whether any notices of extension of liquidation for any of the JCNA Reconciliation Entries had been received. Each time I asked this question, the answer was "no." Vastera had received no notices of extension of liquidation for any of the JCNA reconciliation entries.

33. Sometime in 2008, my Vastera contact became Ms. Deanna Marotta. In 2010, at my request, Vastera provided me with several samples of Notices of Extension of Liquidation received from Customs pertaining to other entries, which are not the subject of this action. Copies of those examples are attached to this Declaration as Attachment A. Two of the Notices of Extension were received from Customs in the Port of Newark, which is the same port that handled the Entries at issue in this action.

34. In these four examples, the wording on the face of the notice is exactly the same: "The period to liquidate this entry has been extended pursuant to 19 U.S.C. 1504 (B) (1). No action is required on your part unless specifically requested by Customs." No reason for the extension appears anywhere on the notice. Since Customs has taken

the position that the notices of extension purportedly issues with respect to the Entries at issue in this action were generated in the same manner as other notices of extension issued at or about the same time, in all reasonable probability, it is highly unlikely that the notices purportedly issued to Ford regarding the Entries contained information regarding the reason for the extension.

I declare under penalty of perjury that the foregoing is true and correct, as provided under 28 U.S.C. § 1746.

Paulsen K. Vandevert
World Headquarters, Ste. 338
Ford Motor Company
1 American Road
Dearborn, Michigan 48126
Telephone: (313) 337-5082

Case 1:09-cv-00151-MAB     Document 72-2     Filed 09/03/13     Page 1 of 4

NOTICE OF EXTENSION

COURTESY NOTICE — ENTRIES SCHEDULED TO LIQUIDATE

| REFER INQUIRIES TO: | SERIES | TYPE AND ENTRY NO. | DATE OF ENTRY | LIQUID. CODE | INITIAL AMOUNT | LIQUIDATION AMOUNT |
|---|---|---|---|---|---|---|
| U.S. CUSTOMS SERVICE | | | | | | |

USCBP, AREA DIRECTOR
1100 RAYMOND BLVD

NEWARK    NJ 07102

PROCESSING DATE : 04-10-12

IMPORTER -

GOODS ENTERED AT

42  742-3744-3   07-30-08   FILER CODE 942

21051
NEW YORK, NY

THE PERIOD TO LIQUIDATE THIS ENTRY HAS BEEN EXTENDED
PURSUANT TO 19 U.S.C. 1504 (B)(1).   NO ACTION IS
NECESSARY ON YOUR PART UNLESS SPECIFICALLY REQUESTED
BY CUSTOMS.

FORD MOTOR COMPANY
5111 AUTO CLUB DR
MD 6 679
DEARBORN MI    48126-2749

| IMPORTER NUMBER | DATE OF LIQUIDATION |
|---|---|
| 38-054919000 | |

- INDICATES REFUND TO DIFFERENT ADDRESS
- INDICATES OFFSET OF REFUNDS

DISTRIBUTION:
MAIL

DEPARTMENT OF THE TREASURY
U.S. CUSTOMS SERVICE
Customs Form 4333A (041593)

4393

00

JA230

NOTICE OF EXTENSION

**COURTESY NOTICE** — ENTRIES SCHEDULED TO LIQUIDATE

| REFER INQUIRIES TO: | | SERIES | TYPE AND ENTRY NO. | DATE OF ENTRY | LIQUID CODE | INITIAL AMOUNT | LIQUIDATION AMOUNT |
|---|---|---|---|---|---|---|---|
| U.S. CUSTOMS SERVICE | | | | | | | |

USCRP. AREA DIRECTOR
1100 RAYMOND BLVD

NEWARK    N.J. 07102

PROCESSING DATE : 04-10-10

IMPORTER -

GOODS ENTERED AT:

44 2402760-9   07-30-09   FILER CODE-943

21001
NEW YORK, NY

THE PERIOD TO LIQUIDATE THIS ENTRY HAS BEEN EXTENDED
PURSUANT TO 19 U.S.C. 1504 (B) (1).   NO ACTION IS
NECESSARY ON YOUR PART UNLESS SPECIFICALLY REQUESTED
BY CUSTOMS.

FORD MOTOR COMPANY
5111 AUTO CLUB DR
MD # 670
DEARBORN MI   48126-2749

| IMPORTER NUMBER | DATE OF LIQUIDATION |
|---|---|
| 38-054919000 | |

4399

JA231

03

+ INDICATES REFUND TO DIFFERENT ADDRESS
• INDICATES OFFSET OF REFUNDS
DISTRIBUTION:
MAIL

DEPARTMENT OF THE TREASURY
U.S. CUSTOMS SERVICE
Customs Form 4333A (041593)



NOTICE OF EXTENSION

COURTESY NOTICE

| SERIES | TYPE AND ENTRY NO. | DATE OF ENTRY | LIQUID CODE | INITIAL AMOUNT | LIQUIDATION AMOUNT |
|---|---|---|---|---|---|
| 01 | 469⁹218-3 | 03-23-10 | | | |

REFER INQUIRIES TO:
U.S. CUSTOMS SERVICE
PORT DIRECTOR
P. MCNAMARA BLDG RM 200
477 MICHIGAN AVE
DETROIT    MI 48226

GOODS ENTERED AT:
33801
DETROIT, MI

PROCESSING DATE : 04-03-10

THE PERIOD TO LIQUIDATE THIS ENTRY HAS BEEN EXTENDED
PURSUANT TO 19 U.S.C. 1504 (B) (1).    NO ACTION IS
NECESSARY ON YOUR PART UNLESS SPECIFICALLY REQUESTED
BY CUSTOMS.

FORD MOTOR COMPANY
5111 AUTO CLUB DR
MD # 670
DEARBORN MI 48126-2749

IMPORTER NUMBER: 38-054919000

DISTRIBUTION:
MAIL

DEPARTMENT OF THE TREASURY
U.S. CUSTOMS SERVICE
Customs Form 4333A (041593)

JA232

Case 1:09-cv-00151-MAB    Document 72-2    Filed 09/03/13    Page 4 of 4

NOTICE OF EXTENSION

**COURTESY NOTICE** XXXXXXXXXXX XXXXXXXX ENTRIES SCHEDULED TO LIQUIDATE XXXXXXX XXX

REFER INQUIRIES TO:

U.S. CUSTOMS SERVICE
PORT DIRECTOR
PO BOX 3130

LAREDO    TX 78044-3130

| SERIES | TYPE AND ENTRY NO. | DATE OF ENTRY | LIQUID CODE | INITIAL AMOUNT | LIQUIDATION AMOUNT |
|--------|--------------------|---------------|-------------|----------------|--------------------|
| | | PROCESSING DATE : 04-03-10 | | | |
| | | IMPORTER - | | | |
| 01 | 0194468-3 | 10-21-09 | | FILER CODE KR6 | |

GOODS ENTERED AT:

62304
LAREDO, TX.

THE PERIOD TO LIQUIDATE THIS ENTRY HAS BEEN EXTENDED
PURSUANT TO 19 U.S.C. 1504 (B) (1). NO ACTION IS
NECESSARY ON YOUR PART UNLESS SPECIFICALLY REQUESTED
BY CUSTOMS.

FORD MOTOR COMPANY
C111 AUTO CLUB DR
MD 9 570
DEARBORN MI   48126-2749

| IMPORTER NUMBER | DATE OF LIQUIDATION |
|-----------------|---------------------|
| 38-264919000 | |

4096

· INDICATES REFUND TO DIFFERENT ADDRESS
· INDICATES OFFSET OF REFUNDS
DISTRIBUTION:
MATL

DEPARTMENT OF THE TREASURY
U.S. CUSTOMS SERVICE
Customs Form 4333A (041593)

JA233

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| Ford Motor Company, | : |
| Plaintiff, | : |
| v. | :    Court No.: 09-00151 |
| United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection | : |
| Defendants. | : |

## <u>NOTICE OF APPEAL</u>

Pursuant to 28 U.S.C. § 1295, and Rule 3 of the Federal Rules of Appellate Procedure, and Rule 3 of the Federal Circuit Rules, notice is hereby given that Plaintiff, Ford Motor Company ("Ford"), hereby appeals to the United States Court of Appeals for the Federal Circuit from the Order of the Court entered on June 17, 2014 (Doc. No. 84) granting Defendants' motion to dismiss Plaintiff's Claims 1-4 and 6 for Entries B, C, and D; declining to issue a declaratory judgment over Plaintiff's remaining declaratory judgment clams; and denying as moot the parties' cross-motions for judgment on the agency record, and from the Judgment of the Court entered on June 17, 2014 (Doc. No. 85) dismissing the case.  This appeal is timely taken pursuant to Federal Rule of Appellate Procedure 4(a)(4)(A)(iv).

Dated: August 14, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

s/ Matthew W. Caligur
Matthew W. Caligur
e-Mail: mcaligur@bakerlaw.com
C. Thomas Kruse
e-Mail tkruse@bakerlaw.com

811 Main Street, Suite 1100
Houston, Texas 77002
(713) 751-1600 Telephone
(713) 751-1717 Telecopier

**ATTORNEYS FOR PLAINTIFF
FORD MOTOR COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Matthew W. Caligur
Matthew W. Caligur

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

CASE: 14-1726

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

# SONUGA, TIMOTHY O

| | |
|---|---|
| **From:** | SONUGA, TIMOTHY O |
| **Sent:** | Thursday, March 19, 2009 11:02 AM |
| **To:** | GULIS, YULIYA A |
| **Subject:** | RE: Request for Internal Advice - ████ |

Yuliya,

Sorry, I did find some more; I will continue to hold them too. Thank you.

| Recon Number | Importer | Recon Date | Status |
|---|---|---|---|
| | | 10/3/2005 | Related to Pending IA |
| | | 10/6/2005 | Related to Pending IA |
| | | 3/30/2006 | Related to Pending IA |
| | | 10/26/2006 | Related to Pending IA |
| | | 11/20/2006 | Related to Pending IA |
| | | 1/3/2007 | Related to Pending IA |
| | | 1/31/2007 | Related to Pending IA |
| | | 3/9/2007 | Related to Pending IA |
| | | 3/8/2007 | Related to Pending IA |
| | | 3/28/2007 | Related to Pending IA |
| | | 4/1/2007 | Related to Pending IA |
| | | 6/11/2007 | Related to Pending IA |

*Tim Sonuga*
Supervisory Import Specialist, TOB-2,
DHS, CBP,
Newark, NJ.

---

**From:** GULIS, YULIYA A
**Sent:** Thursday, March 19, 2009 10:49 AM
**To:** SONUGA, TIMOTHY O
**Subject:** RE: Request for Internal Advice - ████

Tim,

Thank you so much – please continue to hold these entries. Thank you again.

Best regards,
Yuliya

Yuliya A. Gulis, Attorney-Advisor
Valuation and Special Programs Branch
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
U.S. Department of Homeland Security
799 9th Street N.W., Mint Annex
Washington, D.C. 20229
(202) 325-0042 (tel.)
(202) 325-0154 (fax)
YULIYA.Gulis@dhs.gov

4/2/2009

**From:** SONUGA, TIMOTHY O
**Sent:** Thursday, March 19, 2009 10:46 AM
**To:** GULIS, YULIYA A
**Subject:** RE: Request for Internal Advice - 

Yuliya,

This is the list of reconciliation entries with similar issues:

| JAGUAR | | | |
|---|---|---|---|
| Recon Number | Importer | Recon Date | Status |
| 300-99459288 | Jaguar Cars | 7/27/2005 | Pending IA |
| 300-99459197 | Jaguar Cars | 6/29/2005 | Related to Pending IA |
| 300-99459353 | Jaguar Cars | 8/16/2005 | Related to Pending IA |
| 300-48302225 | Jaguar Cars | 5/9/2006 | Related to Pending IA |
| 300-48302522 | Jaguar Cars | 6/15/2006 | Related to Pending IA |
| 300-48302811 | Jaguar Cars | 8/14/2006 | Related to Pending IA |
| 300-48302803 | Jaguar Cars | 8/14/2006 | Related to Pending IA |
| 300-48303017 | Jaguar Cars | 10/5/2006 | Related to Pending IA |
| 300-48302902 | Jaguar Cars | 9/21/2006 | Related to Pending IA |

| Recon Number | Importer | Recon Date | Status |
|---|---|---|---|
| | | 10/14/2005 | Related to Pending IA |
| | | 4/3/2006 | Related to Pending IA |
| | | 10/26/2006 | Related to Pending IA |
| | | 10/26/2006 | Related to Pending IA |
| | | 10/26/2006 | Related to Pending IA |

*Tim Sonuga*
Supervisory Import Specialist, TOB-2,
DHS, CBP,
Newark, NJ.

**From:** GULIS, YULIYA A
**Sent:** Thursday, March 19, 2009 10:01 AM
**To:** SONUGA, TIMOTHY O
**Subject:** RE: Request for Internal Advice - 

Good morning Tim,

The Jaguar case is still pending in our office – please continue to hold it. I will get you a memo or a ruling prior to their liquidation date. How many other entries do you have pending with similar issues and what are the importers on those entries? Thank you.

Yuliya

Yuliya A. Gulis, Attorney-Advisor
Valuation and Special Programs Branch
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
U.S. Department of Homeland Security
799 9th Street N.W., Mint Annex
Washington, D.C. 20229

(202) 325-0042 (tel.)
(202) 325-0154 (fax)
YULIYA.Gulis@dhs.gov

---

**From:** SONUGA, TIMOTHY O
**Sent:** Thursday, March 19, 2009 9:49 AM
**To:** GULIS, YULIYA A
**Cc:** DOYLE, ELIZABETH
**Subject:** RE: Request for Internal Advice - 

Yuliya,

Sorry to bother you again. I am relatively new on the automobile team and just trying to work on our backlog. There is another Request for Internal Advice dated Feb. 16, 2006 on Jaguar Cars North America for reconciliation entry # 300-99459288, concerning value adjustments. The entry will auto-liquidate in July 2009; and there are other entries with identical issues, which are also being withheld. I can not find any response from HQs in our files. Please let me know the status. Thank you for your help.

*Tim Sonuga*
Supervisory Import Specialist, TOB-2,
DHS, CBP,
Newark, NJ.

---

**From:** GULIS, YULIYA A
**Sent:** Wednesday, March 18, 2009 12:26 PM
**To:** SONUGA, TIMOTHY O
**Cc:** DOYLE, ELIZABETH
**Subject:** RE: Request for Internal Advice - 

You are welcome.
Please let me know if you have any questions. Thank you.

Yuliya

Yuliya A. Gulis, Attorney-Advisor
Valuation and Special Programs Branch
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
U.S. Department of Homeland Security
799 9th Street N.W., Mint Annex
Washington, D.C. 20229
(202) 325-0042 (tel.)
(202) 325-0154 (fax)
YULIYA.Gulis@dhs.gov

---

**From:** SONUGA, TIMOTHY O
**Sent:** Wednesday, March 18, 2009 10:45 AM
**To:** GULIS, YULIYA A
**Cc:** DOYLE, ELIZABETH
**Subject:** RE: Request for Internal Advice -

Juliya,

Thank you.

*Tim Sonuga*
Supervisory Import Specialist, TOB-2,
DHS, CBP,
Newark, NJ.

---

**From:** GULIS, YULIYA A
**Sent:** Wednesday, March 18, 2009 10:18 AM
**To:** SONUGA, TIMOTHY O
**Cc:** DOYLE, ELIZABETH
**Subject:** RE: Request for Internal Advice - ████████████
**Importance:** High

Good morning,

I am attaching the memo that we sent to the Port on June 17, 2008, requesting that these entries to be liquidated. I specifically emailed you the memo on August 20, 2008. This IA request is no longer pending in our office. The case has been closed as of June, 2008. Please liquidate the entries in accordance with our instructions. Thank you.

Best regards,
Yuliya

Yuliya A. Gulis, Attorney-Advisor
Valuation and Special Programs Branch
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
U.S. Department of Homeland Security
799 9th Street N.W., Mint Annex
Washington, D.C. 20229
(202) 325-0042 (tel.)
(202) 325-0154 (fax)
YULIYA.Gulis@dhs.gov

---

**From:** SONUGA, TIMOTHY O
**Sent:** Wednesday, March 18, 2009 10:03 AM
**To:** GULIS, YULIYA A; DOYLE, ELIZABETH
**Subject:** Request for Internal Advice - ████████████

Good morning,

I am not sure whom to address this message, but I can relate to both of you as a result of our previous communications. I just want to alert you to the fact that a request for Internal Advice dated Dec. 15, 2005 is still pending on ████████████, Inc's reconciliation entries # ████████, ████████ and ████████ which are about to auto-liquidate in April 2009. The entries had been extended three times, and therefore, can not be extended any further. The issue is 'transfer pricing /price adjustment'.

Five other entries with identical issues from the same company have been extended and withheld

pending your decision.  Thank you.

*Tim Sonuga*
Supervisory Import Specialist, TOB-2,
DHS, CBP,
Newark, NJ.

DOCUMENT FILING LOCATION

DOCS. 10012
CUSTOMS FORM 7533
REGISTRATION/DISTRICT/PORT 2100I
TYPE FILER ENTRY NO    ACTION

BULLETIN NOTICE OF ENTRIES LIQUIDATED
LIQUIDATION DATE 06/13/09                    PAGE 64

DATE
OF ENTRY

| TYPE FILER ENTRY NO | ACTION | | DOCUMENT FILING LOCATION |
|---|---|---|---|

JA545

U.S. Department of Homeland Security
Washington, DC 20229



U.S. Customs and
Border Protection

JUN 2 2 2009

*Public Version*

HQ W563467

OT:RR:CTF:VS W563467 YAG

CATEGORY:  Valuation

Port Director
U.S. Customs and Border Protection
Service Port-New York/Newark
1100 Raymond Boulevard
Newark, NJ 07102

Re:    Internal Advice Request; Applicability of Transaction Value; Value
       Adjustments on Reconciliation Entries

Dear Port Director:

This is in response to your request for internal advice, regarding the value adjustments on Reconciliation Entry No. ***, filed by Livingston International, Inc., on behalf of *** (the "Importer"), on July 7, 2005.  We regret the delay in responding.  The reconciliation entry covers fifty seven (57) underlying entries of automobiles imported from the United Kingdom.  The total original import value is ***.  Total deposited duties and fees are ***.  Total reconciled duties are ***.  The Importer has requested a refund in the amount of ***.

You have asked that certain information submitted in connection with this internal advice be treated as confidential.  Inasmuch as your request conforms to the requirements of 19 CFR §177.2(b)(7), your request for confidentiality is approved.  The information contained within brackets and all attachments to the internal advice request, forwarded to our office, will not be released to the public and will be withheld from published versions of this ruling.

FACTS:

*** is the parent company and factory.  *** is the seller/exporter that supplies the automobiles to ***, Importer/distributor.  The imported automobiles are distributed to unrelated U.S. *** dealers through the Importer.  At the time of the filing of this internal advice request, *** was a wholly-owned subsidiary of ***.

1

THIS DOCUMENT MAY BE
RELEASED TO THE PUBLIC

It is stated that the Importer uses a transfer pricing method governed by *** corporate transfer pricing policy. *** transfer pricing policy uses the Berry ratio to determine a profit margin on the cost of functions and services provided by the Importer as the distributor. The Berry ratio expresses the distributor's profit as a percentage of the specified costs. At the time of the entry, provisional transfer prices are based on sales forecasts, and the final prices, subject to reconciliation, are "market driven" and determined at the end of the period based on actual results. The percentage of profit that the Importer receives for acting as the distributor falls within a set range that is based on how well automobiles are selling. If sales are good, the distributor will take a higher profit from the upper end of the set range. If sales are poor, the distributor's profit is at the lower end of the range. Credits and/or debits are used to finalize the transfer prices actually paid from the Importer to its parent company/factory. At the beginning of the year, the Importer attempts to forecast the revenue its vehicle sales will earn in the coming year and then establish budgets for the dealers, distributors, and the Exporter/Seller. Such forecasting combines historical experience, sales targets, and objectives set by the Importer's management for the coming year, and corporate transfer pricing policies and requirements.

In support of its position the Importer submitted an explanation of its apportionment of post-importation adjustments, along with the following documents explaining the decrease in the entered value in 2004: 1) April 2004 Debit Note for $9.41 million from the Importer; 2) September 2004 Credit Note for $186.46 million to the Importer; 3) February 2005 Debit Note for $4.61 million from the Importer; 4) Comparison of Forecast/Actual Values; 5) The Importer's trial balance sheet showing debits and credits; 6) Journal entry for April 2004 Debit Note; 7) Journal Entry for September 2004 Credit Note; 8) Journal entry for February 2005 Debit Note; 9) the Importer's 2004 model identification table; 10) the Importer's 2004 model identification by part number; 11) the Importer's 2004 entered value by line; 12) 2004 Adjustment by model and factor; and, 13) 2004 Reconciliation Apportionment for 3rd Quarter 2004. However, although the Importer claims to have described its transfer pricing study in sufficient detail, no transfer pricing study was provided to CBP for consideration. Further, the Importer did not provide any sales or distribution agreements (or any other information) that might be relevant in this matter.

Further, the Importer claims that if CBP considers the intercompany pricing program to be a formula, then transaction value must apply and the final prices in the reconciliation will be the dutiable value. On the other hand, it is the Port's position that at the time of the importation, the price of the merchandise was not fixed and that the subject merchandise should be appraised on the basis of a modified transaction value under Section 402(f) of the TAA.

ISSUE:

The issues presented are: (1) whether transaction value is an acceptable basis of appraisement; (2) if transaction value is not an acceptable basis of appraisement, what is the correct method of appraisement of automobiles in this case; and, (3)

THIS DOCUMENT MAY BE RELEASED TO THE PUBLIC

whether post-importation adjustments (upward and downward) taken after the importation should be taken into account in calculating the price actually paid or payable for the automobiles.

## LAW AND ANALYSIS:

Merchandise imported into the United States is appraised for customs purposes in accordance with Section 402 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (TAA; 19 U.S.C. §1401a). The primary method of appraisement is transaction value, which is defined as "the price actually paid or payable for the merchandise when sold for exportation to the United States," plus amounts for certain statutorily enumerated additions to the extent not otherwise included in the price actually paid or payable. *See* 19 U.S.C. §1401a(b)(1). Transaction value is an acceptable basis of appraisement only if, inter alia, the buyer and seller are not related, or if related, an examination of the circumstances of the sale indicates that the relationship did not influence the price actually paid or payable, or the transaction value of the merchandise closely approximates certain "test values." 19 U.S.C. §1401a(b)(2)(B); 19 CFR §152.103(l). While the fact that the buyer and seller are related is not in itself grounds for regarding transaction value as unacceptable, where Customs has doubts about the acceptability of the price and is unable to accept transaction value without further inquiry, the parties will be given the opportunity to supply such further detailed information as may be necessary to support the use of transaction value pursuant to the methods outlined above.

"Test values" refer to values previously determined pursuant to actual appraisements of imported merchandise. Thus, for example, a deductive value calculation can only serve as a test value if it represents an actual appraisement of merchandise under section 402(d) of the TAA. Headquarters Ruling Letter ("HRL") 543568, dated May 30, 1986. In this instance, however, there are no previously accepted test values. Consequently, the circumstances of the sale approach must be used in order to determine the acceptability of transaction value.

The circumstances of the sale ("COS") test is met when the analysis reveals that the relationship between the buyer and seller did not influence the prices paid, which can be demonstrated in three (3) different ways: (1) the related party prices are settled in a manner consistent with the normal pricing practices of the industry; (2) the related party prices are settled in a manner consistent with the way the seller settles prices for sales to unrelated buyers; or, (3) the related party price is adequate to ensure recovery of all costs plus a profit equal to the firm's overall profit realized over a representative period of time, such as a year, in sales of merchandise of the same class or kind ("all costs plus profit" test). *See* 19 CFR §152.103(l).

Please be advised that we are not able to conclude that the COS test is satisfied in this case, and that transaction value is the appropriate valuation method. Apart from the description of the formula, which is stated in *** transfer pricing study (not provided), we have not been provided any documents (for example, sales or distribution


THIS DOCUMENT MAY BE
RELEASED TO THE PUBLIC

agreements) supporting the COS test. Since the parties are related in this matter, the COS or test values tests must be satisfied in order for transaction value to be applicable. The Importer is not correct in its assertion that transaction value must apply if CBP considers the intercompany pricing program to be a formula, absent satisfaction of the COS test or test values tests. *See* HRL 546979, dated August 30, 2000 and HRL 543545, dated January 9, 2007. If the Importer believes that information in the transfer pricing study and/or in some other supporting documentation is relevant to the application of the COS test, the Importer should identify that information, explain why it is relevant, and submit the relevant documentation to CBP.

The Importer states that the pricing in the automobile industry is essentially "market driven," meaning the consumer determines the actual price they will pay for a vehicle. Each person in the distribution and sales chain, beginning with the dealer, who sells the vehicle to the consumer, then deducts from their sales revenue their costs plus profit and remits the balance to the person who sold them the vehicle. Thus, the dealer collects the sales revenue from the consumer, deducts its costs and profit (the "dealer margin"), and remits the balance, which is the price of the vehicle to the distributor. The distributor (in this case, the Importer), collects the sales revenue from the dealers, deducts its costs, expenses, and profit, and remits the balance to the respective Exporter-Seller. This is the final price ultimately paid to the exporter/seller for the imported automobiles. Arguably, this "market driven" method could show that the related party prices are settled in a manner consistent with the normal pricing practices of the industry. However, we find that the Importer's claims do not satisfy the COS test. The Importer must have objective evidence of the normal pricing practices of the industry in question and present evidence that the transfer price was settled in accordance with this industry's pricing practices. *See* HRL 547672, dated May 21, 2002 and HRL 548482, dated July 23, 2004; HRL 542261, dated March 11, 1981 (TAA. No. 19) (stating that where the transfer price was defined with reference to prices published in a trade journal (the posted price) and the posted price was commonly used by other buyers and sellers as the basis of contract prices, the transfer price was acceptable). We do not consider the Importer's self-serving statements describing the "market driven" pricing to be objective evidence of how the automobile industry sets its prices. Accordingly, it is our position that the information presented at this time in regard to the circumstances of the sale of the imported merchandise is insufficient to establish that the relationship did not influence the price actually paid or payable.

As the imported merchandise cannot be appraised under transaction value, it should be appraised in accordance with one of the remaining methods of valuation, applied in sequential order. 19 U.S.C. §1401a(a)(1). The alternative bases of appraisement, in order of precedence, are: the transaction value of identical or similar merchandise (19 U.S.C. §1401a(c)); deductive value (19 U.S.C. §1401a(d)); computed value (19 U.S.C. §1401a(e)); and the "fallback" method (19 U.S.C. §1401a(f)).

Based on the information available, there are no previously accepted and adjusted transaction values of identical or similar merchandise on which to base appraisement of the imported automobiles. Counsel for the Importer claims that


THIS DOCUMENT MAY BE
RELEASED TO THE PUBLIC

transaction value for identical or similar goods does not generally apply to the automotive industry since no automotive producer makes sales of similar or identical vehicles. The record offers no support for the Importer's position, however. As stated in 19 CFR §152.102(i), "similar merchandise means merchandise produced in the same country and by the same person as the merchandise being appraised, like the merchandise being appraised in characteristics and component material, and commercially interchangeable with the merchandise being appraised. If similar merchandise cannot be found, merchandise produced in the same country as, but not produced by the same person as the merchandise being appraised may be treated as similar merchandise." *See also* 19 U.S.C. §1401a(h)(4); 19 CFR 152.104(c). However, we note that no information was provided for our review with respect to this issue.

Moreover, the Importer claims that it should be clear from the explanation concerning the "market driven" pricing method and the transfer pricing requirements that the Importer's suggested value of the imported merchandise essentially applies all of the elements of deductive value, namely, the price to the unrelated dealer, less the distributor's costs, expenses, and profits. Although, as discussed below, we are of the opinion that this statement is not entirely correct, we find that based on the information and representations made by the Importer's counsel, it would appear that resort to the deductive value method of appraisement is appropriate (19 U.S.C. §1401a(d)).

When utilizing deductive value, the subject merchandise is appraised based on the price at which the merchandise concerned is sold in the U.S in its condition as imported, in the greatest aggregate quantity at or about the date of importation of the merchandise being appraised. 19 U.S.C. §1401a(d)(2)(A)(i). If the merchandise concerned is sold in the U.S. in its condition as imported, but not sold at or about the date of importation, the price at which the merchandise is sold in the greatest aggregate quantity after the date of importation, but before ninety days after such importation, is utilized. 19 U.S.C. §1401a(d)(2)(A)(ii). The unit price at which merchandise is sold in the greatest aggregate quantity means the unit price at which it is sold to unrelated persons at the first commercial level after importation. 19 U.S.C. §1401a(d)(2)(B).

Furthermore, the price determined under 19 U.S.C. §1401a(d) is to be reduced by an amount equal to the following:

(i) any commission usually paid or agreed to be paid, or the addition usually made for profit and general expenses, in connection with sales in the United States of imported merchandise that is of the same class or kind, regardless of the country of exportation, as the merchandise concerned;
(ii) the actual costs and associated costs of transportation and insurance incurred with respect to international shipments of the merchandise concerned from the country of exportation to the United States;
(iii) the usual costs and associated costs of transportation and insurance with respect to shipments of such merchandise from the place of

5

THIS DOCUMENT MAY BE RELEASED TO THE PUBLIC

importation to the place of delivery in the United States, if such costs are not included as a general expense under clause (i);
(iv) the customs duties and other Federal taxes currently payable on the merchandise concerned by reason of its importation, and any Federal excise tax on, or measured by the value of, such merchandise for which vendors in the United States are ordinarily liable... 19 U.S.C. §1401a(d)(3).

The Importer furnished data regarding its costs, profits, and deductions in reselling the merchandise in the United States, showing how the Importer achieves its Berry Ratio Target. According to the Importer's submission, the Importer books the following deductions from its sales revenue: post-importation marketing & selling costs and expenses, such as budgeted incentives and promotions spent on dealers to encourage and support its sales efforts, losses incurred in vehicles lost or damaged in transit to dealers, costs and adjustments related to the Importer's delivery and dealer support functions, fleet marketing expenses (cash and other monetary incentives, related to fleet sales of the Importer's vehicles), and variable marketing expenses. The Importer also books the following distributor costs, expenses, and profits: local warranty costs, local outbound freight costs (freight costs incurred for delivering vehicles from the port of entry to the dealers), local duty and import taxes (Customs duties and other import related taxes and fees, Customs Broker fees, paid by the Importer on the imported vehicles), local selling expenses, local marketing expenses (budgeted costs for advertising in the United States and other related marketing costs), and other sundry expenses. We find that this data adequately explains how the Importer books and apportions its post-importation adjustments.

However, at this time, the information submitted does not explain (document) whether the adjustments and deductions are proper, as specified in 19 U.S.C. §1401a(d). For example, there is no information explaining other "sundry expenses" and whether such expenses are indeed part of the profit and general expenses that can be deducted. Further, it is not clear whether the imported merchandise satisfies the timeframe requirement specified in 19 U.S.C. §1401a(d)(2)(A)(i)-(ii). In other words, in order to apply deductive value, we must determine whether the merchandise concerned[1] was resold within the allowable time constraints. Additionally, 19 CFR §§152.105(e)-(i) supplement the statutory provisions in 19 U.S.C. §1401a(d)(2)(A)(i)-(ii) and state the following:

(e) Profit and general expenses; special rules. (1) The deduction made for profit and general expenses (taken as a whole) will be based upon the importer's profit and general expenses, unless the profit and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind from all

---

[1] 19 U.S.C. §1401a(d)(1) defines "merchandise concerned" as the merchandise being appraised, identical merchandise, or similar merchandise. All three types of merchandise may be utilized for appraisement, but there is no indication that one type must have priority over the other. *See* HQ 546602, dated January 29, 1997.

THIS DOCUMENT MAY BE

countries, in which case the deduction will be based on the usual profit
and general expenses reflected in those sales, as determined from
sufficient information. Any State or local tax imposed on the importer with
respect to the sale of imported merchandise will be treated as a general
expense.

(2) In determining deductions for commissions and usual profit and
general expenses, sales in the United States of the narrowest group or
range of imported merchandise of the same class or kind, including the
merchandise being appraised, for which sufficient information can be
provided, will be examined.

Thus, we must determine what profit and general expenses can be deducted and
whether the claimed deductions are appropriate to deduct from the price of the
merchandise. In HRL 546120, dated March 26, 1996, CBP stated that if an expense is
incurred after the merchandise is released from CBP, it is likely to be a general
expense. Further, in HRL 545187, dated February 14, 1995, CBP reviewed "operating
expenses" designated on an income statement, such as salaries and wages, rent, taxes
travel, advertising, automotive expense, and contract services, and determined that the
designated expenses were deductible as "general expenses" from the unit price at
which the merchandise is sold to the unrelated U.S. purchasers. Thus, your office
should obtain further information from the Importer in order to determine if the technical
requirements are satisfied to appraise the merchandise under the deductive value as
specified in 19 U.S.C. §1401a(d), and verify whether the final accounting of all pertinent
revenue and expenses figures are maintained in accordance with generally accepted
accounting principles ("GAAP"). If the technical requirements stated in 19 U.S.C.
§1401a(d) cannot be met, and there is no information regarding computed value, then
an adjusted form of deductive value under 19 U.S.C. §1401a(f) should be used to
appraise the merchandise. However, an attempt should be made to appraise the
merchandise under deductive value, with the adjustments taken into account in
determining the value of the merchandise, as long as the sale required by 19 U.S.C.
§1401a(d)(2)(A)(i)-(ii) is determined within the applicable time period and the
adjustments are made within the timeframe of the reconciliation program.[2]

**HOLDING:**

The acceptability of transaction value based on the related party sale between
the Importer and Manufacturer/Seller has not been demonstrated. Accordingly, an
alternative basis of appraisement must be used. The imported merchandise should be
appraised using deductive value under 19 U.S.C. §1401a(d), provided the technical
requirements for appraising the merchandise under 19 U.S.C. §1401a(d) are met.

---

[2] Reconciliation allows the importer of record, using reasonable care, to file entry summaries with CBP
using the best available information, with the mutual understanding that certain elements (such as the
exact declared value, HTS 9802 value, classification, and NAFTA eligibility) remain outstanding. At a
later date, when the specifics have been determined, the importer files a Reconciliation, which provides
the final and correct information.

Please do not hesitate to contact us at (202) 325-0042 if you have any questions or concerns.

Sincerely,

Monika R. Brenner, Chief
Valuation and Special Programs Branch

THIS DOCUMENT MAY BE RELEASED TO THE PUBLIC

JA553

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

ACS LIQ01
CUSTOMS FORM #333
REGIONAL/DISTRICT/PORT  2180I                                        PAGE  28
BULLETIN NOTICE OF ENTRIES LIQUIDATED     LIQUIDATION DATE  07/17/09
TYPE FILER ENTRY NO   ACTION           DATE OF ENTRY                              DOCUMENT FILING LOCATION

| TYPE FILER ENTRY NO | ACTION | DATE OF ENTRY | | DOCUMENT FILING LOCATION |
|---|---|---|---|---|
| CON 275   019.5182 | NO CHANGE | 09-04-08 | TEMPEREPEX PRODUCTS LLC | 080918-ESP |
| CON 275   019.6255 | NO CHANGE | 09-04-08 | E-Z DOL INC | 080922-S350-002-005 |
| CON 275   019362373 | NO CHANGE | 09-04-08 | E-Z DOL INC | 080918-ESP |
| CON 275   019.47685 | NO CHANGE | 09-05-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 275   019.47653 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 276   019.47701 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 276   019.47719 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 276   019.47726 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 276   019.47701 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| CON 276   019.47800 | NO CHANGE | 09-06-08 | HORIZON PLASTICS INC | 080919-ESP |
| ** FILER 275 ** | | 13 ENTRIES | | |
| CON 279   947386676 | NO CHANGE | 09-01-08 | FREEDOM MARKETING INC | 080912-ESP |
| CON 279   943383825 | NO CHANGE | 09-06-08 | BLAIR LLC | 080915-ESP |
| CON 279   943380341 | NO CHANGE | 09-03-08 | NATIONWIDE INDUSTRIES, INC. | 080916-ESP |
| CON 279   943890858 | NO CHANGE | 09-06-08 | BLAIR LLC | 080919-ESP |
| ** FILER 279 ** | | 4 ENTRIES | | |
| CON 286   152213512 | NO CHANGE | 09-04-08 | KYOCERA MITA AMERICA INC | 080917-ESP |
| CON 286   152214469 | NO CHANGE | 09-06-08 | HADCA AMERICA INC | 080918-ESP |
| CON 286   152255425 | NO CHANGE | 09-04-08 | MITSUBISHI INTL FOOD INGREDIENTS | 080917-ESP |
| CON 286   152255241 | NO CHANGE | 09-04-08 | MITSUBISHI INTL FOOD INGREDIENTS | 080917-ESP |
| CON 286   152255540 | NO CHANGE | 09-04-08 | MITSUBISHI INTL FOOD INGREDIENTS | 080917-ESP |
| CON 286   152256558 | NO CHANGE | 09-04-08 | MITSUBISHI INTL FOOD INGREDIENTS | 080917-ESP |
| CON 286   152256364 | NO CHANGE | 09-04-08 | MITSUBISHI INTL FOOD INGREDIENTS | 080917-ESP |
| ** FILER 286 ** | | 8 ENTRIES | | |
| CON 300   308557401 | NO CHANGE | 06-03-08 | CLARKS MARKETING CANADA L.P. | 080822-R6793-001-007 |
| CON 300   308513916 | NO CHANGE | 06-26-09 | CLARKS MARKETING CANADA L.P. | 090707-R579-019-007 |
| CON 300   934592408 | NO CHANGE | 07-28-05 | FORD MOTOR COMPANY | 090917-AUI |
| ** FILER 300 ** | | 3 ENTRIES | | |
| CON 309   902830335 | NO CHANGE | 09-02-08 | SHI (AMERICAS) LTD | 080916-ESP |
| ** FILER 309 ** | | 1 ENTRIES | | |

JA584

ACS LO012
CUSTOMS FORM 4333
REGION/DISTRICT/PORT 2100I
TYPE FILER ENTRY NO        ACTION

BULLETIN NOTICE OF ENTRIES LIQUIDATED
LIQUIDATION DATE  07/22/2005

PAGE   1

DATE OF ENTRY                    DOCUMENT FILING LOCATION

DBK 869 *  XXXXX85 DECREASE    05-09-08 CHEVRON USA INC        0907721-R619-005-001
           ** FILER BREAK **    1 ENTRIES

DBK 9E9 *  01075722 INCREASE   03-23-09 ROLAND 066 CORP        0907720-N619-007-003
           ** FILER BREAK **    1 ENTRIES

CON 004 *  50275671 INCREASE   05-21-08 SECTION DICKINSON INT THER SYS   0907913-NNGUF-002-008
           ** FILER 004 **      1 ENTRIES

CON 239 *  11719863 NO CHANGE  09-29-08 THE TOPPS COMPANY INC   0907717-NGUF-001-006
CON 239 *  11719820 NO CHANGE  09-29-08 THE TOPPS COMPANY INC   0907717-NGUF-001-009
CON 239 *  11718708 NO CHANGE  09-29-08 THE TOPPS COMPANY INC   0907717-NGUF-002-014
CON 239 *  11718656 NO CHANGE  07-25-08 THE TOPPS COMPANY INC   0907717-NGUF-003-007
CON 239 *  11756659 NO CHANGE  07-25-08 THE TOPPS COMPANY INC   0906911-NGUF-001-005
CON 239 *  11719208 NO CHANGE  09-29-08 THE TOPPS COMPANY INC   0907914-NGUF-003-003
CON 239 *  11719206 NO CHANGE  09-29-08 THE TOPPS COMPANY INC   0907914-NGUF-003-004
           ** FILER 239 **      7 ENTRIES

CON 300 *  99695929 NO CHANGE  07-21-05 FORD MOTOR COMPANY      0907724-R6619-005-001
           ** FILER 300 **      1 ENTRIES

DBK 968 *  00901522 NO CHANGE  03-06-08 PARTEX COATINGS INC     0907720-R6619-005-010
           ** FILER 968 **      1 ENTRIES

TOTAL ENTRIES      22

REDACTED - FILED UNDER SEAL

REDACTED - FILED UNDER SEAL

CUSTOMS FORM 4333
TYPE FILER ENTRY NO. ACTION

BULLETIN NOTICE OF ENTRIES LIQUIDATED
LIQUIDATION DATE 08/07/05

DATE OF ENTRY

DOCUMENT FILING LOCATION

CON DJS * 060758 DECREASE ** FILER 749 **   DF-03-08 E & S SOFTWARE, LLC ENTRIES   090730-R619-022-001

CON 300 * 99454197 NO CHANGE ** FILER 300 **   06-29-05 FORD MOTOR COMPANY ENTRIES   090730-R6SM-003-002

| TYPE | FILER | ENTRY NO. | ACTION | DATE OF ENTRY | BULLETIN NOTICE | DOCUMENT FILING LOCATION |
|---|---|---|---|---|---|---|
| CON | 739 | 61153893 | DECREASE | 05-01-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-004-017 |
| CON | 739 | 61155927 | DECREASE | 05-03-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-004-015 |
| CON | 739 | 61153963 | DECREASE | 05-03-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-004-020 |
| CON | 739 | 61161073 | DECREASE | 05-03-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-001-015 |
| CON | 739 | 61161834 | DECREASE | 05-03-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-001-016 |
| CON | 739 | 61163520 | DECREASE | 05-05-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-012 |
| CON | 737 | 61213944 | DECREASE | 09-05-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-013 |
| CON | 739 | 61213946 | DECREASE | 09-05-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-014 |
| CON | 739 | 61213953 | DECREASE | 09-05-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-015 |
| CON | 739 | 61211457 | DECREASE | 09-13-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-008 |
| CON | 739 | 61205913 | DECREASE | 09-13-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-039-006 |
| CON | 739 | 61211573 | DECREASE | 09-13-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-010 |
| CON | 739 | 61210573 | DECREASE | 09-13-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-016-018 |
| CON | 739 | 61217556 | DECREASE | 09-20-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-020-002 |
| CON | 739 | 61220575 | DECREASE | 09-22-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-022-015 |
| CON | 739 | 61220398 | DECREASE | 09-22-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-020-017 |
| CON | 739 | 61220593 | DECREASE | 09-22-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-020-004 |
| CON | 739 | 61220807 | DECREASE | 09-25-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-020-003 |
| CON | 739 | 61229601 | DECREASE | 09-27-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-002-005 |
| CON | 739 | 61220578 | DECREASE | 09-27-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-002-009 |
| CON | 739 | 61224450 | DECREASE | 10-04-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-022-005 |
| CON | 739 | 61224900 | DECREASE | 10-04-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-002-001 |
| CON | 739 | 61224742 | DECREASE | 10-06-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-019 |
| CON | 739 | 61232294 | DECREASE | 10-16-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-009 |
| CON | 739 | 61233756 | DECREASE | 10-16-06 | XINYI GLASS NORTH AMERICA INC | 090730-R619-019-003 |
| CON | 739 | 61231601 | DECREASE | 10-25-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-005-017 |
| CON | 739 | 61233204 | DECREASE | 10-25-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-001-005 |
| CON | 739 | 61233601 | DECREASE | 10-25-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-001-002 |
| CON | 739 | 61234200 | DECREASE | 10-25-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-005-003 |
| CON | 739 | 61231657 | DECREASE | 11-22-06 | XINYI GLASS NORTH AMERICA INC | 090731-R693-002-004 |

ACS [40012]
CUSTOMS FORM 4333
REGION/DISTRICT/PORT   2100.

BULLETIN NOTICE OF ENTRIES LIQUIDATED
LIQUIDATION DATE  08/14/09
PAGE   74

| TYPE FILER ENTRY NO | ACTION | DATE OF ENTRY | | DOCUMENT FILING LOCATION |
|---|---|---|---|---|
| *** FILER 276 *** | 5 ENTRIES | | | |
| CON 276 | 0393609. NO CHANGE | 10-08-08 E.T.OO, INC. | | 080103-ESP |
| CON 276 | 0919652. NO CHANGE | 10-02-08 DEALS WHOLESALE SALES CORP | | 080024-ESP 05SE-001-015 |
| CON 276 | 0919093. NO CHANGE | 10-01-08 SAKAR INTERNATIONAL, INC. | | 080102-ESP |
| CON 276 | 0395018. NO CHANGE | 09-30-08 HORIZON PLASTICS INC. | | 080103-ESP |
| *** FILER 279 *** | 5 ENTRIES | | | |
| CON 279 | 8430838. NO CHANGE | 09-28-08 ENERGIZER BATTERY MANUFACTURING | | 081009-ESP |
| CON 279 | 9438088. NO CHANGE | 10-09-08 BWARR PLC | | 081017-ESP |
| CON 279 | 9438096. NO CHANGE | 10-03-08 BEATRICE | | 081017-ESP |
| CON 279 | 9438104. NO CHANGE | 10-02-08 ENERGIZER BATTERY MANUFACTURING | | 081015-ESP |
| *** FILER 286 *** | 4 ENTRIES | | | |
| CON 286 | 1371905. NO CHANGE | 10-08-08 EQUITE CORPORATION OF AMERICA | | 080009-ESP |
| CON 286 | 1323830. NO CHANGE | 10-03-08 KYOCERA METALS AMERICA, INC | | 081012-ESP |
| CON 286 | 5262929. NO CHANGE | 09-23-08 GLOBAL MATERIALS MANAGEMENT, INC | | 081015-ESP |
| CON 286 | 5268043. NO CHANGE | 09-22-08 AURORA, SEIKA, LTD FOOD INGREDIENTS | | 080009-ESP |
| *** FILER 300 *** | 5 ENTRIES | | | |
| CON 300 | 3038850. NO CHANGE | 10-08-08 J.D. GROUP INC | | 080027-ESP 05SE-010-062 |
| CON 300 | 3038868. NO CHANGE | 10-02-08 J.D. GROUP INC | | 081112-05SE-010-062 |
| CON 300 | 4633203. NO CHANGE | 09-22-08 ALGOMA MATERIALS MANAGEMENT, INC | | 080730-R019-011-018 |
| CON 300 | 4838231. NO CHANGE | 07-23-08 ASTRERA CANADA CORP "KIDS METALL" | | 080728-R019-005-003 |
| CON 300 | 9948353. NO CHANGE | 08-26-08 FORD MOTOR COMPANY | | 080814-R01 |
| *** FILER 310 *** | 3 ENTRIES | | | |
| CON 310 | 3914692. NO CHANGE | 03-18-08 EQUITY INTERNATIONAL INC | | 090007-R019-011-001 |
| CON 310 | 3840466. DECREASE | 07-08-08 EQUITY INTERNATIONAL INC | | 090004-R019-011-007 |
| CON 310 | 3640894. NO CHANGE | 07-03-08 SIR IMPORTED MERCHANDISE & SALES | | 090807-R019-008-010 |
| DBK 312 | 0009325. DECREASE | 04-07-08 WATERMARK BUSINESS SERVICES, INC | | 090007-R019-003-002 |
| *** FILER 312 *** | 1 ENTRIES | | | |

BULLETIN NOTICE OF ENTRIES LIQUIDATED
PAGE 1
LIQUIDATION DATE 09/18/09

COST NO: 0102
CUSTOMS PORT: 2101
REGION/DISTRICT/PORT: 21001
TYPE FILER ENTRY NO: ACTION

| DATE OF ENTRY | | DOCUMENT FILING LOCATION |
|---|---|---|

CON 031 # 0327880024 DECREASE 03-22-05 VITELLI FOODS LLC
** FILER DFK **
1 ENTRIES
080006-RGU-006-015

DBK-EHK # I00071532 DECREASE 05-22-09 R.J. REYNOLDS TOBACCO COMPANY
** FILER EHK **
3 ENTRIES
050911-RGU-015-013

CON 567 # 12718199 DECREASE 04-12-06 FOLDER INC
** FILER H67 **
1 ENTRIES
050911-RGU-023-001

CON N77 # 015759121 DECREASE 12-05-07 INTERASTAN RESOURCES GROUP LLC   090911-RKSS-014-010
CON N77 # 0157440223 DECREASE 01-04-08 INTERASTAN RESOURCES GROUP LLC  090911-RKSS-014-012
CON N77 # 015759380 DECREASE 01-22-09 INTERASTAN RESOURCES GROUP LLC   090911-RKSS-014-011
** FILER N77 **
3 ENTRIES

CON URS1 # 026659225 NO CHANGE 11-26-06 SANOFI AVENTIS US INC          000911-ORS-001-001
** FILER URS1 **
1 ENTRIES

DBK-N77 # I00281116 DECREASE 10-22-07 NESTLER INTERNATIONAL INC        000911-019-015-002
DBK-N77 # I00310509 DECREASE 02-20-09 NESTLER INTERNATIONAL INC        000911-019-016-012
** FILER N77 **
2 ENTRIES

CON 231 # 62639601 DECREASE 12-10-07 INIVAR USA INC                    000911-RKSS-007-020
CON 231 # 62639604 DECREASE 12-13-07 INIVAR USA INC                    000911-RKSS-011-009
CON 231 # 62219233 DECREASE 05-18-08 INIVAR USA INC                    000911-RKSS-007-015
CON 231 # 63171808 DECREASE 05-08-08 INIVAR USA INC                    000911-RKSS-007-016
CON 231 # 63243801 DECREASE 05-01-08 INIVAR USA INC                    000911-RKSS-007-021
CON 231 # 63243801 DECREASE 06-02-08 INIVAR USA INC                    000911-RKSS-007-012
CON 231 # 63261611 DECREASE 05-20-08 INIVAR USA INC                    000911-RKSS-007-015
CON 231 # 72671260 DECREASE 07-25-08 SNP INC                           000911-RKSS-007-017
CON 231 # 72071477 INCREASE 05-22-08 OLIVAR INC                        000911-RKSS-007-015
** FILER 231 **
9 ENTRIES

CON 300 # 984539553 NO CHANGE 09-26-05 FORD MOTOR COMPANY              080031-RKSS-002-003
** FILER 300 **
1 ENTRIES

JA500

CUSTOMS FORM 4333
REGION/DISTRICT/PORT - 21/001
TYPE FILER ENTRY NO    ACTION

BULLETIN NOTICE OF ENTRIES LIQUIDATED
LIQUIDATION DATE  03/07/10

DOCUMENT FILING LOCATION

CUSTOMS FORM 4333

BULLETIN NOTICE OF ENTRIES LIQUIDATED

LIQUIDATION DATE 06/04/10

DATE OF ENTRY

DOCUMENT FILING LOCATION

# CERTIFICATE OF SERVICE

I certify that I served a copy of the attached Non-Confidential Joint

Appendix on counsel of record on May 26, 2015 by Electronic Means (by

email or CM/ECF).

By:  /s/ Stephanie A. Douglas
Stephanie A. Douglas
BUSH SEYFERTH & PAIGE PLLC
3001 W. Big Beaver Road, Suite 600
Troy, Michigan 48084
Phone:  (248) 822-7800
Fax:  (248) 822-7806
E-mail Address:
douglas@bsplaw.com
*Attorney for Plaintiff-Appellant*